# **EXHIBIT B**



Squad Music Group
205 Gary Circle Vallejo, Ca 94591

Date: May 9, 2009

RE: Exclusive Recording Agreement between Squad Music Group and Yasmin Mohamed aka "Somalia" (Artist) residing at 1800 Evans Lane #4204 SJ C-t 95125

Artist:

This is an exclusive recording agreement with, the undersigned, individual (referred to as "you" or the "Artist(s)") and Squad Music Group (referred to as "SMG" herafter ) to a record distribution agreement and the terms under which you agree to perform under such record distribution agreement. This letter (the "Letter" or "Agreement") shall serve as the binding terms and shall obligated you upon your execution hereof. If you request additional services and I expressly agree, then this letter shall govern those services as well unless we agree otherwise in writing. This letter agreement may only be modified if in a writing signed by both parties.

(List the Labels)

    **A.**    **Distribution Agreement.** In the event we enter into a Distribution Agreement with a *so called majors (i.e.,BMG, SONY, Capital, EMI, UMG, WEA, Atlantic or a record label* (within the Recording Agreement Period, the following shall constitute the minimum terms of an exclusive recording agreement between us and you professionally known collectively as "Somalia" (sometimes referred to as Artist") whereby we shall be the Publisher of the LPs and provide them for distribution to the Distributor.

    1.    For a period of (24) months or 2 full length recorded albums, which ever is longer, following the Effective Date ("Term"), you hereby appoint "SMG" and we hereby accept the appointment as your exclusive representative to identify, secure, represent, manufacture, promote and distribute one or more albums recorded by you (the "LPs") (collectively referred to as the "Services").

    2.    During the term of this Agreement, you shall not render or enter into any Agreement for the Services under which you agree to render any recording, performing, manufacturing or promotion services for any third party other than us.

Squad Music Group Agreement                                                                        - 1 -

**B. Recording Agreement.** The following shall constitute the minimum terms of an exclusive recording agreement between us and you professionally known as "Somalia" (sometimes referred to as Artist") whereby we shall be the Publisher of the LPs and provide them for distribution to the Distributor. ("Recording Agreement").

      1.      Product Commitment.   You will commit to record two (2) full length LP. Artist will provide those services necessary to record such additional LPs.

      2.      Advance. Advances will be based on the grounds of once obtain a major distribution agreement with *a so called majors (i.e.,BMG, SONY, Capital, EMI, UMG, WEA, Atlantic or a record label.*

      (a) Advances recoupable from any and all monies (excluding mechanical royalties) payable to Artist, we shall pay to Artist the following advances. (the "Advances"):

| | |
|---|---|
| LPs  #1 | $30,000 |
| LPs  #2 | $60,000 |

      (b)   The Advances for each LPs shall be payable in full upon Artist's written notice to us that Artist has commenced recording the associated LP.

      3.      Normal Retail Channel "NET" Artist Royalty (Exclusive of producer royalties):

      (a)   United States:

(i) Albums.

| | LP | Rate |
|---|---|---|
| LPs | 1-1000 | 9% |
| | 1,001-5,000 | 12% |
| | 5,001-10,000 | 15% |
| | 10,001-100,000 | 19% |
| | 100,001-up | 24% |

      (ii) Singles/Eps      10%

      (iii) Compact Discs.   75% of the otherwise applicable rate.

      (iv) Digital Download/Singles & Album   refer to Section 3 a (i-iii)

      (b)   The royalty payable to Artist shall be in all other respects (including, with out limitation, terms relating to foreign sales, record club sales, p-x sales, bonus records, mid priced and budget records, reserves and packaging) subject to the

same proportionate deductions and adjustments as may be contained in the Recording Agreement.

4. <u>Sales Basis.</u>  All royalties will be paid on gross sales, less returns and less special and customary free goods.

5. <u>Accounting.</u>  We will account on a semi-annual basis within thirty (30) days after accounting statements have been rendered to us by Distributor.

6. <u>Mechanical Royalties.</u>  In the United States and Canada, we will pay a mechanical royalty equal to seventy-five percent (75%) of the minimum statutory rate effective as of the date of delivery (or the last date for timely delivery, whichever is earlier) of the record in which the particular selection was initially embodied, subject to a ten (10) selection "cap" per LP.

7. <u>Video Cost.</u>  Fifty percent (50%) recoupable against Artist's record royalties and one hundred percent (100%) recoupable against Artist's video royalties.

8. <u>Publishing.</u>

(a) Artist agrees that all songs recorded and all masters shall be owned solely by the company.  Artist and we shall enter into a co-publishing agreement whereby Artist shall grant to us fifty percent (50%) of all rights, including the copyright, in and to any and all songs written by Artist prior to or during the term of the recording agreement.  We shall also have the sole right to administer all songs.

