PROSKAUER ROSE LLP
Sandra A. Crawshaw-Sparks
Charles B. Ortner
Eleven Times Square
New York, New York 10036
(212) 969-3915
*Attorneys for Defendants Guillaume Emmanuel*
*Homem Christo and Thomas Bangalter*
*p/k/a Daft Punk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YASMIN MOHAMED p/k/a YASMINAH, <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC RECORDS, et al., <br><br> Defendants. | Case No. 1:18-cv-08469-JSR <br><br> **ORAL ARGUMENT SET:** <br><br> **Dec. 19, 2018, 3:30 PM** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS GUILLAUME EMMANUEL HOMEM CHRISTO AND THOMAS BANGALTER TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER VENUE

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

RELEVANT BACKGROUND ......................................................................................................3

    A.    Factual Allegations ...................................................................................................3

    B.    Procedural History ...................................................................................................5

ARGUMENT ..................................................................................................................................6

I.    THE COMPLAINT SHOULD BE DISMISSED AS AGAINST DAFT PUNK FOR LACK OF PERSONAL JURISDICTION .............................................................................6

    A.    Fed. R. Civ. P. 12(b)(2) Standard .............................................................................6

    B.    Plaintiff Cannot Show General Jurisdiction Over Daft Punk Under § 301 ..............6

    C.    Plaintiff Cannot Show Specific Jurisdiction Under § 302 ........................................9

        1.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(1) ...............9

            a.    Daft Punk Does Not Transact Business or Contract for Goods in New York................................................................................10

            b.  The Claims Do Not Arise From New York Contacts ..........................12

        2.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(2) ..............13

        3.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(3) .............14

        4.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(4) .............16

    D.    The Exercise of Personal Jurisdiction Over Daft Punk Would Violate Due Process ...................................................................................................................17

II.    THIS COURT SHOULD ALTERNATIVELY DISMISS FOR IMPROPER VENUE OR TRANSFER THE ACTION ........................................................................................18

III.    THE AIDING & ABETTING CLAIM (COUNT FOUR) SHOULD BE DISMISSED AGAINST DAFT PUNK....................................................................................................20

    A.    Rule 9(b) and Rule 16(b)(6) Standards...................................................................21

    B.    Rule 9(b) Applies to the Aiding and Abetting Claim .............................................22

    C.    Plaintiff Fails to Plead the Aiding and Abetting Claim with Particularity ...........22

CONCLUSION.............................................................................................................................25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Achcroft v. Iqbal,*
129 S. Ct. 1937 (2009)...................................................................................21

*Adelphia Recovery Tr. v. Bank of Am., N.A.,*
624 F. Supp. 2d 292 (S.D.N.Y. 2009)..............................................................22

*AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.,*
326 F. Supp. 2d 525 (S.D.N.Y. 2004)..............................................................19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)..............................................................................21

*AVRA Surgical Robotics, Inc. v. Gombert,*
41 F. Supp. 3d 350 (S.D.N.Y. 2014)................................................................15

*Banco Indus. de Venezuela, C.A. v. CDW Direct, LLC,*
888 F. Supp. 2d 508 (S.D.N.Y. 2012).........................................................23, 24

*Beacon Enters., Inc. v. Menzies,*
715 F.2d 757 (2d Cir. 1983).............................................................................12

*Beatie & Osborn LLP v. Patriot Sci. Corp.,*
431 F. Supp. 2d 367 (S.D.N.Y. 2006)..............................................................12

*Berman v. Morgan Keegan & Co.,*
No. 10-5866, 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011)........................22, 24

*Bohn v. Bartels,*
620 F. Supp. 2d 418 (S.D.N.Y. 2007)................................................................7

*Boyce v. Cycle Spectrum, Inc.,*
148 F. Supp. 3d 256 (E.D.N.Y. 2015) .............................................................10

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
137 S. Ct. 1773 (2017).......................................................................11, 17, 18

*Brought to Life Music, Inc. v. MCA Records, Inc.,*
No. 02-1164, 2003 WL 296561 (S.D.N.Y. Feb. 11, 2003).....................................7, 8

*Capitol Records, L.L.C. v. SeeqPod, Inc.,*
No. 09-01584, 2010 WL 481228 (S.D.N.Y. Feb. 1, 2010)................................8, 13

ii

*DiStefano v. Carozzi N. Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001)........................................................................................6

*Elsevier, Inc. v. Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)........................................................................16

*Feldmuehle N.-Am. v. W. End Converters, Inc.*,
   No. 91-4512, 1992 WL 77578 (S.D.N.Y. Mar. 23, 1992)......................................10

*Fernandez v. UBS AG*,
   222 F. Supp. 3d 358 (S.D.N.Y. 2016)..............................................................21, 23

*Foundry, A Print Commc'ns Co. LLC v. Trade Secret Web Printing, Inc.*,
   No. 11-9553, 2012 WL 3031149 (S.D.N.Y. July 25, 2012)....................................7

*Frame v. Whole Foods Mkt., Inc.*,
   No. 06-7058, 2007 WL 2815613 (S.D.N.Y. Sept. 24, 2007) .................................19

*Hill v. HSBC Bank PLC*,
   207 F. Supp. 3d 333 (S.D.N.Y. 2016).....................................................................11

*In re Dental Supplies Antitrust Litig.*,
   No. 16-696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ............................10, 11

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)..................................................................................6, 7

*Int'l Diamond Importers, Inc. v. Med Art, Inc.*,
   No. 15-4045, 2017 WL 2839640 (S.D.N.Y. June 29, 2017) .................................14

*Klutz v. Yagoozon, Inc.*,
   No. 16-4538 (JSR), 2016 WL 5806902 (S.D.N.Y. Sept. 20, 2016) ........................7

*Licci v. Lebanese Canadian Bank*,
   SAL, 673 F.3d 50 (2d Cir. 2012)................................................................6, 10, 17

*Marino v. Grupo Mundial Tenedora, S.A.*,
   810 F. Supp. 2d 601 (S.D.N.Y. 2011)......................................................................22

*Oddo v. Ries*,
   743 F.2d 630 (9th Cir. 1984) ....................................................................................2

*Pablo Star Ltd. v. Welsh Gov't*,
   170 F. Supp. 3d 597 (S.D.N.Y. 2016)......................................................................14

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010).......................................................................................15

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    640 F.3d 497 (2d Cir. 2011)........................................................................14

*Piantadosi v. Loew's, Inc.*,
    137 F.2d 534 (9th Cir. 1943) ......................................................................2

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014)..........................................................9

