# EXHIBIT A

AGREEMENT made and entered into as of this 1st day of July 2016, by and between The Weeknd XO, Inc., ("WXO") c/o David Weise & Associates, 16000 Ventura Boulevard, Suite 600, Encino, CA 91436, Attention: David Weise, and Daft Trax S.a.r.l. ("DT"), f/s/o Thomas Bangalter and Guy-Manuel de Homem-Christo, collectively p/k/a "Daft Punk") (individually and collectively, jointly and severally, "Producer"), 5 Rue L'Espagnol, 75020, Paris, France.

1.  Engagement.

    (a) WXO hereby engages DT to furnish the non-exclusive services of Producer to produce, and to render guest artist services on, one (1) master recording (the "Starboy Master") of the musical composition entitled "Starboy" (the "Starboy Composition") embodying the performances of Abel Tesfaye p/k/a "The Weeknd" ("Artist"). The Starboy Master is intended for, among other exploitations, inclusion on Artist's forthcoming studio album (the "New Artist LP").

    (b) DT hereby engages WXO to furnish the non-exclusive services of Artist to render guest artist services on one (1) master recording (the "IFIC Master") of the musical composition entitled "I Feel It Coming" (the "IFIC Composition") embodying the performances of Producer. Subject to paragraph 4(b) below, the IFIC Master is intended for, among other exploitations, inclusion on the New Artist LP and exploitations by DT and Producer after the expiration of the "IFIC License Term" (as hereinafter defined). (The Starboy Master and the IFIC Master are collectively referred to herein as the "Masters" and the Starboy Composition and the IFIC Composition are collectively referred to herein as the "Compositions".)

2.  Recording Costs Contributions.

    WXO shall make, or shall cause Universal Republic Records ("Republic") to make, on WXO's behalf, a contribution to recording costs of the Starboy Master in the amount of $50,000 (the "Starboy Recording Cost Contribution"), and a contribution to recording costs of the IFIC Master in the amount of $150,000 (the "IFIC Recording Cost Contribution"; the Starboy Recording Cost Contribution and the IFIC Recording Cost Contribution are collectively referred to herein as the "Recording Cost Contributions"). The Recording Cost Contributions shall be paid to DT promptly following the full execution of this Agreement. Any recording costs incurred by or on behalf of (and with the approval of) DT and/or Producer in connection with the Masters in excess of the Recording Cost Contributions shall be the sole responsibility of DT. For the avoidance of doubt, WXO may incur and pay for additional recording costs in connection with the Master(s) in its sole discretion. For the avoidance of doubt, neither the Starboy Recording Cost Contribution nor the IFIC Recording Cost Contribution shall be recoupable from royalties payable to DT in connection with the Masters hereunder.

3.  Royalties.

    (a) In consideration of all rights being granted and all services being rendered by DT and Producer in connection with the Masters hereunder, DT shall be entitled to receive the following royalties from or on behalf of WXO (in each instance payable from the first record sold without regard to the recoupment of any recording costs or other advances):

        (i) Starboy Master.

            (A) Domestic Territory. With respect to top-line, full-priced net sales through normal retail channels ("NRC Net Sales") in the US and Canada (the "Domestic Territory") of the Starboy Master, a pro-rated royalty (the "Starboy Domestic Royalty") at a basic royalty rate of 12% of

PPD. With respect to exploitations of the Starboy Master in the Domestic Territory other than sales of records or electronic transmissions (i.e., master use licenses, licenses for the use of the Starboy Master in compilations, etc.), the ==Starboy Producer Royalty shall be equal to 50% of the amount of such net receipts, net monies, or the like which are credited to WXO's account under WXO's distribution agreements with Republic (in the US)== (the "Republic Agreement"), with Universal Music Canada Inc. ("Universal Canada") (in Canada) (the "Universal Canada Agreement"), and with any subsequent licensee(s) or distributor(s) (the "Subsequent Distributors") with whom WXO might enter into agreements following the expiration of the Republic Agreement and the Universal Canada Agreement (collectively, the "Subsequent Distribution Agreements"; the Republic Agreement, the Universal Canada Agreement and the Subsequent Distribution Agreements (if any) are collectively referred to herein as the "Distribution Agreements").

