UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

Yasmin Mohamed p/k/a Yasminah,

                     Plaintiff,

          - against -

Abel Makkonen Tesfaye p/k/a
The Weeknd; Guillaume Emmanuel de Homem-
Christo and Thomas Bangalter p/k/a Daft Punk;
Martin McKinney p/k/a Doc; Henry Walter p/k/a
Cirkut; Jason Quenneville p/k/a DaHeala, XO
Records, LLC; Republic Records; Universal
Music Group; William Uschold p/k/a WILL U;
Tyrone Dangerfield p/k/a TABOO!!; Squad
Music Group; and DOES 1-10,

                   Defendants.

: Case No.  18-cv-8469 (JSR)

-------------------------------------------------------- x

## CERTAIN DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

DAVIS WRIGHT TREMAINE LLP

Peter J. Anderson (admitted *pro hac vice*)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Phone: (213) 633-6800
Fax:    (213) 633-6899

Marcia B. Paul
Amanda B. Levine
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340

*Attorneys for Defendants Abel Makkonen Tesfaye,*
*Jason Quenneville, The Weeknd XO, LLC, and*
*UMG Recordings, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ..................................................................................... 4

    A.    Plaintiff and Her California Co-Authors Create and Record *Hooyo* in California Pursuant to their California Contract ....................................4

    B.    The Weeknd Defendants Write and Record *Starboy* in California........................4

    C.    *Starboy* Is Distributed Nationally and Internationally by Weeknd XO's Licensees.............................................................................................5

    D.    Through California Counsel, Plaintiff and Her California Co-Authors Assert a Claim that *Starboy* Infringes *Hooyo*, but Plaintiff Is Not Paid the Share She Expected of the Settlement Payment ........................6

    E.    Plaintiff Retains New California Counsel, Who Assert Infringement Claims Against Mr. Tesfaye and Others and California Law Claims Against Them and Plaintiff's California Co-Authors ...............................................7

ARGUMENT ......................................................................................... 8

    I.    VENUE IS IMPROPER BECAUSE A SUBSTANTIAL PART OF THE EVENTS AND OMISSIONS GIVING RISE TO PLAINTIFF'S CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY OCCURRED IN ALAMEDA COUNTY, CALIFORNIA...................................8

    II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN OR CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)...............................................................10

        A.    The Convenience of the Witnesses Strongly Favors California .............. 12

        B.    It Is More Convenient for the Parties to Appear in California ................ 12

        C.    The Relevant Documents and Sources of Proof Are Located in California .............................................................................. 13

        D.    California Is the Locus of Operative Facts ............................... 13

        E.    California Can Better Compel the Attendance of Unwilling Witnesses ...................................................................... 14

F.      Given Plaintiff's California Residence, the Relative Means of the
        Parties Is Irrelevant ................................................................................ 14

G.      The Forum's Familiarity with the Governing Law Is Neutral ................. 14

H.      Plaintiff's Choice of Forum Is Entitled to Little Weight ......................... 15

I.      Trial Efficiency and the Interests of Justice Favor Transfer to
        California ................................................................................................ 15

III.    CLAIMS AGAINST MR. TESFAYE, MR. QUENNEVILLE, AND
        WEEKND XO SHOULD BE DISMISSED FOR LACK OF PERSONAL
        JURISDICTION ...................................................................................................17

        A.      There Is No General Jurisdiction Over Mr. Tesfaye,
                Mr. Quenneville, or Weeknd XO In New York......................................... 17

        B.      There Is No Specific Jurisdiction Over Mr. Tesfaye,
                Mr. Quenneville, or Weeknd XO in New York......................................... 19

                1.      New York's Long Arm Statute Does Not Support Specific
                        Jurisdiction..................................................................................... 19

                        a.      Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Did
                                Not "Transact Business" In New York............................. 20

                        b.      Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Did
                                Not Commit a Tortious Act in New York ......................... 22

                2.      Exercising Specific Personal Jurisdiction Over
                        Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Offends
                        Due Process.................................................................................... 22

                        a.      Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Did
                                Not Have The Necessary "Minimum Contacts"
                                With New York................................................................. 22

                        b.      Exercising Personal Jurisdiction Over Mr. Tesfaye,
                                Mr. Quenneville, and Weeknd XO Is Not
                                "Reasonable"..................................................................... 24

IV.     PLAINTIFF'S FOURTH CLAIM FOR AIDING AND ABETTING
        BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM....................24

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*,
  326 F. Supp. 2d 525 (S.D.N.Y. 2004)............................................................12, 15

*Arma v. Buyseasons, Inc.*,
  591 F. Supp. 2d 637 (S.D.N.Y. 2008)..................................................................10

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102 (1987)...............................................................................................24

*Astor Holdings, Inc. v. Roski*,
  2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) .............................................................8

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)..........................................................................................18

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)....................................................................................17, 23

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)..................................................................................19

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).........................................................................................22, 23

*Byun v. Amuro*,
  2011 WL 10895122 (S.D.N.Y. Sept. 6, 2011).......................................................22

*Caldwell v. Slip-N-Slide Records, Inc.*,
  2011 WL 3251502 (S.D.N.Y. July 26, 2011) .......................................................13

*Chen v. Guo Liang Lu*,
  144 A.D.3d 735 (N.Y. App. Div. 2d Dep't 2016) ................................................18

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000).....................................................................11

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984).................................................................................................1

*Corke v. Sameiet M. S. Song of Norway*,
  572 F.2d 77 (2d Cir. 1978)......................................................................................8

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992)..................................................................................11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).........................................................................................17, 18

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007)........................................................................2, 7, 11, 15

*Deitrick v. Gypsy Guitar Corp.*,
  2016 WL 7494881 (S.D.N.Y. Dec. 28, 2016) ......................................................20

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
  260 F. Supp. 3d 401 (S.D.N.Y. 2017)..................................................................8, 13

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
  865 F.2d 513 (2d Cir. 1989)..................................................................................12

*Frame v. Whole Foods Market, Inc.*,
  2007 WL 2815613 (S.D.N.Y. Sept. 24, 2007)......................................................12

*Glob. Gospel Music Grp. LLC v. Habukkuk Music, Inc.*,
  2010 WL 4968172 (S.D.N.Y. Dec. 6, 2010) .........................................................23

*Goodyear Dunlap Tire Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).........................................................................................19, 22

*Gray v. Hudson*,
  2015 WL 4488143 (E.D. Mo. July 23, 2015) .......................................................23

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014)..................................................................................18

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004)...............................................................11, 12

*Jewell v. Music Lifeboat*,
  254 F. Supp. 3d 410 (E.D.N.Y. 2017) ..................................................................16