(i) In the event that Artist has not written at least eighty percent (80%) of all songs embodied on a particular required LP under the Recording Agreement, the advance for such LP shall be reduced proportionately.

(ii) Each advance will be paid in full upon the exercise of each option.

**C. <u>Merchandising</u>.**  Artist hereby grants to Company the sole and exclusive rights to use and authorize or sublicense others, on an exclusive or non-exclusive basis, to use the name (including any and all professional names), photographs, likeness, other identification, description, logos, symbols, service marks and/or trademarks of Artist (the "Licensed Property") in connection with the manufacture, advertisement, distribution and sale of any products bearing or utilizing the Licensed Property ("Licensed Products" herein), including but not limited to all articles customarily sold by an artist's merchandising licensee, through any and all methods of sale or distribution (such rights are referred to herein as "Merchandising Rights") throughout the Territory during the Term; provided, however, that all such licenses entered into by Company during the Term shall continue in full force and effect notwithstanding the termination of the Term. Licensed Products shall expressly exclude records (as hereinafter defined) and printed

editions of musical compositions. For any exploitation of such Merchandising Rights in and to the Licensed Property, Company shall pay to Artist, as applicable, thirty percent (30%) percent of Company's "Net Earned Merchandising Receipts" (defined as the gross, non-refundable amounts actually received by or finally credited to Company solely in respect of Licensed Products hereunder, less (I) any applicable withholding or similar taxes and (ii) all out-of-pocket costs, including attorneys'; fees incurred by Company in connection with exploiting such Merchandising Rights or collecting such gross amounts). Artist's share of said Net Earned Merchandising Receipts, if any, shall be accounted for and paid hereunder at the same times as accountings are rendered for record royalties hereunder.

### D. **Warranties and Representation.**

1. Artist warrants, represents and agrees that (a) Artist expressly acknowledges and agrees that Artist has been advised to seek independent legal counsel with regard to this Agreement, and that Artist has been given a sufficient amount of time and opportunity to do so, and that any failure to seek said independent counsel was at Artist's sole discretion; and (b) Artist has the power and authority to enter into this Agreement.

2. Services "AS IS". All Services are provided "AS IS." I expressly disclaim and all express and implied warranties.

### E. **Termination**.
This Agreement shall terminate and expire without effect or liability to either party if a Distribution Agreement is not executed during its Term. The parties may elect to extend or renew the term by a writing signed by each party.

### F. **Limitation of Liability**.
In no event shall I be liable to you or the Artists for any consequential, incidental, special or indirect damage arising from this Agreement under any theory of law. My total cumulative liability to you under this Agreement or otherwise shall not exceed $500 unless otherwise limited by law.

### G. **Miscellaneous.**
We may assign this Agreement or delegate the same without restriction provided that this Agreement shall be binding on such successors of interests or assignee. You may not assign or delegate this Agreement or any of its obligations. Artist and we agree to enter into a more formal "long form' agreement incorporating the terms set forth in Section B of this Agreement, together with all other standard terms and conditions contained in our exclusive recording and publishing agreements (including, without limitation, warranties, option "pick-up" dates, etc.), subject to good faith negotiation ("Definitive Agreements"). However, unless and until such time as a the Definitive Agreements shall have been executed by us and Artist, Sections A of this letter agreement shall constitute a valid and binding agreement between the parties hereto in connection with any recording and publishing agreement. Neither party shall have any liability for the failure to consummate the Definitive Agreements. Further, until such time as the Definitive Agreements are executed, we shall have no obligation to permit or authorize the commencement of any recording sessions or the release of any records by Artist. Notwithstanding anything to the contrary contained

in this agreement, until and unless we enter into a Distribution Agreement, we shall have no obligations whatsoever to Artist under this agreement (including, without limitation, to undertake recording of or to release any LPs hereunder or to pay any Advances or royalties to Artist). If a Distribution Agreement is not entered into during the Term, this Agreement shall terminate without effect. Neither party shall have any liability resulting from its termination. This Agreement contains the full and complete agreement between the parties with regarding the subject matter and hereby supersedes any and all prior written or oral discussions, agreements, negotiations or correspondence. This agreement shall be governed by the laws of the state of California and any dispute shall be brought in the state or federal courts of San Francisco, California provided that the parties shall mediate any dispute not reasonably resolved.

If the foregoing correctly reflects the understanding and agreement between Artist and us, please sign in the space provided below.

Very truly yours,

By: _____
Squad Music Group
Authorized Signatory

By: _____
Squad Music Group
Authorized Signatory

AGREED AND ACCEPTED:

_____          Date: 05/09/09
Authorized Signatory

Squad Music Group Agreement                                                      - 5 -