*Royalty Network Inc. v. Dishant.com, LLC*,
    638 F. Supp. 2d 410 (S.D.N.Y. 2009).........................................10, 15, 16

*Smart Skins LLC v. Microsoft Corp.*,
    No. 14-10149, 2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015)................19

*Stephan v. Babysport*,
    LLC, 499 F. Supp. 2d 279 (E.D.N.Y. 2007)........................................11, 12

*Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*,
    No. 09-10343, 2010 WL 4739938 (S.D.N.Y. Nov. 5, 2010)..................12

*UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*,
    844 F. Supp. 2d 366 (S.D.N.Y. 2012).......................................................14

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)............................................................................9, 17

*Wallert v. Atlan*,
    141 F. Supp. 3d 258 (S.D.N.Y. 2015).....................................................8, 13

**STATUTES**

28 U.S.C. § 1404(a) ......................................................................2, 18, 19

**OTHER AUTHORITIES**

C.P.L.R. § 301.............................................................................................6, 7

C.P.L.R. § 302.................................................................................................6

C.P.L.R. § 302(a)(1) .............................................................................. passim

C.P.L.R. § 302(a)(2) ..................................................................................13, 14

C.P.L.R. § 302(a)(3) .............................................................................14, 15, 16

C.P.L.R. § 302(a)(4) ....................................................................................16

## INTRODUCTION

Plaintiff Yasmin Mohamed ("Plaintiff") is a California resident. In this case, she sues (among others) the Grammy Award winning recording artists and songwriters Thomas Bangalter and Guillaume Emmanuel Homem Christo (sued erroneously as "Guillaume Emmanuel de Homem-Christo") (collectively professionally known as "Daft Punk"), both residents of Paris, France, primarily for copyright infringement.

Simply stated, Plaintiff filed this case in the Southern District of New York for only one, albeit improper reason—Plaintiff wishes to take advantage of a unique Second Circuit decision applicable to copyright law that has never been followed by any other Circuit, including the Ninth Circuit where Plaintiff resides. The only connection between the Plaintiff and Daft Punk with the Southern District of New York is that Plaintiff's counsel appears to use some space in Brooklyn as an office. That is not a basis for requiring two French citizens and residents to be haled into this court.

This Court does not have personal jurisdiction over Daft Punk for three reasons: First, Plaintiff's complaint contains no non-conclusory allegations that permit jurisdiction over Daft Punk in New York. Second, based on the facts, New York courts cannot exercise general or specific jurisdiction over Daft Punk. The members of Daft Punk do not reside in New York; rent or own property in New York; or own business entities or operations in New York. Daft Punk's contribution to the allegedly infringing song – "Starboy" – (which does not include any material that is alleged to be infringing) was not created in New York. Daft Punk has never performed *Starboy* in New York and, in fact, they have not performed <u>any</u> song in New York since well before any relevant time period. Finally, Daft Punk has not sold or distributed *Starboy* in New York. Third, the exercise of jurisdiction over Daft Punk on these facts would violate their Due

Process rights.  The Court should accordingly dismiss the Complaint in full against Daft Punk under Federal Rule of Civil Procedure ("Rule") 12(b)(2).

In the alternative, the Court should dismiss the action for improper venue under Rule 12(b)(3) or transfer the action to the District Court for the Central District of California under 28 U.S.C. § 1404(a).  The facts and law justifying dismissal and transfer are fully set forth in the motion filed simultaneously herewith by Defendants Abel Tesfaye, Jason Quenneville, The Weeknd XO, Inc. (sued erroneously as "XO Records, LLC") and UMG Recordings, Inc. (sued erroneously as "Republic Records" and as "Universal Music Group") (collectively, the "XO Defendants").  Insofar as Daft Punk is concerned, transfer to California is additionally appropriate because Mr. Bangalter owns property there; Daft Punk signed a contract concerning the production of *Starboy* with other parties who were located there; and Daft Punk's manager, who helped negotiate the contract, is there.  Indeed the only reason this case was filed in New York is that Plaintiff is obviously forum shopping (the law in the Ninth Circuit indisputably bars her claims, while the law in the Second Circuit arguably does not).[1]

Finally, Count Four of the Complaint, alleging the aiding and abetting of a breach of fiduciary duty, should be dismissed as against Daft Punk.  In that claim, Plaintiff uses group pleading to allege that all defendants (apparently including Daft Punk) engaged in fraud and deceit to dupe Plaintiff respecting a settlement agreement concerning *Starboy*.  This claim is not only false, it also fails to meet the heightened pleading requirements of Rule 9(b).  Plaintiff utterly fails to allege who did what, when or where they did it, or how it happened.  Plaintiff also fails to plead

---

[1] *See, e.g.*, *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984) (one co-owner's copyright infringement claim against co-owner's licensee failed because any one co-owner can license use of work); *Piantadosi v. Loew's, Inc.*, 137 F.2d 534, 537 (9th Cir. 1943) (explaining that a defendant who receives license from co-owner has "a good defense to a suit by [the other owner]").

the elements of the claim with anything but vague and rote allegations. Assuming jurisdiction exists over Daft Punk, the Court should dismiss Count Four as against Daft Punk.

## RELEVANT BACKGROUND

### A.    Factual Allegations

Daft Punk is a music group comprised of two members, Thomas Bangalter and Guillaume Emmanuel Homem Christo. Compl. ¶ 7, ECF No. 1. The group was formed in the early 1990s in Paris, France where Messrs. Bangalter and Homem Christo live. *See* Declaration of Thomas Bangalter ("Bang. Decl.") ¶¶ 5, 19; Declaration of Guillaume Emmanuel Homem Christo ("H.C. Decl.") ¶¶ 5, 19. The member's personal lives are in France, they create music in France, they receive royalties for their music in France, and they operate a limited liability company called Daft Trax S.a.r.l. ("Daft Trax") out of France. Bang. Decl. ¶¶ 7, 20, 24.

In 2016, the members of Daft Punk signed a contract (the "Production Agreement") on behalf of Daft Trax, with The Weeknd XO, Inc. to create the musical composition and sound recording *Starboy*. *Id.* ¶ 24; *see id.*, Attach. A, ("Production Agreement"). Daft Punk's manager and counsel negotiated the Production Agreement from California and the United Kingdom, respectively, and Daft Punk executed it in France. Bang. Decl. ¶ 25. All of Daft Punk's creative contribution to *Starboy* occurred in France. *Id.* ¶ 27. And The Weeknd XO, Inc., the other contracting party, provided a California address. *See* Prelim. to Production Agreement. To the best of Daft Punk's knowledge, The Weeknd XO, Inc. is based out of California. Bang. Decl. ¶ 25.