    (B) <u>Foreign Territory</u>. With respect to NRC Net Sales of the Starboy Master in the world excluding the US and Canada (the "Foreign Territory"), a pro-rated royalty (the "Starboy Foreign Royalty") at a basic royalty rate of 10.75% of PPD (with respect to physical configurations) and a basic royalty rate of 14.25% of PPD (with respect to digital configurations). With respect to exploitations of the Starboy Master in the Foreign Territory other than sales of records or electronic transmissions (i.e., master use licenses, licenses for the use of the Starboy Master in compilations, etc.), the Starboy Producer Royalty shall be equal to 50% of the amount of such net receipts, net monies, or the like which are credited to WXO's account under the Distribution Agreements. (The Starboy Domestic Royalty and the Starboy Foreign Royalty are collectively referred to herein as the "Starboy Royalty".)

   (ii) <u>IFIC Master</u>.

    (A) <u>Domestic Territory</u>. With respect to NRC Net Sales of the IFIC Master in the Domestic Territory, a pro-rated license royalty (the "IFIC Domestic License Royalty") at a basic royalty rate of 27% of PPD. With respect to exploitations of the IFIC Master in the Domestic Territory other than sales of records or electronic transmissions (i.e., master use licenses, licenses for the use of the Starboy Master in compilations, etc.), the IFIC Domestic License Royalty shall be equal to 75% of the amount of such net receipts, net monies, or the like which are credited to WXO's account under the Distribution Agreements.

    (B) <u>Foreign Territory</u>. With respect to NRC Net Sales of the IFIC Master in the Foreign Territory, a pro-rated license royalty (the "IFIC Foreign License Royalty") at a basic royalty rate of 25% of PPD. With respect to exploitations of the IFIC Master in the Foreign Territory other than sales of records or electronic transmissions (i.e., master use licenses, licenses for the use of the IFIC Master in compilations, etc.), the IFIC Foreign License Royalty shall be equal to 75% of the amount of such net receipts, net monies, or the like which are credited to WXO's account under the Distribution Agreements. (The IFIC Domestic License Royalty and the IFIC Foreign License Royalty are collectively referred to herein as the "IFIC License Royalty".)

   (iii) WXO shall use reasonable endeavors to cause Republic, Universal Canada, and the Subsequent Distributors (if any) to (A) account and pay directly to DT the Starboy Royalty and the IFIC License Royalty, and (B) allow DT to audit the books and records of Republic, Universal Canada, and the Subsequent Distributors solely with respect to sales and other exploitations of the Masters for which the Starboy Royalty and the IFIC Royalty are payable hereunder.

  (b) With respect to sales or other exploitations of the IFIC Master by DT, its licensees and designees after the expiration of the IFIC License Term, WXO shall be entitled to receive from or on

behalf of DT a royalty equal to 25% of the amount of net receipts, net monies or the like which are derived from the sale or other exploitation concerned and which are credited to DT (if DT does not have a third-party distribution or license agreement with respect to the IFIC Master) or to DT's account (if DT has a third-party distribution or license agreement with respect to the IFIC Master) (the "WXO IFIC Royalty"). For the avoidance of doubt, the WXO IFIC Royalty shall be payable from the first record sold without regard to the recoupment of any recording costs or other advances.

(c) Any royalties payable to third-party mixers (the "Mixer Royalties") in connection with WXO's exploitations of the Masters which mixers (and the terms of their engagement) have been approved by WXO shall, as between WXO and DT, be the sole responsibility of WXO. Any Mixer Royalties payable in connection with DT's exploitations of the IFIC Master shall be the sole responsibility of DT, and shall not be deducted from the WXO IFIC Royalty nor shall they be deducted in calculating net revenues derived from such exploitations.