*Khankhanian v. Khanian*,
  2017 WL 1314124 (S.D.N.Y. Apr. 6, 2017).........................................................15

*Lancaster v. Colonial Motor Freight Line, Inc.*,
  177 A.D.2d 152 (N.Y. App. Div. 1st Dep't 1992).................................................20

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
  565 N.E.2d 488 (N.Y. 1990).................................................................................18

*Levine v. Landy*,
    832 F. Supp. 2d 176 (N.D.N.Y. 2011) ...................................................................10

*Lewis-Gursky v. Citigroup, Inc.*,
    2015 WL 8675449 (S.D.N.Y. Dec. 11, 2015) .........................................................16

*Megna v. Biocamp Labs. Inc.*,
    166 F. Supp. 3d 493 (S.D.N.Y. 2016).....................................................................21

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018).....................................................................20

*Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*,
    2017 WL 3917040 (S.D.N.Y. Sept. 5, 2017) .........................................................21

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
    667 F. Supp. 2d 369 (S.D.N.Y. 2009).....................................................................21

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) ....................................................................................2

*Penachio v. Benedict*,
    461 F. App'x 4 (2d Cir. 2012) .................................................................................17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    946 N.E.2d 159 (N.Y. 2011).....................................................................................20

*Perkins v. Beneguet Consolidated Mining Co.*,
    342 U.S. 437 (1952).................................................................................................18

*PI, Inc. v. Quality Prods., Inc.*,
    907 F. Supp. 752 (S.D.N.Y. 1995) ............................................................................8

*Piantadosi v. Loew's, Inc.*,
    137 F.2d 534 (9th Cir. 1943) ....................................................................................2

*Pierce v. Coughlin*,
    806 F. Supp. 426 (S.D.N.Y. 1992) ..........................................................................15

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir.), *cert. denied*, 138 S. Ct. 282 (2017) ....................................18

*Scottevest, Inc. v. AyeGear Glasgow Ltd.*,
    2012 WL 1372166 (S.D.N.Y. Apr. 17, 2012)........................................................21

*Sleppin v. Thinkscan.com, LLC*,
    55 F. Supp. 3d 366 (E.D.N.Y. 2014) ......................................................................10

*SPV OSUS Ltd. v. UBS AG*,
  114 F. Supp. 3d 161 (S.D.N.Y. 2015) (Rakoff, J.), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ........................................................................................................................18

*Theraplant, LLC v. Makarechi*,
  2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .......................................................22

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
  2017 LW 4712632 (S.D.N.Y. Sept. 27, 2017)................................................14, 16

*Torrico v. Int'l Bus. Machs. Corp.*,
  319 F. Supp. 2d 390 (S.D.N.Y. 2004)...................................................................18

*Walden v. Fiore*,
  571 U.S. 277 (2014)........................................................................................17, 23

*Williams v. City of New York*,
  2006 WL 399456 (S.D.N.Y. Feb. 21, 2006).........................................................16

*ZPC 2000, Inc. v. SCA Grp.*,
  86 F. Supp. 2d 274 (S.D.N.Y. 2000).....................................................................13

**Statutes**

17 U.S.C. § 301(a) ...........................................................................................................10

28 U.S.C.
  § 1391.......................................................................................................................8
  § 1391(b)(1)..............................................................................................................8
  § 1391(b)(2)..............................................................................................................8
  § 1404(a) ........................................................................................................ *passim*
  § 1406(a) ..............................................................................................................1, 2

**Other Authorities**

C.P.L.R.
  302..........................................................................................................................19
  302(a)(1) ...........................................................................................................20, 22
  302(a)(2) ...........................................................................................................20, 22
  302(a)(3) .................................................................................................................20
  302(a)(4) .................................................................................................................20

Fed. R. Civ. P.
  12(b)(2) ...........................................................................................................1, 3, 17
  12(b)(3) ..............................................................................................................1, 2

Defendants Abel Makkonen Tesfaye, Jason Quenneville, The Weeknd XO, LLC ("Weeknd XO") (collectively, for convenience only, the "Weeknd Defendants"), and UMG Recordings, Inc. ("UMG Recordings")[1] respectfully submit this memorandum of law in support of (1) their motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) and to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1406(a), and (2) the Weeknd Defendants' motion to transfer this action to the Northern or the Central District of California pursuant to 28 U.S.C. § 1404(a), or, alternatively, to dismiss the claims against the Weeknd Defendants for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).   In addition, the Weeknd Defendants and UMG Recordings join in the motion of defendants Guillaume Emmanuel de Homem-Christo and Thomas Bangalter (the "Daft Punk Defendants") to dismiss Plaintiff's fourth claim for aiding and abetting breach of fiduciary duty for failure to state a claim.[2]

## PRELIMINARY STATEMENT

Plaintiff is a Californian who entered into a written contract containing a California choice of law and forum clause with other Californians, under which they wrote and recorded in California a musical composition that they refer to as *Jewel of My Life* or *Hooyo*.   Through a California lawyer, they claimed that their copyright in *Hooyo* was infringed by the composition *Starboy*, written and recorded in California.   Plaintiff alleges that they reached a settlement with Mr. Tesfaye but, when she and her California lawyer and co-authors bickered over how to share

---

[1] Plaintiff erroneously sued The Weeknd XO, LLC as "XO Records, LLC" and erroneously sued UMG Recordings as "Republic Records" and "Universal Music Group."  Republic Records, also known as Universal Republic Records, is an unincorporated division of UMG Recordings and is not a separate juridical entity.  Anderson Decl. ¶ 5; *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 770 (1984).

[2] UMG Recordings, which only moves to dismiss for improper venue and joins in the Daft Punk Defendants' motion to dismiss Plaintiff's aiding and abetting claim, does not oppose the Weeknd Defendants' alternative motions.

the settlement proceeds, her California lawyer and co-authors removed her name from the settlement agreement—which also contained a California choice of law and forum clause—and resolved the claim, but subsequently refused to pay her the share she demanded.

Plaintiff then retained new California lawyers who tendered a draft Complaint they intended to file in the Central District of California for copyright infringement, breach of Plaintiff's California agreement with her California co-authors, and related claims under California law. Mr. Tesfaye's counsel raised to Plaintiff's California lawyers that, *inter alia*, the Ninth Circuit has not adopted *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), and instead, under established Ninth Circuit law, Plaintiff's co-authors' release bars her infringement claim.[3] In rank and undisguised forum shopping, her California lawyers then changed the caption of her draft Complaint and filed it in this Court. For multiple reasons, this action does not belong here.