*Starboy* was to be used on an upcoming album by Defendant Abel Makkonen Tesfaye p/k/a The Weeknd ("The Weeknd"). Production Agreement ¶ 1(a). The Weeknd released *Starboy* on September 16, 2016 on an album of the same name. Compl ¶ 14.

3

Two years later, on September 17, 2018, Plaintiff filed this lawsuit.  She sued The Weeknd, Daft Punk, and various other individuals and entities claiming, among over things, that *Starboy* infringes her copyright in and to the song "*Jewel of My Life*" a/k/a "*Hooyo*" ("*Hooyo*").  Plaintiff alleges that, in 2009, Defendants William Uschold and Tyrone Dangerfield, both California residents, signed Plaintiff to their California-based record company Defendant Squad Music (together with Uschol and Dangerfield, the "Squad Defendants").  Compl. ¶¶ 12-14, 19-20. Plaintiff claims that she created *Hooyo* around that time and that *Hooyo* sounds similar to *Starboy*. *Id.* ¶¶ 20, 24.

Despite this case's obvious and substantial connection to California, Plaintiff sued the defendants, including Daft Punk, in New York.  But Daft Punk's members, who were sued in their individual capacities, have no jurisdictional ties to New York:  they neither own nor rent property in New York; they have no bank accounts or office space in New York; they own no entities that are incorporated or principally operate in New York; their company Daft Trax is not registered to do business in New York; their last business trip to New York was in 2015 (before *Starboy* was created); they have performed no Daft Punk concerts in New York in over a decade; they have no contract with a New York-based record company or music publisher; they receive no royalties in New York; and they have no employees in New York.  Bang. Decl. ¶¶ 8-11, 13, 20-24; H.C. Decl. ¶¶ 8-11, 13, 20-24.  No part of Daft Punk's contribution to *Starboy* was created in New York, and Daft Punk has never performed *Starboy* in New York, or appeared in New York to promote it. Bang. Decl. ¶¶ 27-29.  Daft Punk has no manager or attorney in New York, except for the undersigned who Daft Punk retained to defend them in this lawsuit.  *Id.* ¶ 25.  And Daft Punk has not sold or distributed *Starboy* at all, let alone in New York.  *Id.* ¶ 30.  To the extent Daft Punk has any contacts with the United States, those contacts are with California.  One member of Daft Punk

owns property in California, their manager is in Los Angeles, they part-own a Los Angeles based business, and they visit Los Angeles for business purposes with some frequency. *Id.* ¶ 32; H.C. Decl. ¶ 32.

Plaintiff asserts three claims against Daft Punk: copyright infringement (Count 1), Compl. ¶¶ 40-51; an accounting related to copyright (Count 5), *id.* ¶¶ 67-70; and aiding and abetting a breach of fiduciary duty (Count 4), *id.* ¶¶ 62-66. Insofar as Count 4 is concerned, Plaintiff's allegations are conclusory and lack the specificity required to plead an aiding and abetting claim against Daft Punk sounding in fraud. Rather, Plaintiff alleges that, after the release of *Starboy*, the Squad Defendants threatened to sue for copyright infringement. *Id.* ¶ 33. The Squad Defendants' attorney allegedly informed Plaintiff about a potential settlement with The Weeknd, but then told Plaintiff she "did not own" *Hooyo*. *Id.* ¶¶ 34, 36. Plaintiff alleges that, "on information and belief," the Squad Defendants settled the infringement claim against *Starboy* and "the Weeknd struck Plaintiff's name and a line for Plaintiff's signature" from the settlement agreement. Compl. ¶¶ 37-38. Even assuming that these facts adequately alleged an aiding and abetting breach of fiduciary duty claim (they do not), none of them involve Daft Punk, and Plaintiff's effort to implicate them by including them (along with seven other defendants) within the definition of "the Weeknd Defendants," *id.* ¶¶ 62-66, is insufficient to meet the required pleading standard.

### B.    Procedural History

Plaintiff filed this lawsuit on September 17, 2018. The Court held a case management conference on November 7, 2018. Despite the fact that Daft Punk has not been served or requested to waive formal service, at the conference, Daft Punk's counsel agreed to file the instant motion to dismiss on November 19, 2018 in order to expedite the case. The motion seeks relief on three independent grounds: (1) dismissal under Rule 12(b)(2) for lack of personal jurisdiction over Daft Punk; or (2) dismissal under Rule 12(b)(3) for improper venue or transfer of the action under 28

U.S.C. § 1404(a) to the U.S. District Court for the Central District of California; and/or (3) dismissal under Rule 12(b)(6) of the aiding and abetting a breach of fiduciary duty claim (Count 4) as against Daft Punk.

## ARGUMENT

## I.     THE COMPLAINT SHOULD BE DISMISSED AS AGAINST DAFT PUNK FOR LACK OF PERSONAL JURISDICTION

### A.     Fed. R. Civ. P. 12(b)(2) Standard

In response to a defendant's motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  To survive such a motion, "a plaintiff must make a prima facie showing that jurisdiction exists."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  When it reviews that showing, the Court "will not draw argumentative inferences in the plaintiff's favor" and cannot "accept as true a legal conclusion couched as a factual allegation."  *Id.*

Here, Plaintiff must meet a two-part test to establish personal jurisdiction over Daft Punk. First, Plaintiff must demonstrate either general jurisdiction under C.P.L.R. § 301 or specific jurisdiction under New York's long-arm statute, C.P.L.R. § 302.  N.Y. C.P.L.R. §§ 301, 302 (McKinney 2011); *see Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012). Second, she must show that the exercise of jurisdiction comports with due process.  *Id.*  As explained below, Plaintiff does not—and cannot—make either showing.

### B.     Plaintiff Cannot Show General Jurisdiction Over Daft Punk Under § 301

This Court does not have general jurisdiction over Daft Punk for three reasons.  First, the Complaint fails to assert any non-conclusory allegation that would make Daft Punk at home in New York.  Second, the evidence overwhelmingly shows that the individual members of Daft

Punk are not at home in New York.  Third, it would violate Daft Punk's due process rights to subject its members to general jurisdiction in New York.