(d) In the event that WXO and DT mutually agree that the performance(s) of any additional side artists shall be included on either Master, then the identity of such side artist(s), the terms of such side artist(s)' engagement, and which party (or parties) shall be responsible for any amounts payable to such side artist(s) shall all be subject to the mutual approval of WXO and DT.

(e) Neither DT nor Producer shall be entitled to any compensation from WXO, Artist and/or their respective designees and licensees in connection with DT's and/or Producer's services hereunder and/or the rights in and to the Masters granted by DT and Producer hereunder except as expressly provided in this Agreement. Neither WXO nor Artist shall be entitled to any compensation from DT, Producer and/or their respective designees and licensees in connection with WXO's and/or Artist's services hereunder and/or the rights in and to the IFIC Master granted by WXO and Artist hereunder except as expressly provided this this Agreement.

4. Rights.

(a) (i) The Starboy Master (excluding the Starboy Composition), together with the performances embodied thereon and the services provided by Producer hereunder in connection therewith, as well as any and all derivative works created therefrom and reproductions made thereof, shall, from the inception of their creation, be considered "works made for hire" for WXO within the meaning of the U.S. Copyright Law. If it is determined that all or any portion of the Starboy Master does not so qualify, then DT's and Producer's interest in the Starboy Master, together with all rights in and to the same (including the sound recording copyright and all renewals and extensions thereof but excluding the Starboy Composition embodied thereon), shall be deemed transferred to WXO by this Agreement. Without limitation of the foregoing and for the avoidance of doubt, WXO shall have the right to exploit (or not to exploit) the Starboy Master, in its sole discretion, without any obligations to DT and/or Producer (except the obligation to pay the Starboy Royalty as set forth in paragraph 3(a)(i) above).

(ii) The IFIC Master (excluding the IFIC Composition), together with the performances embodied thereon and the services provided by Artist hereunder in connection therewith, as well as any and all derivative works created therefrom and reproductions made thereof, shall, from the inception of their creation, be considered "works made for hire" for DT within the meaning of the U.S. Copyright Law. If it is determined that all or any portion of the IFIC Master does not so qualify, then WXO's and Artist's interest in the IFIC Master, together with all rights in and to the same (including the sound recording copyright and all renewals and extensions thereof but excluding the IFIC Composition embodied thereon), shall be deemed transferred to DT by this Agreement. Without limitation of the

foregoing and for the avoidance of doubt, but subject to the remaining provisions of this paragraph 4(a)(ii), DT shall have the right to exploit (or not to exploit) the IFIC Master, in its sole discretion, without any obligations to WXO and/or Artist (except the obligation to pay the WXO IFIC Royalty as set forth in paragraph 3(b) above). Notwithstanding the foregoing, DT hereby grants to WXO, its designees and licensees (including, without limitation, Republic and Universal Canada, and their respective affiliates, designees and licensees) during the period commencing on the date hereof and ending on December 31, 2028 (the "IFIC License Term") the exclusive right and license throughout the world (the "Territory") to exploit (and authorize others to exploit) the IFIC Master in any way WXO and/or such designees and/or licensees deem appropriate in their sole discretion. Such exclusive right and license includes, without limitation, the right to reproduce, manufacture, copy, release, distribute, market, promote, advertise, sell, transmit and otherwise exploit the IFIC Master, to authorize others to do so, and to collect all revenues derived therefrom, subject to the terms and conditions of this Agreement and, for the avoidance of doubt, DT may not exploit the IFIC Master in any manner prior to the end of the IFIC License Term. Without limiting the generality of the foregoing, WXO, its designees and licensees will have the exclusive right, during the IFIC License Term, to issue licenses for the IFIC Master even if the term of such license(s) extends beyond the expiration of the IFIC License Term hereunder (subject to WXO's obligation to pay the IFIC License Royalty). Upon the expiration of the IFIC License Term, (i) DT may exploit (and authorize others to exploit) the IFIC Master in any way DT and/or its designees and/or licensees deem appropriate in their sole discretion (subject to DT's obligation to pay the WXO IFIC Royalty), and (ii) WXO, its designees and licensees shall thereafter have the perpetual, non-exclusive right and license solely to (A) include the IFIC Master on the New Artist LP and to continue to sell or otherwise exploit the IFIC Master as embodied on the New Artist LP (including, without limitation, so-called "single-track" digital downloads and streams derived from the New Artist LP), (ii) include the IFIC Master on one (1) Artist "greatest hits" or "best of" LP (the "Artist GHLP") and to continue to sell or otherwise exploit the IFIC Master as embodied on the Artist GHLP (including, without limitation, so-called "single-track" digital downloads and streams derived from the Artist GHLP), and (iii) collect income payable after the expiration of the IFIC License Term which is derived from licenses entered into during the IFIC License Term (subject to WXO's obligation to pay the IFIC License Royalty hereunder).