***First***, venue must be proper as to each defendant and each claim, including as to Plaintiff's fourth, fifth, and sixth claims for, respectively, aiding and abetting the alleged breach by Plaintiff's California co-authors of fiduciary obligations supposedly arising from her California contract with them and their joint creation of *Hooyo* in California, an accounting, and declaratory relief as to the meaning of her California contract with her California co-authors. It is an understatement that a substantial part of the events or omissions giving rise to those claims occurred in California, where this action could have been brought. Accordingly, the Weeknd Defendants and UMG Recordings raise, pursuant to Fed. R. Civ. P. 12(b)(3), that venue is improper here, and the case should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1406(a).

---

[3] *See, e.g., Oddo v. Ries*, 743 F.2d 630, 632–33 (9th Cir. 1984) (one co-owner's copyright infringement claim against other co-owner and co-owner's licensees failed because any one co-owner can license use of work); *Piantadosi v. Loew's, Inc.*, 137 F.2d 534, 537 (9th Cir. 1943) (defendant's receipt of license from one co-owner is "a good defense to a suit by [other] co-owner").

*Second*, alternatively, the Weeknd Defendants raise that this action should be transferred to either the Northern District of California—the mandatory forum under both Plaintiff's agreement with her co-authors and under the settlement agreement that she alleges she was required to be included as a party—or the Central District of California pursuant to 28 U.S.C. § 1404(a).  Plaintiff, her lawyers, and all defendants other than three individuals who reside outside of the United States, reside in California, most of the witnesses and relevant documents are located there, and the allegedly infringing sound recording and its music video were written and recorded in California.  It is neither efficient nor appropriate to litigate this case in New York, and the Court should not reward Plaintiff's blatant forum shopping.

*Third*, the claims against the Weeknd Defendants warrant dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Messrs. Tesfaye and Quenneville are Canadian citizens residing in Los Angeles, California, who wrote and recorded *Starboy* in California and did not control the international marketing and distribution of the recording.  Similarly, Weeknd XO is a Delaware limited liability company with its principal place of business in California.  Although Weeknd XO owns the *Starboy* sound recording, it licensed it to others for national and international distribution.  Therefore, this Court cannot exercise personal jurisdiction over the Weeknd Defendants.

*Finally*, the Weeknd Defendants and UMG Recordings join in Daft Punk's motion to dismiss Plaintiff's conclusory fourth claim for aiding and abetting breach of fiduciary duty, for failure to state a claim.

## BACKGROUND

### A.    Plaintiff and Her California Co-Authors Create and Record *Hooyo* in California Pursuant to their California Contract

Plaintiff, Yasmin Mohamed, is a Somali-American poet, singer, and songwriter who resides in San Jose, California.  Compl. ¶¶ 4, 18.  She alleges that in 2009, defendants William Uschold and Tyrone Dangerfield—residents of, respectively, Vallejo, California, and Oakland, California, *id.* ¶¶ 12–13—contacted her, and she then entered into a contract with their company, defendant Squad Music, *id.* ¶¶ 19, 21.  Plaintiff annexes to her Complaint a copy of "the Squad Contract," which includes a California choice of law provision and provides that "any dispute shall be brought in the state or federal courts of San Francisco, California."  *Id.*, Ex. B at 5.

Plaintiff, Mr. Uschold, and Mr. Dangerfield then, presumably in California, recorded an album and, in doing so, created a composition and sound recording titled *Jewel of My Life* or *Hooyo*.  *Id.* ¶ 20.  Plaintiff attaches to her Complaint a copy of a registration of copyright with the United States Copyright Office, identifying herself, Mr. Uschold, and Mr. Dangerfield as co-authors and co-owners of the *Hooyo* composition and sound recording.  *Id.* ¶¶ 20, 57 & Ex A.

Plaintiff does not allege that sound recordings of *Hooyo* or any album with it were ever sold to the public and instead alleges only that, via the Internet, *Hooyo* became "very popular in the East African diaspora community" and was well known to the general public.  *Id.* ¶ 22.

### B.    The Weeknd Defendants Write and Record *Starboy* in California

Mr. Tesfaye and Mr. Quenneville are Canadian citizens who reside in Los Angeles County, California, pursuant to work visas.  Tesfaye Decl. ¶ 3; Quenneville Decl. ¶ 3.  The Daft Punk Defendants reside in France.  Tesfaye Decl. ¶ 15.  Defendants Martin McKinney and Henry Walter are residents of Canada and California, respectively.  *Id.* ¶ 16; Quenneville Decl. ¶ 6.

In 2016, these defendants collaborated in the creation of the musical composition and

sound recording titled *Starboy*.  Working out of Conway Recording Studios in Hollywood, California, Messrs. Tesfaye, Quenneville, McKinney, and Walter combined their music and lyrics with recordings that the Daft Punk Defendants created in Paris, France and sent to California, to create the *Starboy* composition and recording.   Tesfaye Decl. ¶¶ 12-17; Quenneville Decl. ¶ 5.  Also in 2016, a music video featuring Mr. Tesfaye's performance of *Starboy* was produced in Los Angeles County, California.  Tesfaye Decl. ¶ 19.

### C.    *Starboy* **Is Distributed Nationally and Internationally by Weeknd XO's Licensees**

In 2012—and while Mr. Tesfaye was a resident of Canada—CP Records, Inc. and Universal Music Canada, Inc., both corporations in Ontario, Canada, entered into an agreement for the latter's manufacture and distribution in Canada of phonorecords of sound recordings of Mr. Tesfaye's performances.  Anderson Decl. ¶¶ 3–4 & Ex. 1.  That agreement includes an Ontario, Canada, choice of law and forum clause.  Mr. Tesfaye, as the recording artist, signed an inducement letter acknowledging the agreement's terms, which also includes an Ontario, Canada, choice of law and forum clause.

Also in 2012, XO&co inc., another corporation in Ontario, Canada, and Republic Records, an unincorporated division of UMG Recordings located in New York, entered into an agreement for the latter's manufacture, distribution, and licensing of phonorecords of the same sound recordings throughout the rest of the world, including throughout the United States.  *Id.* ¶ 5.  UMG Recordings is a Delaware corporation with its principal place of business in Santa Monica, California.  *Id.* ¶ 6 & Exs. 3–4.  XO&co inc.'s agreement with UMG Recordings' Republic Records division includes a New York choice of law and forum clause.  Once again, Mr. Tesfaye, as the recording artist, signed an inducement letter acknowledging the agreement's terms, this time including a New York choice of law and forum clause.