Under C.P.L.R. § 301, a New York court may exercise general jurisdiction over non-domiciliary defendants based on claims unrelated to acts done in New York.  But § 301 applies only when the non-residents are "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of [their] 'presence' in the jurisdiction." *Foundry, A Print Commc'ns Co. LLC v. Trade Secret Web Printing, Inc.*, No. 11-9553, 2012 WL 3031149, at *4 (S.D.N.Y. July 25, 2012) (quoting *Ball v. Metallurgie Hoboken–Overpelt. S.A.*, 902 F.2d 194, 198 (2d Cir.1990)).  They must "conduct . . . business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Brought to Life Music, Inc. v. MCA Records, Inc.*, No. 02-1164, 2003 WL 296561, at *3 (S.D.N.Y. Feb. 11, 2003) (internal quotations omitted).  That is no easy task.  As these standards suggest, the defendant's contacts with the state "must be substantial." *Bohn v. Bartels*, 620 F. Supp. 2d 418, 425 (S.D.N.Y. 2007). And a plaintiff must offer genuine facts, not mere legal conclusions. *See In re Terrorist Attacks*, 714 F.3d at 673.

On its face, the Complaint falls well short of this standard.  The sole jurisdictional allegation against Daft Punk is that its members "were individuals conducting business is New York, New York."  Compl. ¶ 7.  The Complaint offers nothing to support this legal conclusion.  It does not say what Daft Punk's New York business was, or how, when, where or why it was conducted.  Stripped of the single conclusory allegation, the Complaint fails to allege that the Court has any form of jurisdiction over Daft Punk. *See, e.g., Klutz v. Yagoozon, Inc.*, No. 16-4538 (JSR), 2016 WL 5806902, at *2 (S.D.N.Y. Sept. 20, 2016) ("Plaintiff's conclusory allegation [that defendant "does business in New York"] is insufficient to establish personal jurisdiction"). *See*

*also Capitol Records, L.L.C. v. SeeqPod, Inc.*, No. 09-01584, 2010 WL 481228, at *4 (S.D.N.Y. Feb. 1, 2010) ("Plaintiffs' broad conclusory statements are but rote restatements of the relevant statutory language and . . . do not constitute a prima facie showing of jurisdiction pursuant to C.P.L.R. § 302(a).").

Nor can Plaintiff concoct Daft Punk's "presence" in New York with supporting materials. Rather, as the members of Daft Punk set forth in their affidavits:

- They reside in France, not New York.

- They neither own nor rent property in New York.

- They have no bank accounts or office space in New York.

- They own no entities that are incorporated or principally operate in New York.

- They last visited New York for Daft-Punk-related business for three days in 2015.

- They have no recording or music publishing agreement with any company in New York.

- They have not performed a Daft Punk concert in New York since 2007.

- They receive all Daft Punk royalties in France.

- They have no employees in New York.

Bang. Decl. ¶¶ 5, 8-10, 13, 20-23. Daft Punk thus is not "doing business" with the requisite "permanence and continuity" needed to render it at home in New York. *See Wallert v. Atlan*, 141 F. Supp. 3d 258, 272 (S.D.N.Y. 2015) (rejecting § 301 jurisdiction over French musician despite musician's handful of industry contacts with New York); *Brought to Life Music*, 2003 WL 296561, at *3 (rejecting § 301 jurisdiction where non-resident music producer had no property or businesses in New York even though he derived income from records sold in New York). The Plaintiff accordingly has not made out a prima facie showing of general personal jurisdiction over Daft Punk.

The exercise of general jurisdiction over Daft Punk would also violate due process.  To comply with due process, a court may exercise general jurisdiction only over individuals who are domiciled or served in state.  *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)) (alterations and internal quotation marks omitted).  Otherwise, general jurisdiction does not exist absent a truly exceptional circumstance.  *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).  Daft Punk is not domiciled in New York and was not served here.  Bang. Decl. ¶¶ 5, 16.  And neither their transient contacts with the state, nor the subject matter of the lawsuit, make this an exceptional case.

### C.    Plaintiff Cannot Show Specific Jurisdiction Under § 302

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (internal citation and quotes omitted).  Here, Plaintiff asserts three claims against Daft Punk:  (1) copyright infringement; (2) aiding and abetting breach of fiduciary duty; and (3) an accounting based on the alleged infringement.  Compl. ¶¶ 40-51, 62-70.[2]  Yet nothing ties Daft Punk's scant New York contacts to these claims, as required by § 302(a).[3]

### 1.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(1)

To establish jurisdiction under C.P.L.R. § 302(a)(1), the plaintiff must show: (1) the non-domiciliary "transacts any business within the state or contracts anywhere to supply goods or

---

[2] The Court should not consider the aiding and abetting claim in its jurisdictional analysis because, as explained below, that claim must be dismissed under Rule 12(b)(6).  In an abundance of caution, however, we address it here.

[3] Although the Complaint fails to cite C.P.L.R. § 302(a), Plaintiff's counsel informed Daft Punk's counsel that he intends to assert all four § 302(a) subsections as a basis for jurisdiction over Daft Punk.  As such, Daft Punk must address each one.

services in the state"; and (2) the claim arises from that conduct. *Licci*, 673 F.3d at 57. Courts

will not credit "random, fortuitous, or attenuated contacts," *Royalty Network Inc. v. Dishant.com,*

*LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009), or "unilateral activity" of another party or a third

person, *Feldmuehle N.-Am. v. W. End Converters, Inc.*, No. 91-4512, 1992 WL 77578, at *2

(S.D.N.Y. Mar. 23, 1992).

a.   <u>Daft Punk Does Not Transact Business or Contract for Goods in</u>
<u>New York</u>

Under step one, Daft Punk does not transact business or contract to supply goods or services

in New York. They have not transacted business in New York since their brief promotional visit

in 2015. Bang. Decl. ¶ 23; H.C. Decl. ¶ 23. Daft Trax, their French production company, does no

business, and is not registered to do business, in New York. *Id.* ¶ 24. Moreover, the Production

Agreement does not require that goods be directed to New York, and Daft Punk performed its

guest-artist services under that Agreement exclusively in France. *Id.* ¶ 27.[4]

Importantly, although third parties sold *Starboy* worldwide, including in New York, those

sales are not transactions of business by Daft Punk. A business transaction under § 302(a)(1)

requires "some act by which the *defendant* purposefully avails itself of the privilege of conducting

activities within [New York], thus invoking the benefits and protections of its laws." *In re Dental*

*Supplies Antitrust Litig.*, No. 16-696, 2017 WL 4217115, at *5 (E.D.N.Y. Sept. 20, 2017) (original

---

[4] Although we address the Production Agreement here, the "contracts to supply goods or services" clause does not apply to it. Rather, "[s]ection 302(a)(1) was amended to include 'contracts to supply goods [or services]' in order to extend 'long arm jurisdiction to non-domiciliaries who make contracts to be performed in New York and then fail to perform.'" *In re Dental Supplies Antitrust Litig.*, No. 16-696, 2017 WL 4217115, at *5 (E.D.N.Y. Sept. 20, 2017) (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993); *Boyce v. Cycle Spectrum, Inc.*, 148 F. Supp. 3d 256, 265 (E.D.N.Y. 2015) ("The contract must be to send goods specifically into New York; mere knowledge that [goods] were likely to end up in New York is insufficient.") (quotation marks omitted). This case does not involve a contractual failure to send goods or services specifically into New York.