(b) Subject to the provisions of paragraph 6(b) below, WXO, Republic, Universal Canada, and their respective designees and licensees shall have the right to use and publish Producer's professional name, as well as Producer's approved likeness, approved portrait, approved photographs and approved biographical material (each of the foregoing, "Producer ID Material") all solely in connection with the sale, promotion, marketing, advertising, exploitation and sale of phonograph records derived from the Masters. WXO shall provide DT for its approval any Producer ID Material which it proposes to use in connection therewith. WXO will not use any such Producer ID Material which DT disapproves in writing within five (5) business days following the date on which such materials are provided to DT. Notwithstanding the foregoing, no use shall be made of likenesses or photographs of Producer without DT's prior written approval, which approval shall be deemed denied if DT fails or refuses to respond to any such approval request within five (5) business days.

(c) Following the expiration of the IFIC License Term, DT and its designees and licensees shall have the right to use and publish Artist's professional name, as well as Artist's approved likeness, approved portrait, approved photographs and approved biographical material (each of the foregoing, "Artist ID Material") all solely in connection with the sale, promotion, marketing, advertising, exploitation and sale of phonograph records derived from the IFIC Master. DT shall provide WXO for its approval any Artist ID Material which it proposes to use in connection therewith. DT will not use any such Artist ID Material which WXO disapproves in writing within five (5) business days following the

date on which such materials are provided to WXO.

5. <u>Compositions</u>.

WXO and DT hereby acknowledge and agree that the entire worldwide right, title and interest, including the copyright, the right to copyright and the renewal right, in and to the Compositions are owned by the following writers (and/or their respective publishing designees) in the percentages described below and all monies in respect of such Compositions (both writer's and publisher's shares) shall be divided in the following percentages (but, for the avoidance of doubt, these percentage shares are not inclusive of any copyright interest assigned to owners of approved samples, if any):

| Title of Composition | Writers | Share |
| --- | --- | --- |
| "Starboy" | Thomas Bangalter | 30% |
| | Guy-Manuel de Homem-Christo | 30% |
| | Abel Tesfaye | 30% |
| | Doc McKinney | 5% |
| | Henry Walter | 5% |
| "I Feel It Coming" | Thomas Bangalter | 25% |
| | Guy-Manuel de Homem-Christo | 25% |
| | Abel Tesfaye | 25% |
| | Eric Chedeville | 25% |