Weeknd XO, a Delaware limited liability company owned by Mr. Tesfaye, with its principal place of business in California and which is not registered in New York, later succeeded to CP Records, Inc., and XO&co inc., under those two agreements.  Tesfaye Decl. at ¶ 8; Anderson Decl. ¶¶ 7 & Exs. 5–9.  Weeknd XO owns the *Starboy* sound recording, which was "mastered"—a technical process that does not change the underlying musical composition—in New York but then delivered to UMG Recordings in its Santa Monica, California offices. Tesfaye Decl. ¶¶ 9, 18.  Further, throughout the process of creating and recording *Starboy*, Mr. Tesfaye worked with a California artist and repertoire ("A&R") representative based in UMG Recordings' Santa Monica, California, offices.  *Id.* ¶¶ 11, 21.

Since 2016, Universal Music Canada, Inc. and UMG Recordings have manufactured, distributed, and licensed *Starboy*, collectively throughout the world.

> **D.    Through California Counsel, Plaintiff and Her California Co-Authors Assert a Claim that *Starboy* Infringes *Hooyo*, but Plaintiff Is Not Paid the Share She Expected of the Settlement Payment**

1n 2017, Plaintiff's co-authors and Squad Music retained a California lawyer, Na'il Benjamin, on their and Plaintiff's behalf, to assert a claim that *Starboy* infringed their copyright in *Hooyo*.  Compl. ¶ 33; Anderson Decl. ¶ 9.  In attorney-client communications that Plaintiff partially discloses in her Complaint, their California lawyer sent them—"Dear Clients"—a draft settlement agreement but allegedly responded unsatisfactorily to Plaintiff's questions, including "how settlement proceeds were to be split."  Compl. ¶¶ 34–35.

Plaintiff and her co-authors' California lawyer, Mr. Benjamin, told Plaintiff she did not own *Hooyo*, presumably because of her Squad Contract with her co-authors.  *Id.* ¶ 36.  Mr. Benjamin, along with Messrs. Uschold and Dangerfield, then struck her name from the proposed settlement agreement and completed the settlement for the "release of claims relevant to Plaintiff's song."  *Id.* ¶ 38.  But Plaintiff's California counsel and her co-authors "failed to tender

to Plaintiff any part of the settlement funds."  *Id.* ¶¶ 36–38.  Notably, the 2017 settlement agreement, like Plaintiff's Squad Contract, includes a California choice of law provision, and provides for exclusive jurisdiction in Alameda County, California.  Anderson Decl. ¶ 10.

      **E.**    **Plaintiff Retains New California Counsel, Who Assert Infringement Claims Against Mr. Tesfaye and Others and California Law Claims Against Them and Plaintiff's California Co-Authors**

Plaintiff then retained new California counsel, the Lowe Law Firm in Los Angeles, California, which claimed that Plaintiff's co-authors breached their Squad Contract and fiduciary obligations by not paying the share of the 2017 settlement agreement proceeds owed to her, that Mr. Tesfaye had induced her co-authors to do so, and that due to *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), Plaintiff could sue for infringement even though her co-authors released the claim. Plaintiff's new California counsel also sent Mr. Tesfaye's transactional counsel a draft Complaint captioned in the United States District Court for the Central District of California, asserting these and other claims and alleging that Mr. Tesfaye is a resident of Los Angeles, California.  Anderson Decl. ¶ 11 & Ex. 11.

However, after Mr. Tesfaye's California counsel raised that *Davis v. Blige* is not the law of the Ninth Circuit, Plaintiff's California counsel, joining with a second California law firm, Doniger / Burroughs, instead filed their Complaint in this Court, alleging that Mr. Tesfaye is a resident of New York.  Anderson Decl. ¶ 12.  They filed in this Court even though Plaintiff, her co-authors, and her counsel are California residents; Messrs. Tesfaye, Quenneville, and Walter are California residents; Weeknd XO and UMG Recordings have their principal places of business in California; *Starboy* was written and recorded in California; the two contracts alleged in Plaintiff's Complaint have California forum clauses; and the alleged creation of a contractual and fiduciary relationship between Plaintiff and her co-authors, as well as her co-authors' alleged breach of fiduciary obligations, all occurred in California.

## ARGUMENT

I.    **VENUE IS IMPROPER BECAUSE A SUBSTANTIAL PART OF THE EVENTS AND OMISSIONS GIVING RISE TO PLAINTIFF'S CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY OCCURRED IN ALAMEDA COUNTY, CALIFORNIA**

Venue is plainly improper on at least three of Plaintiff's claims.[4]

Venue must be proper as to each defendant and each claim. *See PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 757 (S.D.N.Y. 1995). 28 U.S.C. § 1391 determines proper venue for Plaintiff's state law claims and, insofar as not all defendants reside in California, § 1391(b)(1) is inapplicable and § 1391(b)(2) instead governs those claims.

Under § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." This Section "does not require venue in the district with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002).

Plaintiff's fourth claim against the Weeknd Defendants, UMG Recordings, and others is for allegedly aiding and abetting her California co-authors' breach of their alleged fiduciary duty to her, Compl. ¶¶ 63–66, which is the subject of her third claim against her co-authors. *Id.* ¶¶ 53–55. Plaintiff's aiding and abetting claim arises from (1) the alleged existence of a

---

[4] "Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue . . . it is not required that courts do so." *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 408 (S.D.N.Y. 2017) (quoting *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013). "Where personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction in the Southern District of New York, it is prudentially appropriate to address venue first, since a decision to transfer would render personal jurisdiction analysis . . . irrelevant." *Id.* Notably, a court "has power to transfer [a] case even if there is no personal jurisdiction over the defendants . . . if a transfer would be in the interest of justice." *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978).

fiduciary relationship between Plaintiff and her California co-authors, (2) her co-authors' alleged breach of that fiduciary relationship, and (3) defendants' alleged aiding and abetting that breach. Nearly all of the events or omissions giving rise to Plaintiff's aiding and abetting claim occurred in the Northern District of California.

*First*, Plaintiff alleges that a fiduciary relationship exists between Plaintiff and her co-authors because they are parties to the Squad Contract, her co-authors own or are Squad Music, and she and they co-authored *Hooyo*. Compl. ¶ 57. She also alleges that she and her co-authors are residents of, respectively, San Jose, Vallejo, and Oakland, California, and that they created *Hooyo* together. *Id*. ¶¶ 4, 12–13, 20. Also, the Squad Contract bears a Vallejo, California address and, for plaintiff, an "SJ Cal 95125" address, *i.e.*, San Jose, California 95125. *Id.*, Ex. B at 1. Accordingly, all of the events—not just "a substantial part" of them—allegedly creating the fiduciary relationship that is fundamental to the aiding and abetting claim occurred in the Northern District of California.