emphasis) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). To be sure, Daft Punk did not sell *Starboy* at all. Bang. Decl. ¶¶ 26, 30. Nor did Daft Punk employ or direct a distributor to sell the record. *Id.* Any sales of *Starboy* are thus the result of the Weeknd XO, Inc.'s own relationships with other entities to promote and distribute the song worldwide as those parties saw fit. The sales accordingly are not business transactions that show that Daft Punk purposefully availed itself of the privilege of operating in New York. *See In re Dental Supplies*, 2017 WL 4217115, at *5 (finding out-of-state defendant did not transact business in New York where it did business with an intermediary who in turn sold defendant's products in New York); *Stephan v. Babysport*, LLC, 499 F. Supp. 2d 279, 287 (E.D.N.Y. 2007) ("While [the defendant] may have been aware that its products were later distributed by [a third party] throughout the United States, such knowledge constitutes neither knowledge of the products' ultimate destination nor purposeful availment of the protection of New York law.").

Moreover, it would be inconsistent with § 302(a)(1) to attribute to Daft Punk the sales of *Starboy* made by third parties over which Daft Punk has no control. For one, under that logic, Daft Punk would be subject to specific jurisdiction in all fifty States given the nationwide exploitation of the song. And second, that would capture countless songwriters, recording artists, producers, and engineers who help create (but not sell) intellectual property that others sell nationwide. That is not the law.[5] Rather, the contacts with New York must provide "*fair warning* to defendant[s] of the possibility of being hauled into court there." *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339 (S.D.N.Y. 2016) (internal citation and alteration omitted). And jurisdiction under § 302(a)(1)

---

[5] In fact, the Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, explained the due process problems with such a sweeping view of minimum contacts. 137 S. Ct. 1773, 1783 (2017). That case, and the due process problems here, are addressed below.

cannot be based on "attenuated" contacts. *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006). *See also Babysport*, 499 F. Supp. 2d at 289 ("[A] mere likelihood or foreseeability that a defendant's product will find its way into New York will support neither a finding of jurisdiction under New York law nor the Federal Constitution.") (internal quotation marks omitted). Because Daft Punk did not sell *Starboy* and knew only that the song could be sold worldwide, Daft Punk did not have fair warning it could be sued in connection with *Starboy* in New York. These sales are thus not transaction of business by Daft Punk under C.P.L.R. § 302(a)(1).

### b.    The Claims Do Not Arise From New York Contacts

Plaintiff also does not meet the second step of § 302(a)(1). Plaintiff must show that defendant's actions "bear a substantial relationship to the transaction out of which the instant cause of action arose," i.e., that a "strong nexus" or a "direct relation" exists between the claim and the defendant's New York conduct. *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983). Plaintiff has not done so here.

As to infringement, there is no nexus between the claim and Daft Punk's New York contacts. Daft Punk's 2015 business trip to New York predated, and thus was unrelated to, *Starboy* or their creative relationship with The Weeknd. Daft Punk did not create, market, promote, perform, or sell *Starboy* in New York. Bang. Decl. ¶¶ 27-30. Neither of the two parties to the Production Agreement—Daft Trax and The Weeknd XO, Inc.—are New York business entities. *Id.* ¶¶ 24-25. And the Production Agreement was neither negotiated nor signed on in New York. *Id.* ¶ 25.[6]

---

[6] Although the Production Agreement has a New York choice-of-law provision, it is well established that this provision cannot establish jurisdiction under C.P.L.R. § 302(a). *See, e.g., Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*, No. 09-10343, 2010 WL

The same is true for the aiding and abetting a breach of fiduciary duty claim. The Complaint does not say where Daft Punk's alleged role in the breach occurred. It alleges that the underlying breach involved Plaintiff, who lives in California, Compl. ¶ 4; and the Squad Defendants, who also live in California, *id.* ¶¶ 12 (Uschold), 13 (Dangerfield), 14 (Squad). *See id.* ¶¶ 56-60 (asserting breach of fiduciary duty claim against Squad Defendants). And it vaguely alleges that Daft Punk was somehow involved in aiding and abetting that breach. Yet Daft Punk has not been physically present in New York, aside from family vacations, since well before creating *Starboy*. Bang. Decl. ¶¶ 14, 20; H.C. Decl. ¶¶ 17, 23. Thus, the aiding and abetting claim as to Daft Punk also has no connection to New York. Because none of the claims against Daft Punk involve their attenuated New York contacts, Plaintiff fails to meet § 302(a)(1).

### 2.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(2)

"To be subject to personal jurisdiction under C.P.L.R. § 301(a)(2), a party generally must have committed a tort while in New York." *Wallert*, 141 F. Supp. 3d at 275 (citing *Pincione v. D'Alfonso*, 506 Fed App'x 22, 25 (2d Cir. 2012) ("CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act.") (internal citation and quotation marks omitted)). "New York courts have interpreted the language 'within the state' literally, such that the exercise of jurisdiction over a defendant who commits a tortious act is proper only when the defendant was physically present in the state when the act was committed." *Capitol Records*, 2010 WL 481228, at *5 (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997)).

---

4739938, at *7 (S.D.N.Y. Nov. 5, 2010) ("[A] choice of law clause alone is insufficient to confer personal jurisdiction over a non-domiciliary.") (quotation marks omitted);

Here, Plaintiff does not allege that Daft Punk was physically present in New York at all. And, as the members of Daft Punk explain, they were physically present in the state on only a handful of occasions. Because the trips that post-dated the creation of *Starboy* were for vacations with their families, Bang. Decl. ¶ 17; H.C. Decl. ¶ 17, Plaintiff has no basis to assert jurisdiction over Daft Punk under § 302(a)(2).

### 3.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(3)

Section 302(a)(3) applies to non-domiciliaries who commit tortious acts outside New York that cause injury inside the state. Under this section, the plaintiff must show:

> (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 499 (2d Cir. 2011). Indisputably, Plaintiff cannot show an in-state injury or foreseeability.