Each party hereby acknowledges and agrees that it (and its respective publishing designees) shall each have the right to administer solely that party's respective interest in and to the Compositions, throughout the world, during the full term of worldwide copyright. DT and Producer shall grant, and shall cause DT's and Producer's respective licensees, designees and assigns to grant, any licenses that WXO, Artist and/or their respective licensees, designees and assigns request for the use or exploitation of DT's and Producer's (and their respective licensee's, designee's and assign's) respective share of the Compositions (including, without limitation, gratis licenses for the use of their respective share of the Compositions in promotional uses of promo videos), for which licenses DT and Producer (or DT's and Producer's publishing designees) shall receive DT's and Producer's respective share of income (in accordance with DT's and Producer's respective share of the Composition concerned) derived from such license(s). After the expiration of the IFIC License Term, WXO and Artist shall grant, and shall cause WXO's and Artist's respective licensees, designees and assigns to grant, any licenses that DT, Producer and/or their respective licensees, designees and assigns request for the use or exploitation of WXO's and Artist's (and their respective licensee's, designee's and assign's) respective share of the Compositions, for which licenses WXO and Artist (or WXO's and Artist's publishing designees) shall receive WXO's and Artist's respective share of income (in accordance with WXO's and Artist's respective share of the Composition concerned) derived from such license(s).

6. <u>Credit</u>.

(a)  (i)  WXO shall instruct and use reasonable efforts to cause Republic and Universal Canada to accord Producer an appropriate producer credit and an appropriate "featuring" credit on the packaging, liner notes and metadata of all records derived from the Masters (in all formats and configurations) in substantially the following form:

"'Starboy (featuring Daft Punk) – The Weeknd', produced by Daft Punk"; and

"'I Feel It Coming (featuring Daft Punk) – The Weeknd', produced by Daft Punk".

(ii)     Following the expiration of the IFIC License Term, DT shall instruct and use reasonable efforts to cause any of its licensees and designees to accord Artist the following credit on the packaging, liner notes and metadata of all records derived from the IFIC Master (in all formats and configurations) in substantially the following form:

"'I Feel It Coming (featuring Daft Punk) – The Weeknd', produced by Daft Punk".

(b)     Notwithstanding the foregoing, the parties acknowledge and agree that any "featuring" credit to be granted to Producer is expressly contingent upon Producer approving the final mix and final release plans for each Master. If Producer does not so approve any such mix and/or release plan for a Master(s), then Producer shall have the right to request that Producer's "featuring" credit be removed from the Master concerned (although, for the avoidance of doubt, Producer shall continue to be accorded producer and writer credit in connection with the Master(s) concerned in any event), it being understood and agreed that Producer shall not have the right to prohibit the release of the Master(s) from which Producer's "featuring" credit was removed, and DT shall be entitled to (and shall receive) the applicable Royalty for the Master(s) concerned. DT hereby acknowledges and agrees that it has approved the final mix and final release plans for the Starboy Master.

7.     Representations and Warranties.

(a)     DT represents, warrants, covenants and agrees that:

(i)     DT is free to enter into and perform this Agreement, and is not and will not be under any disability, restriction or prohibition, contractual or otherwise, with respect to DT's right to execute this Agreement, grant all of the rights granted to WXO hereunder, and DT's and Producer's right to fully perform each and every term and provision hereof.

(ii)     Neither DT's and/or Producer's contributions to the Masters or the Compositions, nor any of the contents thereof, nor the manufacture or sale of records made from the Masters, nor any other exploitation or use thereof, and no materials furnished and/or contributed by DT and/or Producer and embodied or contained in the Masters and/or the packaging or advertising for records hereunder, shall violate any law or infringe upon any common law or statutory rights of any party, including without limitation, contractual rights, copyrights, trademarks, service marks and rights of privacy and publicity. Without limiting the generality of the foregoing, DT specifically represents and warrants that no selections recorded hereunder are subject to any re-recording restriction under any previous recording contract to which DT and/or Producer may have been a party, and that neither Master contains any so-called "samples".

(b)     WXO represents, warrants, covenants and agrees that:

(i)     WXO is free to enter into and perform this Agreement, and is not and will not be under any disability, restriction or prohibition, contractual or otherwise, with respect to WXO's right to execute this Agreement, grant all of the rights granted to DT hereunder, and fully perform each and every term and provision hereof.