*Second*, Plaintiff alleges that her California co-authors breached that fiduciary duty by "failing to provide Plaintiffs [sic] with any profits or reimbursements as agreed, making material misrepresentations, granting rights to third parties to the Sound Recording/Composition that they did not have and diverting Plaintiff's funds." Compl. ¶ 59. As a result, all of the acts and omissions—not just "a substantial part" of them—that Plaintiff alleges are fiduciary duty breaches aided and abetted by the other defendants, also occurred in the Northern District of California.

*Third*, stripped of conclusory references to, *e.g.*, unidentified "overt acts," the alleged acts by which defendants supposedly aided and abetted a breach of fiduciary duty are limited to agreeing to sign the 2017 settlement agreement without Plaintiff also signing. Compl. ¶¶ 63–64.

Since her co-authors agreed in California to sign without Plaintiff, at least "a substantial part" of those acts and omissions occurred in Northern California.

Plaintiff's fifth claim is against all defendants for an accounting. Compl. ¶¶ 68–70. That claim cannot be based on the alleged copyright infringement because the Copyright Act preempts state law accounting claims so based. 17 U.S.C. §301(a); *Levine v. Landy*, 832 F. Supp. 2d 176, 192–93 (N.D.N.Y. 2011). In addition, an accounting claim under New York law requires a fiduciary or confidential relationship. *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366, 377 (E.D.N.Y. 2014). Accordingly, Plaintiff's fifth claim necessarily also arises from acts or omissions in the Northern District of California.

Finally, Plaintiff's sixth claim against all defendants is for a judicial declaration as to the interpretation of her California Squad Contract with her California co-authors. Compl. ¶¶ 72–78. That claim also arises from acts in the Northern District of California.[5]

Venue on Plaintiff's fourth, fifth, and sixth claims is not proper here and the action is properly dismissed or transferred to the Northern District of California.

## II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN OR CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)

If, for any reason, the Court does not dismiss or transfer this action for improper venue, it should still be transferred to either the Northern or Central District of California pursuant to 28 U.S.C. § 1404(a). Under this Section, "[f]or the convenience of parties and witnesses, in the

---

[5] Plaintiff's fourth, fifth, and sixths claims are based on her Squad Contract, the claimed fiduciary relationship with her California co-authors, and their alleged breach of that purported fiduciary relationship by not paying her the share she expected from the settlement. Her federal copyright claim, however, is based on her claimed copyright in *Hooyo*, the Weeknd Defendants' alleged access to *Hooyo,* and the creation and public distribution of *Starboy*. Compl. ¶¶ 41–51. As a result, this is not a case "where venue is lacking for a state law claim that arises out of the same nucleus of operative facts as a 'properly venued' federal claim." *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 649 (S.D.N.Y. 2008) (exercising pendent venue over unfair competition claims when they arose from the same nucleus of operative fact as copyright claim).

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Courts have "broad discretion" to grant motions to transfer, which "are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

In ruling on a § 1404(a) motion, courts in the Second Circuit conduct a two-part inquiry. **First**, the court must determine whether the case originally could have been brought in the transferee district. *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). There is no doubt that this case could have been brought against the Weeknd Defendants, as well as UMG Recordings and other defendants, in the Central District of California. Indeed, that is where Plaintiff planned to file this action until her California lawyers learned that the Ninth Circuit has not adopted *Davis v. Blige*. Anderson Decl. ¶¶ 11–12 & Ex. 11. Plaintiff complicates matters by also suing the Squad Defendants for breach of the Squad Contract, which designates the courts in San Francisco as the exclusive forum. Compl., Ex. B at 5. However, while the Weeknd Defendants respectfully request transfer to the Central District of California, they will not object to transfer to the Northern District of California.

> **Second**, the court must consider the following nine factors:
>
> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.

*Herbert*, 325 F. Supp. 2d at 285–86.

When weighing the factors "there is no rigid formula" and "no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

Here, all nine factors either favor the transfer of this matter to California or are neutral and should not affect the Court's analysis.

### A.     The Convenience of the Witnesses Strongly Favors California

The convenience of the witnesses is "probably the most important factor in deciding an application under [§ 1404(a)]." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989) (internal quotation marks omitted).   In a copyright infringement action, the "key witnesses" are the individuals who were involved in the "design, production, and sale" of the allegedly infringing product." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004).   "When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Herbert*, 325 F. Supp. 2d at 286.

Here, there are multiple California witnesses who were involved in the creation and recording of *Starboy*, which is not surprising since it was created and recorded there.  *See* Tesfaye Decl. ¶¶ 3, 12–17, 21.  Accordingly, this factor cuts in favor of transferring the case.

### B.     It Is More Convenient for the Parties to Appear in California

"Transfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the non-moving party's inconvenience." *Frame v. Whole Foods Market, Inc.*, 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007).  Here, it is more convenient for the Weeknd Defendants to appear in California. Both Mr. Tesfaye and Mr. Quenneville currently reside in California, Tesfaye Decl. ¶ 3; Quenneville Decl. ¶ 3, and Weeknd XO's principal place of business is in California.  Anderson Decl. ¶ 6.  Defendant Henry Walter also resides in California.  Tesfaye Decl. ¶ 16; Quenneville

Decl. ¶ 6.

Rather than inconveniencing Plaintiff, transfer to California would actually make the case *more* convenient for Plaintiff to prosecute, as she also is a California resident and is represented by California counsel. *See* Compl. ¶ 4; *Enigma Software*, 260 F. Supp. 3d at 411 (transferring case from the Southern District of New York to the Northern District of California when "neither party [was] located in this District of New York"); *ZPC 2000, Inc. v. SCA Grp.*, 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) ("Since none of the parties reside in New York, it is only logical that a transfer to the residence of one of them would be more convenient."). Therefore, this factor cuts strongly in favor of transfer to California.

### C.      The Relevant Documents and Sources of Proof Are Located in California

In general, because we live in "an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Caldwell v. Slip-N-Slide Records, Inc.*, 2011 WL 3251502, at *4 (S.D.N.Y. July 26, 2011) (quoting *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008)). However, in copyright infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *Id.* All of the documents related to *Starboy's* creation and recording are located in California, including those of the Weeknd Defendants and the many California witnesses. Any documents located in New York can be easily sent to California. Accordingly, this factor supports transfer.