*First*, there was no injury to a person or property in New York. "In determining whether there is an injury in New York sufficient to warrant jurisdiction under § 302(a)(3), courts apply a 'situs-of-injury' test, which requires them to identify 'where the first effect of the tort was located that ultimately produced the final economic injury.'" *UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 374 (S.D.N.Y. 2012) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999)). The plaintiff must "allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 607 (S.D.N.Y. 2016)

Plaintiff claims that she was injured by the alleged copyright infringement and breach of fiduciary duty; however, she was not injured in New York. The tort of copyright "cause[s] injury in the state where the allegedly infringed intellectual property is held." *Int'l Diamond Importers,*

*Inc. v. Med Art, Inc.*, No. 15-4045, 2017 WL 2839640, at *5 (S.D.N.Y. June 29, 2017) (quoting *McGraw-Hill Co. v. Ingenium Tech. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005)). Plaintiff is not a New York copyright owner; she lived in California at all times relevant to this case. *See* Compl. ¶ 4. Moreover, Plaintiff fails to allege that she maintains businesses in New York or that she lost business opportunities in New York based upon any conduct by Daft Punk. If Plaintiff suffered any injury under copyright, she suffered it in California.

Likewise, the situs of injury for a breach of fiduciary duty claim is where the breach occurred. *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 362 (S.D.N.Y. 2014) (noting that "situs of injury" in breach of fiduciary duty claim is "the location of the events causing the injury"). The alleged breach involved the Squad Defendants who she admits are all in California. *See* Compl. ¶¶ 12-14, 21. The Complaint fails to assert any alleged aiding and abetting conduct by Daft Punk in New York nor could it, as the members of Daft Punk have not been in New York in years. Bang. Decl. ¶¶ 17, 23. If Plaintiff suffered any injury under the fiduciary duty claim, she suffered that outside of New York, and likely in California. As such, Plaintiff cannot invoke § 302(a)(3), which "was intended . . . to protect New York residents" and not intended "to burden unfairly non-residents whose connection with the state is remote. . . ." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38 (2d Cir. 2010) (quotation marks omitted).

<u>Second</u>, Plaintiff cannot show that an injury in New York was foreseeable. Under this factor, "New York courts look for 'tangible manifestations' of a defendant's intent to target New York, or for 'concrete facts known to the nondomiciliary that should have alerted it' to the possibility of being brought before a court in the Southern District of New York." *Royalty Network Inc.*, 638 F. Supp. 2d at 424 (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497-98 (S.D.N.Y. 1997)). There are no allegations or facts that show when Daft

Punk contributed to *Starboy*, or knew about Plaintiff or *Hooyo*—the Complaint alleges that The Weeknd, not Daft Punk, had prior access to the song, which was purportedly "popular in the East African diaspora community" to which The Weeknd allegedly belongs, Compl. ¶¶ 22-23. Similarly, there are no allegations that Daft Punk purposefully targeted New York. And any claim of lost sales of *Hooyo* from New York customers would be speculative and irrelevant. *Cf. Royalty Network*, 638 F. Supp. 2d at 424 (rejecting argument that infringement was foreseeable in New York just because non-New York copyright holder "los[t] sales to its primary customers—i.e., the [New York] audience—and harm to its reputation among those customers."). Thus, Plaintiff cannot show foreseeability, and absent that, she cannot establish jurisdiction under § 302(a)(3).

### 4.    Plaintiff Cannot Establish Jurisdiction Under Section 302(a)(4)

Section 302(a)(4) provides jurisdiction where a defendant "owns, uses or possesses any real property situated within the state" and the causes of action relate to that ownership. C.P.L.R. § 302(a)(4). The section plainly does not apply here. Daft Punk neither owns nor rents real property in New York and its members have not used any property here (with the exception of hotels for vacations) in years. Bang. Decl. ¶¶ 8, 17. Moreover, the causes of action against Daft Punk, which sound in copyright and fiduciary duties, do not involve real property owned by Daft Punk. *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (rejecting § 302(a)(4) jurisdiction where claims "do not derive from—and thus can be maintained irrespective of—[the defendant's] ownership possession, or use of [property] in New York.). Section 302(a)(4) thus has no application to Daft Punk in this case.

**D.    The Exercise of Personal Jurisdiction Over Daft Punk Would Violate Due Process**

Plaintiff must do more than show long-arm jurisdiction over Daft Punk under one of the CPLR § 302(a) subsections.  She must also show that that exercise of jurisdiction comports with Daft Punk's Due Process rights.  *Licci*, 673 F.3d at 59-60.  She has failed to do so.

To comport with due process, non-domiciliaries "generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Walden*, 134 S. Ct. at 1121 (quotation omitted).  The due process analysis "focuses on the relationship among the defendant, the forum, and the litigation."  *Id.* (citations and quotation omitted).  Jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum."  *Id.* at 1122-23 (quotation omitted).  Consequently, Daft Punk's "suit-related conduct must create a substantial connection" with New York.  *Id.*

Daft Punk's only association with New York in the past half-decade is a one-week business trip *before* they created *Starboy* and a handful of personal vacations afterward.  Bang. Decl. ¶¶ 17, 23.  None of these contacts relate to *Starboy* or to any facts pertinent to the fiduciary duty claim.  Thus, it would "offend traditional notions of fair play and substantial justice" to expose Daft Punk to specific jurisdiction on these facts.  *See Walden*, 134 S. Ct. at 1121.

It would likewise offend due process to exert jurisdiction over Daft Punk based on album sales by third party distributors.  On this point, *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1783 (2017) is instructive.  There, the Court held that Bristol-Myers Sqibb ("BMS") was not subject to specific jurisdiction in California for a drug it produced elsewhere because, among other reasons, its connection to a distributor that sold the defective drug nationally (and thus into California) was insufficient.  *Id.* at 1782.  The Court noted that minimum contacts "must be met as to each defendant over whom a state court exercises

17

jurisdiction." *Id.* at 1783. In other words, "a defendant's relationship to a third party, standing alone, is an insufficient basis for jurisdiction[.]" *Id.* (quoting *Walden*, 571 134 S. Ct. at 1123). The Court explained that BMS was not vicariously liable for the distributor and did not help it sell the products at all. *Id.* The Court held that jurisdiction over BMS violated due process.

So too here. The fact that Daft Punk contracted with an entity (The Weeknd XO, Inc.), which contracted with a record company or distributor to sell *Starboy* nationally (and thus into New York) is similarly insufficient. That is because Daft Punk's attenuated "relationship to a third party" who moved the product into New York "is an insufficient basis for jurisdiction[.]" *Id.* And like BMS, here Daft Punk is not vicariously liable for the distributor's conduct and did not help it sell the product. Moreover, while in *Bristol-Myers*, BMS contracted directly with the distributor, in this case Daft Punk is not in privity with any distributor and had no arguable control or authority over the distributor. Due process bars the exercise of personal jurisdiction over Daft Punk in New York.