(ii) Neither WXO's and/or Artist's contributions to the Masters or the Compositions, nor any of the contents thereof, nor the manufacture or sale of records made from the Masters, nor any other exploitation or use thereof, and no materials furnished and/or contributed by WXO and/or Artist and embodied or contained in the Masters and/or the packaging or advertising for records hereunder, shall violate any law or infringe upon any common law or statutory rights of any party, including without limitation, contractual rights, copyrights, trademarks, service marks and rights of privacy and publicity. Without limiting the generality of the foregoing, WXO specifically represents and warrants that no selections recorded hereunder are subject to any re-recording restriction under any previous recording contract to which WXO and/or Artist may have been a party.

8. <u>Promotional Activities</u>.

Any promotional activities by Producer supporting the release of either Master hereunder (including but not limited to press, appearances in videos, etc.) are at the discretion of Producer and will be considered on a case per case basis. There is no obligation for Producer to engage in promotional activities, unless Producer elects to do so.

9. <u>Miscellaneous</u>.

(a) This Agreement shall be governed by and construed under the laws and judicial decisions of the State of New York, without regard to conflict of laws principles.

(b) This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement. Facsimile, photocopied and .pdf signatures of this Agreement shall be treated as originals for all purposes relating to this Agreement.

(c) It is intended that, at a later date, this Agreement will be replaced by one (1) or more "long-form" agreement(s) embodying the applicable material terms set forth herein and such other terms to be mutually negotiated in good-faith by the parties. The parties each agree to negotiate the terms of such long-form agreement(s) in good faith in accordance with industry practice and custom, but unless and until such time as such long-form agreements shall be fully executed, this Agreement shall represent a complete, binding and fully enforceable agreement between the parties with respect to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

THE WEEKND XO, INC.

By: _____
An Authorized Signatory

ACCEPTED AND AGREED:

DAFT TRAX S.a.r.l.

By: _____
An Authorized Signatory

409693.5
091716

8

In order to induce The Weeknd XO, Inc. ("WXO") to enter into the foregoing agreement (the "Agreement") with Daft Trax S.a.r.l. ("DT"), each of the undersigned hereby:

(a) acknowledges that he has read and is familiar with all the terms and conditions of the Agreement;

(b) assents to the execution of the Agreement and agrees to be bound by the terms and conditions thereof, including, but not limited to, each and every provision of the Agreement that relates to the undersigned in any way, directly or indirectly, the services to be rendered thereunder by the undersigned and restrictions imposed upon the undersigned in accordance with the provisions of the Agreement, and hereby guarantees to WXO the full and faithful performance of all the terms and conditions of the Agreement by the undersigned and by DT; and

(c) acknowledges and agrees that WXO shall be under no obligation to make any payments to the undersigned or otherwise, for or in connection with this inducement and for or in connection with the services rendered by the undersigned or in connection with the rights granted to WXO thereunder and the fulfillment of the undersigned's obligations pursuant to the Agreement.

_____
Thomas Bangalter

_____
Guy-Manuel de Homem-Christo

In order to induce Daft Trax S.a.r.l. ("DT") to enter into the foregoing agreement (the "Agreement") with The Weeknd XO, Inc. ("WXO"), the undersigned hereby:

(a) acknowledges that he has read and is familiar with all the terms and conditions of the Agreement;

(b) assents to the execution of the Agreement and agrees to be bound by the terms and conditions thereof, including, but not limited to, each and every provision of the Agreement that relates to the undersigned in any way, directly or indirectly, the services to be rendered thereunder by the undersigned and restrictions imposed upon the undersigned in accordance with the provisions of the Agreement, and hereby guarantees to DT the full and faithful performance of all the terms and conditions of the Agreement by the undersigned and by WXO; and

(c) acknowledges and agrees that DT shall be under no obligation to make any payments to the undersigned or otherwise, for or in connection with this inducement and for or in connection with the services rendered by the undersigned or in connection with the rights granted to DT thereunder and the fulfillment of the undersigned's obligations pursuant to the Agreement.

_____
Abel Tesfaye