### D.      California Is the Locus of Operative Facts

When determining the locus of operative facts, courts must consider "the degree of relationship between the forum and the cause of action." *Enigma Software*, 260 F. Supp. 3d at 410. In a copyright infringement case, "the operative facts . . . usually relate to the design,

development, and production of an infringing product." *Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 LW 4712632, at \*5 (S.D.N.Y. Sept. 27, 2017). While "courts have at times expanded this analysis to include examination of where infringement occurred . . . if infringement occurred all over the country or world . . . such sales alone do not render a forum the locus of operative facts for a copyright claim." *Id.*

Here, after receiving recordings created in Paris, France, from the Daft Punk Defendants, those recordings and additional music and lyrics were combined to create the musical composition *Starboy* in a recording studio in Hollywood, California. Tesfaye Decl. ¶¶ 12-17; Quenneville Decl. ¶ 5. The completed sound recording was delivered to UMG Recordings' Republic Records division in Santa Monica, California, and while it was sent by UMG Recordings to its New York offices, it was then exploited by UMG Recordings throughout the world. Tesfaye Decl. ¶ 18. As a result, New York is by no means the locus of the operative facts, and this factor definitively favors transfer to California.

### E.    California Can Better Compel the Attendance of Unwilling Witnesses

Because most contemplated witnesses reside in California, this factor weights in favor of transferring the case to California.

### F.    Given Plaintiff's California Residence, the Relative Means of the Parties Is Irrelevant

Plaintiff's Complaint alleges no physical or financial limitations on her ability to litigate. Moreover, because Plaintiff as well as her counsel reside in California, not New York, transfer would mean they no longer have to incur the time and expense of flying back and forth across the country to prosecute this suit. Therefore, this factor actually supports transfer.

### G.    The Forum's Familiarity with the Governing Law Is Neutral

"Familiarity with the governing law is generally given little weight in federal courts."

14

*AEC One Stop*, 326 F. Supp. 2d at 531.  "Where the issue of federal copyright law is a subject on which both courts are familiar, this factor is neutral."  *Id.*  Similarly, when a suit is premised on state law claims, this factor is neutral when the case "involves only common causes of action," including breach of a fiduciary duty and an accounting.  *Khankhanian v. Khanian*, 2017 WL 1314124, at *7 (S.D.N.Y. Apr. 6, 2017).  Because Plaintiff brings only copyright infringement and a series of "common" state law claims, this factor is neutral.

### H.    Plaintiff's Choice of Forum Is Entitled to Little Weight

"A plaintiff's choice of forum, while normally accorded significant weight, is given less deference if the chosen forum is not the plaintiff's home state."  *AEC One Stop*, 326 F. Supp. 2d at 531.  "[W]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever and transfer of venue is appropriate."  *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992).  Here, not only did Plaintiff choose a forum in which neither she nor any of the defendants reside, she did so for the sole purpose of invoking the Second Circuit case, *Davis v. Blige*.  *See* Anderson Decl. ¶ 12.  Plaintiff's decision is unmistakable forum shopping, this Court should give no weight to her decision to file here, and transfer is appropriate.

### I.    Trial Efficiency and the Interests of Justice Favor Transfer to California

The "interests of justice" decidedly favor transfer to California.

*First*, "[w]here the 'natural focus' of the case is in the transferee forum, transfer to that district is consistent with the interest of justice."  *Khankhanian*, 2017 WL 1314124, at *7. Because the overwhelming majority of parties and non-party witnesses reside in California, the relevant documents are located in California, and the relevant facts occurred in California, California is undoubtedly the "natural focus" of the case, and transfer is therefore appropriate.

*Second*, because discovery has not yet begun and there have been limited proceedings in

this forum, it would not waste judicial resources to transfer this action at this early stage. *See Tianhai Lace*, 2017 WL 4712632, at *7 (holding that transferring a case facilitates discovery when the action is in the early stages of litigation and the transferee district is where the operative events occurred).

**Third**, because this Court cannot exercise personal jurisdiction over Mr. Tesfaye, Mr. Quenneville, or Weeknd XO, *see* Section III, *infra*, failing to transfer this case will necessarily result in Plaintiff litigating this matter in multiple forums. Multiplicity of proceedings is strongly disfavored, particularly when there is a proper venue for all defendants and when the claims and parties are intertwined. *See Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 422 (E.D.N.Y. 2017). Because the issues and the witnesses in this case are closely connected and because a California court could exert personal jurisdiction over all defendants—with the sole potential exception being the Daft Punk Defendants, over whom this Court plainly lacks personal jurisdiction—it is in the interests of trial efficiency to transfer this case.

**Fourth**, Plaintiff includes claims against the Squad Defendants arising from their Squad Contract, which designates the courts of San Francisco, California, as the exclusive forum. As a result, failure to transfer this entire action raises the specter of Plaintiff and the Squad Defendants litigating her breach of contract and fiduciary duty claims in California, while Plaintiff and the remaining defendants litigate in New York an aiding and abetting claim based on the same purported breaches. That would waste both judicial and party resources. *See Williams v. City of New York*, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) ("[T]he consideration of the 'interest of justice' factor encompasses the private and public economy of avoiding multiple cases on the same issues.").

**Fifth**, "the interests of justice require that [] court[s] not reward forum shopping." *Lewis-*

*Gursky v. Citigroup, Inc.*, 2015 WL 8675449, at *2 (S.D.N.Y. Dec. 11, 2015).  As stated in Section II.H, *supra*, Plaintiff's decision to file in New York is archetypal forum shopping, and this case should therefore be transferred to California.

### III.    CLAIMS AGAINST MR. TESFAYE, MR. QUENNEVILLE, AND WEEKND XO SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

"On a Rule 12(b)(2) motion, plaintiff carries the burden of demonstrating that jurisdiction exists."  *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012).  The United States Supreme Court has recognized two types of personal jurisdiction.  General jurisdiction allows a court to hear "*any* claim against [a] defendant, even if all the incidents underlying the claim occurred in a different state."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original).  Conversely, specific jurisdiction arises out of a "defendant's contacts with the *forum*."  *Id.*  The Court must conduct the jurisdictional inquiry separately as to each defendant, since "the [Constitutional] requirements . . . must be met as to each defendant over whom a state court exercises jurisdiction."  *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980)) (holding that the court erred "by considering the defending parties together and aggregating their forum contacts in determining whether it had jurisdiction").

Here Plaintiff has not met her burden to show that that this Court can exercise either general or specific jurisdiction over Mr. Tesfaye, Mr. Quenneville, or Weeknd XO.

### A.    There Is No General Jurisdiction Over Mr. Tesfaye, Mr. Quenneville, or Weeknd XO In New York

Under recent United States Supreme Court jurisprudence, general jurisdiction exists only in limited circumstances.

For an individual, general jurisdiction is proper in the location in which the individual is domiciled.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  An individual's domicile is

where the individual resides with the intent of making it his or her home. *Torrico v. Int'l Bus. Machs. Corp.*, 319 F. Supp. 2d 390, 398 (S.D.N.Y. 2004). Because both Mr. Tesfaye and Mr. Quenneville are domiciled in California, not New York, the Court cannot exercise general personal jurisdiction over them.[6] Tesfaye Decl. ¶ 3; Quenneville Decl. ¶ 3.