In sum, New York courts do not have general or specific jurisdiction over Daft Punk. Plaintiff's Complaint inadequately pleads a basis for the exercise of jurisdiction, and Daft Punk has provided substantial evidence demonstrating that any effort to re-plead would be folly. Accordingly, the Complaint should be dismissed as to Daft Punk under Rule 12(b)(2).

## II.   THIS COURT SHOULD ALTERNATIVELY DISMISS FOR IMPROPER VENUE OR TRANSFER THE ACTION

If the Court does not dismiss Daft Punk for lack of personal jurisdiction, Daft Punk requests that the Court alternatively dismiss based upon improper venue under Rule 12(b)(3) or transfer the action to the District Court for the Central District of California under 28 U.S.C. § 1404(a).

Because Defendants The Weeknd, Jason Quenneville, The Weeknd XO, Inc., and UMG Recordings, Inc. (the "XO Defendants") are filing a motion to dismiss for improper venue under

Rule 12(b)(3) or, with the exception of UMG Recordings, Inc., to transfer under 28 U.S.C. § 1404(a) to the same transferee district simultaneous with Daft Punk's instant motion, Daft Punk will not reiterate the overlapping arguments in favor of dismissal or transfer. Rather, Daft Punk incorporates by reference the arguments in the XO Defendants' memorandum of law and provides additional facts that are unique to Daft Punk's § 1404(a) transfer request.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A two-step inquiry governs motions to transfer venue. *Smart Skins LLC v. Microsoft Corp.*, No. 14-10149, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015). First, the court must see if the action could have been brought in the proposed transferee forum. *See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004). Second, the court must determine whether transfer is appropriate. *Frame v. Whole Foods Mkt., Inc.*, No. 06-7058, 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24, 2007).

As to step one, Plaintiff could have sued Daft Punk in California because the members of Daft Punk arguably have sufficient contacts to that jurisdiction, Bang. Decl. ¶¶ 24-25, and in any event, consent to litigating this matter in California. As to step two's convenience factor, Daft Punk would avoid considerable inconvenience if the case were transferred to California. One of Daft Punk's members owns property there; both members are part-owners of a business located in California; Daft Punk travels there with much more frequency than New York; Daft Punk's manager is there, and as such, any documents relevant to the Production Agreement are located there. *Id.* ¶¶ 31-32; H.C. Decl. ¶¶ 31-32. Moreover, should this matter go to discovery and trial, California is a more convenient location for Daft Punk in light of the fact that one of its members

owns property there, and both members travel there (versus New York) with some frequency. Bang. ¶¶ 31-32; H.C. Decl. ¶¶ 31-32.  For these reasons, and those raised in their co-Defendants' motion to transfer, Daft Punk respectfully requests that the Court dismiss for improper venue under Rule 12(b)(3) or transfer this matter under § 1404(a) to the Central District of California.

## III.    THE AIDING & ABETTING CLAIM (COUNT FOUR) SHOULD BE DISMISSED AGAINST DAFT PUNK

Assuming this Court has personal jurisdiction over Daft Punk and declines to dismiss or transfer the action, Daft Punk is entitled to relief on the merits.  Namely, the aiding and abetting breach of fiduciary duty claim (Count 4) as against Daft Punk should be dismissed.  That claim—which Plaintiff asserts vaguely against all defendants including Daft Punk and which stems from the alleged fraudulent conduct of Plaintiff's purported fiduciaries—fails to meet the particularity standard under Rule 9(b).  Thus, it must be dismissed under Rule 12(b)(6).

Although Plaintiff does not assert the direct breach of fiduciary duty claim in Count 3 against Daft Punk, it is integral to the aiding and abetting claim.  There, Plaintiff alleges that the Squad Defendants breached their fiduciary duty to her by "making material misrepresentations" to exclude her from participating in the settlement of the infringement claim against *Starboy* and take the money for themselves.  Compl. ¶ 59.  Plaintiff alleges that "[s]uch conduct was fraudulent" and damaged her in an amount of over five million dollars.  *Id.* ¶ 60.  In Count 4, Plaintiff alleges that "The Weeknd Defendants"—defined as a group of seven individuals and companies including Daft Punk—furthered the Squad Defendants' fraud.  She claims The Weeknd Defendants as a group engaged in "malice, oppression, and/or fraudulent conduct. . . ."  *Id.* ¶ 65.  However, the fraudulent conduct is not described.  The Complaint merely alleges that, acting "with knowledge", one or more of The Weeknd Defendants removed Plaintiff's name from the settlement agreement

and "deceiv[ed]" the Squad Defendants into settling the case. *Id.* ¶ 63. These vague allegations do not satisfy Rule 9(b)'s heightened pleading standard.

### A.    Rule 9(b) and Rule 16(b)(6) Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must assert factual allegations sufficient to raise a right to relief above the speculative level. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)). The plaintiff must plead a plausible claim, which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Achcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

However, when Rule 9(b) applies, the pleadings standard is more exacting. The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 387-88 (S.D.N.Y. 2016) (quoting *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006)). "The Court must be especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants . . . . Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quoting *Lobatto v. Berney*, No. 98-1984, 1999 WL 672994, at *10 (S.D.N.Y. Aug. 26, 1999)) (internal citations omitted).

Importantly, Rule 9(b)'s heightened standard applies "to all averments of fraud or mistake whatever may be the theory of legal duty—statutory, common law, tort, contractual or fiduciary." *Id.* at 387. As such, the standard "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Id.* (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).

### B.    Rule 9(b) Applies to the Aiding and Abetting Claim

Plaintiff's claim for aiding and abetting a breach of fiduciary duty must meet the heightened pleading standard of Rule 9(b).  That is because "Rule 9(b) applies equally to claims alleging . . . aiding and abetting breach of fiduciary duty" when the claims "sound[] in fraud. . . ." *Berman v. Morgan Keegan & Co.*, No. 10-5866, 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012).[7]

*Adelphia Recovery Trust v. Bank of America, N.A.* provides a good example of a fraud-based aiding and abetting breach of fiduciary duty claim.  624 F. Supp. 2d at 319.  There, the claim involved fraud because the plaintiff alleged the fiduciaries "pursu[ed] a fraudulent course of conduct" and the aiding-and-abetting defendants' conduct was "wrongful . . . committed with actual malice and/or a wanton disregard of [the plaintiff's] rights." *Id.* at 319-20.  Here, based on Plaintiff's allegations that the Squad Defendants "ma[de] material representations" that were "fraudulent,"  Compl. ¶¶ 59-50, and that "the Weeknd Defendants' . . . fraudulent conduct" occurred when they "deceiv[ed] the Squad Defendants into signing the [settlement agreement]," *Id.* ¶¶ 63-66, the aiding and abetting claim is similarly subject to Rule 9(b).