For a corporation, general jurisdiction is proper in either the corporation's state of incorporation or principal place of business. *Daimler*, 571 U.S. at 137. Only in an "exceptional case" where a corporation is "essentially at home" in another forum, can general jurisdiction be exerted anywhere else. *Id.* at 138–39 & n.19 (providing, as an example of such an exceptional case, *Perkins v. Beneguet Consolidated Mining Co.*, 342 U.S. 437 (1952), in which an Ohio court could exercise general jurisdiction over a Philippine corporation that temporarily relocated to Ohio during World War II); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding that Montana courts could not exercise general jurisdiction over BNSF Railway even though the railway operated 2,000 miles of track and employed 2,000 individuals in the state).[7] "A corporation that operates in many places can scarcely be deemed at home in all of them*." Id.*

---

[6] That Mr. Tesfaye recently leased a condominium in New York does not change his domicile. *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir.), *cert. denied*, 138 S. Ct. 282 (2017). Moreover, when determining a defendant's domicile, "courts must look to the defendant's intent as it existed at the time the plaintiff commenced the action," *Chen v. Guo Liang Lu*, 144 A.D.3d 735, 737 (N.Y. App. Div. 2d Dep't 2016). Here, Plaintiff filed her Complaint in September 2018, but Mr. Tesfaye did not begin leasing the New York condominium until October 2018. Tesfaye Decl. ¶ 7.

[7] Prior to *Daimler*, New York courts exercised general jurisdiction over an individual or corporation that engaged in a "continuous and systematic course of doing business [in New York]." *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990). Since *Daimler*, Second Circuit courts have held that unless a foreign defendant is "essentially at home" in New York, a defendant's continuous and systematic course of doing business in New York is ***not*** sufficient for a court to exert personal jurisdiction over that defendant. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135– 36 (2d Cir. 2014) (finding no general jurisdiction over a foreign bank that operated branch offices in New York); *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (Rakoff, J.) (holding that claims that amount to a "substantial, continuous, and systematic course of business" in New York cannot support general jurisdiction post-*Daimler*), *aff'd*, 882 F.3d 333 (2d Cir. 2018).

(citing *Daimler*, 571 U.S. at 139 n.20).

The Court lacks general jurisdiction over Weeknd XO because it is a Delaware limited liability company with its principal place of business in California.  Anderson Decl. ¶ 7 & Exs. 5–9.  Further, Plaintiff does not and cannot allege facts establishing that this is an "exceptional case" where Weeknd XO has abandoned California for New York.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) ("When a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'").

Accordingly, there is no general jurisdiction over Mr. Tesfaye, Mr. Quenneville, or Weeknd XO in New York.

### B.    There Is No Specific Jurisdiction Over Mr. Tesfaye, Mr. Quenneville, or Weeknd XO in New York

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State." *Goodyear Dunlap Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In order to determine whether specific jurisdiction exists, courts in the Second Circuit conduct a two-part inquiry.  ***First***, the court must determine whether specific jurisdiction is proper under New York's long arm statute, C.P.L.R. 302.  ***Second***, even if jurisdiction is proper under the long-arm statute, the court must examine whether the exercise of jurisdiction comports with Constitutional due process.

#### 1.    New York's Long Arm Statute Does Not Support Specific Jurisdiction

New York's long-arm statute provides multiple ways for a court to exercise specific

jurisdiction over a defendant.  Only two are arguably relevant to this case.[8]  Under C.P.L.R. 302(a)(1), a court can exercise specific jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  Under C.P.L.R. 302(a)(2), a court can exercise specific jurisdiction over a defendant who "commits a tortious act" within the state.  Neither is applicable here.

### a.    Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Did Not "Transact Business" In New York

Plaintiff alleges that Mr. Tesfaye, Mr. Quenneville, and Weeknd XO, "conducted business" in New York.  But broad allegations that a party did business in a state are not sufficient to establish specific jurisdiction.  Instead, a defendant must transact business in a way that constitutes "purposeful activity."  *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 522 (S.D.N.Y. 2018).  Further, the cause of action must "arise from" the business transaction, meaning there must be an "articulable nexus" or "substantial relationship" between the transaction and claim asserted.  *Id.*  When assessing whether a party transacted business, a court must consider "the totality of the circumstances surrounding the defendants' activities in New York in connection with the matter giving rise to the lawsuit" to determine if there is a direct relation between the cause of action and in-state conduct.  *Deitrick v. Gypsy Guitar Corp.*, 2016 WL 7494881, at *5 (S.D.N.Y. Dec. 28, 2016) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)).

---

[8]  Because Plaintiff does not reside in New York, she cannot argue that specific personal jurisdiction is proper under C.P.L.R. 302(a)(3), which provides for personal jurisdiction if a tort causes injury to a person or property within the state.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159 (N.Y. 2011) (holding that the situs of injury for copyright cases is the residence or principal place of business of the copyright owner).  Further, under C.P.L.R. 302(a)(4), which provides for jurisdiction over someone who "owns, uses or possesses any real property situated within the state," there must be a "relationship between the property and the cause of action sued upon."  *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159 (N.Y. App. Div. 1st Dep't 1992).  Here, Plaintiff's claims do not arise from any real property located in New York.

Here, Messrs. Tesfaye and Quenneville and Weeknd XO LLC did not engage in any "purposeful activity" in New York. Messrs. Tesfaye and Quenneville drafted and recorded *Starboy* in a recording studio in Hollywood, California, using music that the Daft Punk Defendants provided from Paris, France. Tesfaye Decl. ¶ 13–17; Quenneville Decl. ¶ 4. Further, the *Starboy* music video was produced in California. Tesfaye Decl. ¶ 19. And Weeknd XO owns the master sound recording created in California. *Id*. ¶ 9.

The marketing and distribution for *Starboy* were not handled by Mr. Tesfaye, Mr. Quenneville, or Weeknd XO. Instead, the sound recording was marketed and distributed by Universal Music Canada, Inc. in Canada and UMG Recordings elsewhere under general distribution contracts signed prior to *Starboy*.[9] Anderson Decl. ¶¶ 3, 5. This broad distribution, without further evidence that Weeknd XO, let alone its licensee, specifically targeted New York is insufficient to satisfy the "transacting business" standard of New York's long arm statute. To hold otherwise would subject defendants to personal jurisdiction anywhere in the world. *See Megna v. Biocamp Labs. Inc.*, 166 F. Supp. 3d 493, 498 (S.D.N.Y. 2016) (finding no specific jurisdiction when plaintiff "fails to distinguish in the Complaint between [defendant's] commerce in New York and commerce in the United States and the world generally"); *Scottevest, Inc. v. AyeGear Glasgow Ltd.*, 2012 WL 1372166, at *4 (S.D.N.Y. Apr. 17, 2012) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011)) (same).