### C.    Plaintiff Fails to Plead the Aiding and Abetting Claim with Particularity

Under Rule 9(b)'s heightened standard, Plaintiff's aiding and abetting claim must be dismissed.  Assuming New York law applies, a claim of aiding and abetting breach of fiduciary

---

[7] *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 614 (S.D.N.Y. 2011) ("Plaintiffs have also failed to plead the allegations underlying the claim that GM aided and abetted a breach of fiduciary duty with the specificity required to meet the particularity requirements of Rule 9(b)."); *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 319 (S.D.N.Y. 2009) ("[The plaintiff's claim of aiding and abetting a breach of fiduciary duty by the [defendants] must meet the heightened pleading requirement of Fed. R. Civ. P. 9(b).  The Amended Complaint's [aiding and abetting claim] is based on the fraudulent actions of the [fiduciaries].").  *See also Adelphia Recovery Tr.*, 624 F. Supp. 2d at 319 (explaining that "[t]he cases not subjected to Rule 9(b) requirements (involving aiding and abetting a breach of fiduciary duty) are limited.").

duty has three elements: "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer." *Banco Indus. de Venezuela, C.A. v. CDW Direct, LLC*, 888 F. Supp. 2d 508, 514 (S.D.N.Y. 2012). Plaintiff fails to plead elements two and three.

*First*, as a threshold matter, the claim lacks the particularity required by Rule 9(b). Plaintiff does not identify the acts of individual defendants. Rather, she lumps seven companies and individuals together and group-pleads their conduct. When that occurs, the "Court must be especially vigilant in applying Rule 9(b)" because the Complaint asks multiple defendants to respond to alleged fraud without "inform[ing] each defendant of the nature of his alleged participation in the fraud." *Fernandez*, 222 F. Supp. 3d at 387.

*Second*, the Complaint does not specifically identify what "substantial assistance" the group offered. Although Plaintiff mentions deception, Plaintiff does not "specify the statements that the plaintiff contends were fraudulent," "identify the speaker," "state where and when the statements were made," or even "explain why the statements were [deceptive]." *See Fernandez*, 222 F. Supp. 3d at 387. The Complaint also says "the Weeknd Defendants . . . str[uck] the Plaintiff's signature from the settlement agreement." Compl. ¶ 63. But elsewhere it claims that the Weeknd alone, not Daft Punk or the rest of the Weeknd Defendants, struck Plaintiff's name. Compl. ¶ 38 ("Thereafter, the Squad Defendants and the Weeknd struck Plaintiff's name. . . ."). Given that key inconsistency, it is even more important that Plaintiff clarify what Daft Punk allegedly did wrong. Finally, Plaintiff ends with a rote recital of the elements of substantial assistance. *See* Compl. ¶ 63 ("The Weeknd Defendants furthered the conspiracy by engaging in overt acts in furtherance thereof . . . by lending aid and encouragement to one another, and by

ratifying and adopting the wrongful acts of the other."). Boiler-plate pleading like this cannot survive Rule 8(a)'s plausibility standard, let alone Rule 9(b)'s heightened requirements.

*Third*, the Complaint fails to allege Daft Punk knew of the breach. Under this element, "the complaint must allege facts supporting a strong inference that defendant had actual knowledge of the breach of duty." *Berman*, 2011 WL 1002683, at \*13. "The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." *Banco Indus. de Venezuela*, 888 F. Supp. 2d at 514 (internal citation and quotation marks omitted); *see Berman*, 2011 WL 1002683, at \*13 (requiring plaintiff to allege "strong inference that defendant had actual knowledge of the breach of duty"). "Constructive knowledge—i.e., that the defendant 'should have known'—is insufficient to establish a claim of aiding and abetting a breach of fiduciary duty." *Banco Indus. de Venezuela*, 888 F. Supp. 2d at 514. Nor may a plaintiff "merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known" about the breach. *Id.*

In this case, the Complaint does not show how Daft Punk knew about the Squad Defendants' fraudulent scheme. She claims only that The Weeknd Defendants "engag[ed] in overt acts . . . *with knowledge of* the relationship between Plaintiff and the Squad Defendants. . . ." Compl. ¶ 63 (emphasis added). Such legal conclusions are insufficient to meet the "heavy" burden to allege knowledge. *Banco Indus. De Venezuela*, 888 F. Supp. 2d at 514. The other allegations do not pick up the slack. Plaintiff does not allege that Daft Punk signed the settlement agreement (it did not), took part in the negotiations (it did not), or even knew about the agreement (it did not). Nor do these facts lie outside of her reach. She admits she took part in the initial negotiations with The Weeknd and received a copy of the draft settlement. *See* Compl. ¶¶ 33-34 (admitting receiving email from Squad Defendant's lawyer "to update you and share the current draft of the settlement agreement. Please review and let me know if you have questions or suggested edits."). That means

24

Plaintiff knows who the counter party or parties to that agreement are.  Yet, the Complaint fails to mention Daft Punk's involvement in the settlement or the later alleged breach of fiduciary duty. That omission is telling, and it renders the claim deficient.[8]  Because Plaintiff fails to allege knowledge, Count Four must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Daft Punk respectfully requests that (1) the Court dismiss the Complaint as against Daft Punk, or (2) in the alternative, dismiss the action for improper venue or transfer the action to the United States District Court for the Central District of California, and/or (3) dismiss Count Four as against Daft Punk.

Dated: November 19, 2018                                    Respectfully submitted,

                                                                        */s/ Sandra A. Crawshaw-Sparks*
                                                                        Sandra A. Crawshaw-Sparks
                                                                        Charles B. Ortner
                                                                        PROSKAUER ROSE LLP
                                                                        Eleven Times Square
                                                                        New York, New York 10036
                                                                        (212) 969-3915
                                                                        SCrawshaw@proskauer.com

                                                                        *Attorneys for Defendants Guillaume*
                                                                        *Emmanuel Homem Christo and Thomas*
                                                                        *Bangalter p/k/a Daft Punk*

---

[8] Plaintiff also alleges that the Weeknd Defendants assisted the breach by not paying Plaintiff for the settlement.  Compl. ¶ 64.  This allegation only makes sense if Plaintiff shows that Daft Punk had knowledge of, and an obligation to pay pursuant to, the settlement agreement.  Plaintiff makes no such allegation.