---

[9] The New York choice of law and forum provisions in UMG Recordings' distribution contract are not dispositive. *Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*, 2017 WL 3917040, at *8 (S.D.N.Y. Sept. 5, 2017) (finding that, upon consideration of "the totality of the circumstances" the fact that a party entered into a licensing agreement with a New York company was not enough to establish specific personal jurisdiction under New York's long arm statute); *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009) (the fact that defendant entered into a sales agreement with a New York company that has a New York choice of law provision did not confer specific personal jurisdiction).

Accordingly, specific jurisdiction does not lie over the Weeknd Defendants under C.P.L.R. 302(a)(1).

### b. Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Did Not Commit a Tortious Act in New York

Generally, "a defendant's physical presence in New York is a prerequisite for jurisdiction under § 302(a)(2)." *Theraplant, LLC v. Makarechi*, 2016 WL 7839186, at *3 (S.D.N.Y. Dec. 23, 2016). Moreover, the tort of copyright infringement occurs "at the point of consumer purchase." *Byun v. Amuro*, 2011 WL 10895122, at *6 (S.D.N.Y. Sept. 6, 2011). When a plaintiff fails to plead that defendants themselves sold or distributed infringing materials within New York and instead only alleges that defendants expected the work to be distributed worldwide, specific personal jurisdiction cannot be found. *See id.* at *4. Here, *Starboy* was created in California. That Mr. Tesfaye, Mr. Quenneville, and Weeknd XO could have anticipated that it would eventually be sold in New York, along with every other state in the country and throughout the world, is insufficient to confer personal jurisdiction in New York under C.P.L.R. 302(a)(2).

### 2. Exercising Specific Personal Jurisdiction Over Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Offends Due Process

In order for a court to exercise specific personal jurisdiction, the Constitution requires that a defendant have "minimum contacts" with the forum state and the exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923.

### a. Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Did Not Have The Necessary "Minimum Contacts" With New York

Under the "minimum contacts" prong of the due process analysis, a defendant must have "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 474–75 (1985).  The connection with New York must be such that the defendant "should reasonably anticipate being haled into court there."  *Id.*  The United States Supreme Court has recently underscored that the "relationship [with the forum state] must arise out of contacts that the defendant *himself* creates."  *Walden*, 571 U.S. at 285 (emphasis in original).  Further, there must be a sufficient "connection between the forum and the specific claims at issue."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  "[A] defendant's general connections with the forum are not enough."  *Id.*

For the reasons stated in Section III.B.1.a, *supra*, Plaintiff's conclusory allegation that "Defendants and each of them, made copies of the Infringing Work and sold, distributed, performed, streamed, broadcast, licensed and/or otherwise exploited the Infringing Work" Compl. ¶ 46, is insufficient to establish that the Weeknd Defendants "purposefully availed" themselves of New York law.  Specifically, Plaintiff does not show that any of the defendants *individually* created purposeful connections to New York under which Plaintiff's claims arise.  And none of the Weeknd Defendants would have any reason to believe they would be haled in New York (or any other specific state other than California) based solely on *Starboy's* international distribution.  *See Glob. Gospel Music Grp. LLC v. Habukkuk Music, Inc.*, 2010 WL 4968172, at *4 (S.D.N.Y. Dec. 6, 2010) ("Sales through a third-party commercial website and/or a nationwide distributor do not involve purposeful availment.").  Indeed, asserting personal jurisdiction over the Weeknd Defendants in New York would open the door for a court in **any** state in which *Starboy* was ultimately sold or streamed to exercise specific personal jurisdiction over them.  As others courts faced with similar situations have already determined, such a result is untenable.  *See Gray v. Hudson*, 2015 WL 4488143, at *6–10 (E.D. Mo. July 23, 2015) (refusing to find personal jurisdiction in Missouri over recording artist Katy Perry, her co-

writers, and co-owners of the copyright in her song even though the song was available for download in Missouri, Perry performed concerts there, and Perry's previous songs garnered great popularity in the state).

          **b.**      **Exercising Personal Jurisdiction Over Mr. Tesfaye, Mr. Quenneville, and Weeknd XO Is Not "Reasonable"**

The assertion of specific personal jurisdiction over Messrs. Tesfaye and Quenneville or the Weeknd XO would also "offend traditional notions of fair play and substantial justice." When analyzing this prong, courts consider five factors:

> [1] the burden on the defendant, [2] the interests of the forum State, . . . [3] the plaintiff's interest in obtaining relief[,] . . . [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987).

Mr. Tesfaye and Mr. Quenneville as well as Weeknd XO are domiciled on the other side of the country and defending here would be a significant burden on them. New York has a limited interest in adjudicating the matter because Plaintiff's core claim for copyright infringement is inherently federal in nature, none of the parties reside in New York, and none of the relevant actions occurred in New York. Notably, Plaintiff could obtain more convenient, effective, and complete relief by litigating in the state in which she resides. Therefore, it would be unreasonable for this Court to exercise personal jurisdiction over the Weeknd Defendants.

## IV.    PLAINTIFF'S FOURTH CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY FAILS TO STATE A CLAIM

Finally, the Weeknd Defendants and UMG Recordings join in the Daft Punk Defendants' motion to dismiss Plaintiff's fourth claim for aiding and abetting breach of fiduciary duty, for failure to state a claim. Plaintiff relies on conclusory allegations that make no attempt to

distinguish between the defendants against whom she asserts the claim, and the claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Weeknd Defendants and UMG Recordings respectfully submit that venue is improper in this judicial district and the action should be dismissed or transferred to the Northern District of California. Alternatively, the Weeknd Defendants respectfully request that the Court transfer this case to the Northern or Central District of California or, if the Court declines to do so, the Weeknd Defendants be dismissed for lack of personal jurisdiction over them. In addition, Plaintiff's aiding and abetting claim is properly dismissed for failure to state a claim.

Dated: New York, New York
November 19, 2018

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Peter Anderson*
Peter Anderson (admitted *pro hac vice*)

865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Phone:   (213) 633-6800
Fax:       (213) 633-6899

Marcia Paul
Amanda Levine
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone:   (212) 489-8230
Fax:       (212) 489-8340

*Attorneys for Defendants Abel Makkonen Tesfaye,*
*Jason Quenneville, The Weeknd XO, LLC, and*
*UMG Recordings, Inc.*