**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Yasmin Mohamed p/k/a Yasminah,<br><br>Plaintiff,<br><br>v.<br><br>Abel Makkonen Tesfaye p/k/a The Weeknd; *et al.*,<br><br>Defendants. | Civil Action No.:  1:18-cv-08469-JSR |

## <u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER</u>

Scott Alan Burroughs, Esq.
DONIGER / BURROUGHS
231 Norman Avenue, Suite 413
Brooklyn, New York 11222
(310) 590-1820
scott@donigerlawfirm.com
Attorneys for Plaintiff

## <u>TABLE OF CONTENTS</u>

I.   Introduction and Statement of Facts…………………………………………….……………1

II.  The Court has jurisdiction over the defendants in this matter……………………………..6

      A.  Tesfaye and Weeknd XO are subject to general jurisdiction…………………………..6

      B.  Tesfaye, Quenneville, and Weeknd XO are subject to specific jurisdiction……………..6

           1.  C.P.L.R. 302(a)(1) provides for jurisdiction…………………………………….7

           2.  302(a)(2) provides for jurisdiction……………………………………………..10

           3.  Section 302(a)(3) provides for jurisdiction…………………………………….12

           4.  302(a)(4) provides for jurisdiction……………………………………………..13

           5.  Forum Selection Clauses………………………………………………………..14

           6.  Due Process is satisfied………………………………………………………....15

           7.  Tesfaye's Declaration does not support his motion…………………………….16

III. Venue should not be disturbed……………………………………………………………17

      A.  It will be more convenient for witnesses to litigate in New York………………………18

      B.  It will be more convenient for the parties to litigate in New York………………………19

      C.  The locus of the operative facts is in New York………………………………………..21

      D.  The location of relevant documents is New York,

           which also has a relative ease of access to sources of proof……………………………..22

      E.  This Court has the availability of process to compel the attendance of unwilling

           witnesses, this Court has better familiarity with the governing law,

           and both Courts have similarly busy trial dockets………………………………………22

      F.  The relative financial means of the parties favors Mohamed…………………………..23

      G.  In light of Defendants' attempt to forum-shop, justice favors this venue………………23

      H.  Mohamed's choice of forum should stand……………………………………………..24

IV. The motion fails……………………………………………………………………………..25

## TABLE OF AUTHORITIES

Page(s)

Cases

*AEC One Stop Grp., Inc.*,
  326 F. Supp. 2d ...................................................................................................... 21

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009) .................................................................................... 14

*Amorphous v. Morais*,
  2018 WL 2021748 (S.D.N.Y. Apr. 17, 2018)............................................ 7, 15, 16

*Amorphous*,
  2018 WL 1665233............................................................................................. 8, 16

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
  571 U.S. 49 (2013) ................................................................................................... 20

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
  2018 WL 922191 (S.D.N.Y. Feb. 15, 2018) ......................................................... 15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir.2002).......................................................................................7

*Baron Philippe de Rothschild, S.A. v. Paramount Distillers*, Inc.,
  923 F.Supp. 433 (S.D.N.Y.1996).............................................................................9

*Blakeman v. The Walt Disney Co.*,
  613 F.Supp.2d 288 (E.D.N.Y.2009)....................................................................... 11

*Bristol-Myers Squibb Co. v. Superior Court of Calif., S.F. Cty.*,
  137 S. Ct. 1773 (2017) ............................................................................................ 15

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) ......................................................................................6

*Business Trends Analysts v. Freedonia Group, Inc.*,
  650 F.Supp. 1452 (S.D.N.Y.1987)................................................................... 11, 13

*Capitol Records, Inc. v. Kuang Dyi Co. of RM*,
  2004 WL 405961 (S.D.N.Y. Mar. 4, 2004) ....................................................Passim

*Capitol Records, LLC*,
  611 F. Supp. 2d ...................................................................................................... 22

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
  90 F. Supp. 3d 97 (S.D.N.Y. 2015)........................................................................ 15

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010).................................................................................. 7, 9

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
  307 F. Supp. 2d 553 (S.D.N.Y. 2004).................................................................... 17

*Davis v. Blige*,
  505 F.3d 90 (2d Cir.2007)............................................................................. 5, 23, 24

*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*,
  829 F.Supp. 62 (S.D.N.Y.1993).............................................................................. 11

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016) ..................................................................................... 10

*Employers Ins. of Wausau v. Fox Entm't Group, Inc.*,
  522 F.3d 271 (2d Cir.2008)..................................................................................... 20

iii

*ESPN, Inc. v. Quiksilver, Inc.*,
  581 F. Supp. 2d 542 (S.D.N.Y. 2008) ....................................................... 17, 19, 21

*Firma Melodiya v. ZYX Music GmbH*,
  94 Civ. 6798, 1995 U.S. Dist. LEXIS 795 (S.D.N.Y. Jan. 25, 1995) .................................... 8

*Franklin v. X Gear 101, LLC*,
  2018 WL 3528731 (S.D.N.Y. July 23, 2018) ............................................................... 7

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
  195 F. Supp. 3d 613 (S.D.N.Y. 2016)...................................................................... 19

*Greensky v. Irving Music, Inc.*,
  Copyright L.Rep. (CCH) ¶ 25,276 (S.D.N.Y.1981) ............................................... 11, 12

*Grove Press, Inc. v. Angleton*,
  649 F.2d 121 (2d Cir.1981).................................................................................. 11

*Habrout v. City of New York*,
  143 F.Supp.2d 399 (S.D.N.Y.2001) ........................................................................ 25

*Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.*,
  88 F.R.D. 172 (E.D.N.Y.1980) ............................................................................... 11

*Hypnotic Hats, Ltd. v. Wintermantel Enters.*, LLC,
  2016 WL 7451306 (S.D.N.Y. Dec. 27, 2016)................................................................ 7

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992)................................................................... 18, 23, 24

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
  419 F. Supp. 2d 395, 402 n.3 (S.D.N.Y. 2005)............................................................ 20

*It's a 10, Inc. v. PH Beauty Labs, Inc.*,
  718 F. Supp. 2d 332 (S.D.N.Y. 2010) ...............................................................Passim

*Kiss My Face Corp. v. Bunting*,
  2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) ............................................... 18, 22, 25

*Kreutter v. McFadden Oil Corp.*,
  71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988) ............................................... 10

*Lancaster v. Colonial Motor Freight Line, Inc.*,
  177 A.D.2d 152, 581 N.Y.S.2d 283 (1st Dep't 1992) .................................................... 13

*Laspata DeCaro Studio Corp. v. Rimowa GmbH*,
  2017 WL 1906863 (S.D.N.Y. May 8, 2017)................................................................. 14

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
  2018 WL 3364388 (S.D.N.Y. July 9, 2018) ................................................................. 6

*Lipton v. The Nature Co.*,
  781 F. Supp. 1032 (S.D.N.Y. 1992)........................................................ 11, 12, 13, 18

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) ................................................................................. 14

*Masterson v. Killen*,
  2017 WL 892761 (E.D. Cal. Mar. 7, 2017) ................................................................. 17

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)................................................................................... 16

*Miller v. Mercuria Energy Trading, Inc.*,
  291 F. Supp. 3d 509 (S.D.N.Y. 2018).............................................................. 14, 15

*Minnie Rose LLC v. Yu*,
  169 F. Supp. 3d 504 (S.D.N.Y. 2016) ...................................................................... 15

New York and elsewhere.",
    1986 Copyright L.Dec. (CCH) ¶ 25,967, 1986 WL 8311 (S.D.N.Y.1986) .............................. 12
*Orb Factory*,
    6 F.Supp.2d .................................................................................................................. 19
*Palmer/Kane LLC v. Rosen Book Works LLC*,
    204 F. Supp. 3d 565 (S.D.N.Y. 2016)............................................................................. 24
*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    946 N.E.2d 159 (N.Y. 2011) .......................................................................................... 13
*Posven, C.A. v. Liberty Mut. Ins. Co.*,
    303 F.Supp.2d 391 ......................................................................................................... 17
*Retail Software Servs., Inc. v. Lashlee*,
    854 F.2d 18 (2d Cir.1988).............................................................................................. 10
*Sole Resort, S.A. de C.V. v. Assure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) ............................................................................................ 7
*Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*,
    2000 U.S. Dist. LEXIS 13138, at *21 (S.D.N.Y. Sep. 13, 2000) ................................. 22
*Sygall v. Pitsicalis*,
    2018 WL 5981994 (S.D.N.Y. Nov. 14, 2018) .................................................. 8, 9, 10, 15
*Tebedo v. Nye*,
    45 Misc.2d 222, 256 N.Y.S.2d 235 (N.Y.Sup.Ct.1965) ................................................ 13
*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
    2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017)................................................... 18, 21, 23
*Topps Co. v. Gerrit J. Verburg Co.*,
    961 F.Supp. 88 (S.D.N.Y.1997)..................................................................................... 12
*U.S. Bank Nat'l Ass'n v. Ables & Hall Bldrs.*,
    2008 WL 4694536 (S.D.N.Y. October 27, 2008) .......................................................... 14
*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................................................... 16
*Weingrad v. Telepathy, Inc.*,
    2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) ................................................................. 15
*Whitaker v. American Telecasting, Inc.*,
    261 F.3d 196, (2d Cir.2001)........................................................................................... 13
*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F. 3d 88 (2d Cir. 2000)............................................................................................ 24
*Young Money Entm't, LLC v. Digerati Holdings*, LLC,
    2012 WL 5571209 (C.D. Cal. Nov. 15, 2012)............................................................... 23


Statutes

17 USC §106.......................................................................................................................... 9, 13
28 U.S.C. § 1404(a) ................................................................................................................ 17, 18


Rules

C.P.L.R. 302(a)(1) ............................................................................................................ 7, 8, 10, 15
C.P.L.R. § 302(a) ...................................................................................................................... 8
CPLR 302(a)(1)-(4) ....................................................................................................... 6, 11, 12, 13

Plaintiff, Yasmin Mohamed, opposes the motions to dismiss or transfer filed by Defendants Abel Makkonen Tesfaye, Jason Quenneville, The Weeknd XO, LLC ("Weeknd XO") (collectively "Weeknd Defendants"), and UMG Recordings, Inc. ("UMG"), as follows:

## I.   Introduction and Statement of Facts

This motion is a flawed attempt by Defendants to avoid binding Second Circuit precedent that precludes their attempt to use Tesfaye's hurried, back-room settlement with Mohamed's producers, entered into without her consent, to defeat her copyright infringement claim. There is an overwhelming basis for jurisdiction, and, as far as venue convenience is concerned, almost every witness who will testify, and the bulk of the evidence, are located in New York. Two other important witnesses involved in the creation of the song at issue are located in Paris, France, which is more proximate to New York than to California. The only witness located in California that will testify is Mohamed and she does not claim inconvenience. The motion fails.

***

Tesfaye and his producers copied at least in part Mohamed's song *Hooyo* create the song *Starboy*. Tesfaye and producers Daft Punk, a duo made up of Guy-Manuel de Homem-Christo and Thomas Bangalter, created the initial iteration of *Starboy* in Paris[1] and then Tesfaye and his New York record label, Republic Records, completed and mastered the final version in New York, working with New York producer Tom Coyne at the studio Sterling Sound. [Ex. 1 (Tesfaye Dep.), 46:2-47:23; Ex. 20, resp. 18.] Republic Records, a New York company with offices only in New York, oversaw the mastering of *Starboy* and the marketing *Starboy* from and in New York. [Ex. 2, 18.] Tesfaye then performed the song on multiple occasions in New York

---

[1] See also https://www.youtube.com/watch?v=PRosBRx-RgM&feature=youtu.be (link last accessed at 4:06 pm on December 3, 2018) (at the 22-second mark, Tesfaye states he created Starboy in Paris with Daft Punk and makes no mention of Los Angeles.)

at Madison Square Garden, Barclay's Arena, and Central Park. [Ex. 1, 27:11-23 and 56:24-57:3.]

The agreement that Tesfaye, through his company XO&co, Inc.,[2] entered into with UMG related to *Starboy* makes clear that jurisdiction and venue are proper in New York. It stipulates (a) that "only" the "New York court (State and Federal)" will have "jurisdiction over any controversies regarding this Agreement[,]" (Section 17.3); (b) the parties "consent to and irrevocably and unconditionally agree to be subject to the exclusive jurisdiction of said courts located in New York County[,]" (Section 17.3); and (c) notices sent under the agreement should be sent to Tesfaye in Toronto, Ontario and to UMG in New York (Section 15.1); and (d) that Tesfaye is "not a resident of the state of California" (Section 12.1.3)(emphasis added). [Ex. 4] [Id.] Tesfaye also represents in that agreement that he has sole and exclusive ownership of the sound recordings relevant to the agreement, which is now at issue here. [Ex. 4, par. 12.1.15.]

In an exhibit to this agreement, Tesfaye represents for a second time that he is not a California resident and that "only" New York courts will have jurisdiction over disputes related to the agreement. [Ex. 5, ¶¶9, 11] Tesfaye also entered into an agreement to publish *Starboy* and received royalty payments in that regard. [Exs. 6, 14, 19.] SONGS Publishing, now owned by Kobalt Publishing, a company headquartered in New York, is the publisher. [Exs. 6, 14, 19.[3]] Thereafter, Tesfaye performed *Starboy* in New York on multiple occasions, including at his own concerts and at a commercial event in conjunction with Victoria's Secret. [Ex. 1, 56:16-18.]

Tesfaye is currently the sole occupant in a $60,000.00 per-month luxury condominium in New York City. [Exs. 7, 8.] He testified that he signed his lease in September or October of 2018. [Ex. 1, 36:21-38:11]. He paid taxes in New York in 2017. [Ex. 9] He extolled his "long-

---

[2] The Weeknd XO, Inc are the Weeknd XO LLC successors in interest to this company, of which Tesfay is the sole owner. [Ex. 1, 22:12-13, 35:12-14.] XO is used to conduct Tesfaye's business in the entertainment industry. [Ex. 13 (Dep. of Pays for The Weeknd XO, LLC), 12:18-22.]
[3] See https://www.kobaltmusic.com/contact (last visited at 3:55 pm on December 3, 2018).

term relationship with New York" during his concerts in New York. [Ex. 10.] Tesfaye

represented to UMG in their contract that he "is not a resident of California. [Ex. 4, ¶ 12.1.3; Ex.

5, ¶ 9.] Tesfaye does "all" of his music-related business in New York. [Ex.1. 23:20-24:3.]

   Tesfaye conceded at deposition that his declaration in support of this motion contained

material falsehoods—including but not limited to the material fact of the location at which he

created *Starboy*—and that he failed to read the entire declaration before executing it at his

attorney's urging. [Ex. 1, 53:9-10] And Queneville, who Tesfaye's declaration attests contributed

to the composition of *Starboy* in Los Angeles, testified that he was "not in the room." [Compare

Tesfaye Decl., ¶ 7, with Ex. 11 (Queneville Dep.), 28:9-11.]

   Quenneville is Tesfaye's friend and a producer. [Ex. 11, 10:23-11:3.]. He received a 5%

share of *Starboy* but was unable at deposition to articulate beyond generalities what he

contributed to the song. [Id. at 21:8-19]. He entered into a contract with Tesfaye that covers

*Starboy* and included a New York governing-law clause. [Ex. 12, ¶ 8.] He also entered into a

publishing agreement for *Starboy* with SONGS/Kobalt, which is headquartered in New York.

[Exs. 14, 19.][4]

   Weeknd XO is a record label solely owned by Tesfaye that has leased New York

property and has nothing but a P.O box in California. [Ex. 7; Ex. 11, 7:13-20; Ex. 13, 13:12-15.]

Tesfaye, through Weeknd XO, entered in the above-referenced agreement with UMG, which has

large and long-held offices in New York. [Ex. 1, 13:16-20.] The primary UMG executives

responsible for *Starboy*, Monte and Avery Lipman, are based in those New York offices.[5] [Ex. 1,

---

[4] See https://www.kobaltmusic.com/contact (last visited at 3:55 pm on December 3, 2018).

[5] Tesfaye identified a third UMG employee, Wendy Goldstein, as his most frequent contact, but
also noted that Ms. Goldstein is an artist and repertoire ("A&R") representative, or talent scout,
as opposed to an executive that makes decisions in regard to the distribution of UMG content See

17:24-25, 18:1-5, 24:11-16.] UMG's parent company, Vivendi, has offices only in New York.[6]

     Quenneville entered into an agreement Weeknd XO assenting to the terms of an agreement that Tesfaye/Weekd XO entered into with UMG that called for, amongst other things, copies of *Starboy* to be shipped to New York and sold to its residents. [Ex. 4, 5, 12.]. Per these agreements, UMG arranged for *Starboy* to be distributed, streamed, licensed, and promoted in New York, including the sale of 128,513 *Starboy* albums in New York and 33,430,546 streams (transmissions over the internet) of *Starboy* to New York residents. [Ex. 3, resp. 6.]

     UMG's agreement Amazon, with one of the streaming services responsible for the thirty-three million New York *Starboy* Streams, includes a New York forum clause. [Ex. 3, resp. 1.] And UMG's deal with another streaming service, Spotify USA, was entered into with Spotify in New York. [Id.] And UMG knew these services would stream *Starboy* in New York. [Ex. 3, resp. 32]. UMG knowingly sold *Starboy* in New York through independent brokers [Ex. 3, resps. 27, 28]. And UMG, "from or in New York, [] arranged for the manufacture, marketing and distribution and licensing in some media, of *Starboy*." [Ex. 20, resp. 8]

     UMG entered into at least six contracts relating to *Starboy* that had New York forum-selection stipulations. [Ex. 3, resp. 1.] And UMG executed the Tesfaye agreement in New York with Tesfaye's New York counsel, as per Weeknd XO's witness, "all" of Tesfaye's deals are made in New York. [Ex. 3, resp. 7; Ex. 13; 23:20-24:3][7]

     Earlier this year, after Tesfaye learned of the claim of infringement at issue, his attorneys, Kenneth R. Meiselas and Stuart Prager at New York law firm Grubman Shire Meiselas & Sacks,

---

Richard E. Caves, Creative Industries: Contracts Between Art and Commerce, 67-70 (2002) (A&R representatives are "talent scouts").
[6] https://www.vivendi.com/en/contacts-en/ (last visited at 7:11 pm on December 3, 218).
[7] "All of [Tesfaye's] deals, as I understand it, you know, are negotiated by attorneys at a law firm based out of New York." Id.

worked to quickly settle and conceal the claims.[8] Meiselas and Prager drafted and delivered to a California law firm a proposed settlement agreement that would release all claims as to *Starboy*. [Ex. 15.] This agreement included a New York venue clause and required notices made thereunder to be delivered to New York. [Id.] When Mohamed would not consent to the proposal, Tesfaye removed Mohamed as a signatory and the agreement was signed only by Tesfaye and Mohamed's two collaborators. [Id.] Mohamed never consented to or received any benefit from that agreement. Mohamed Decl. ¶3.

Under Second Circuit law, an infringer cannot deprive an artist of her rights in a song by negotiating a deal without her consent.[9] To avoid this precedent, UMG and Republic initially represented to this Court that the Court had no jurisdiction over the claims here.[10] It did so despite UMG being a party to at least 260 cases in New York, a number of which were filed by UMG. [Ex. 16.] And despite a prior action, *Rams v. Def Jam Recordings*, in which UMG vigorously argued to a Central District of California Court that California inconvenient.

The California court noted that "[a]lthough UMG is located in Santa Monica, UMG would prefer the case to be litigated in SDNY because Def Jam, the division of UMG responsible for the release of "Don't Tell 'Em," is located in New York, New York." [Id.] Here, Republic, the "division of UMG responsible for" *Starboy*, is also located in New York. In fact, Def Jam and Republic share the same offices at 1755 Broadway, New York, New York 10019. [Ex. 18] The *Rams* Court also notes that UMG "point[ed] out that California's connection to this case is negligible because neither Plaintiffs, Felton, nor the relevant division of UMG reside in

---

[8] http://www.gsmlaw.com/the-firm/index (last visited at 9:47 am on December 4, 2018)
[9] *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir.2007).
[10] See Report Re Case Management Plan, S.D.N.Y Dkt. No. 43, pgs. 1-2 (UMG and Republic intend to file a motion to dismiss for lack of personal jurisdiction and that they have "no minimum contacts with the State of New York").

this district." [Ex. 17, pg. 6.] Here, neither Tesfaye or Republic, the "relevant division of UMG," currently reside in California. Yet, UMG takes the exact opposition position in this case.

UMG's representations to this Court that it has "no minimum contacts with New York" and is not subject to jurisdiction here was false. UMG now argues only that venue is inconvenient. [11] Per UMG's litigation record and its position in *Rams*, that is also false.

## II. The Court has jurisdiction over the defendants in this matter.

This court has general and specific jurisdiction over the other Defendants, as follows:

### A. Tesfaye and Weeknd XO are subject to general jurisdiction.

Courts have general personal jurisdiction over individuals in their state of domicile or where they are essentially at home. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). Tesfaye and his one-person company, Weeknd XO, are currently domiciled in New York, having entered into a lease for a New York apartment. [Ex. 7, 8.] Tesfaye, through Weeknd XO, executed this lease in September of this year, before or around the time this case was filed. [Id.] Although the lease is with XO, Tesfaye is identified as the occupant. [Ex. 7, p. 7, para. 2] Weeknd XO, in entering into that lease, which is the only lease for *any* property produced by Weeknd XO (it claims to have only a P.O. Box in California), is also subject to jurisdiction here. [Ex. 13, 48:20-25.]

### B. Tesfaye, Quenneville, and Weeknd XO are subject to specific jurisdiction.

Mohamed's claims arise from Weeknd Defendants' contracting to supply goods or services in New York, committing tortious acts in New York and outside of New York causing injury in New York, and because each "owns, uses or possesses [] real property" here. CPLR Section 302(a)(1)-(4). [12]

---

[11] UMG claimed improper venue only in Connection with the now-dismissed Claim No. 4.
[12] The Supreme Court's recent jurisdictional decisions have no impact on the specific jurisdiction

1.    **C.P.L.R. 302(a)(1) provides for jurisdiction.**

New York courts "may exercise personal jurisdiction over any non-domiciliary ... [1] who in person or through an agent ... transacts any business within the state, so long as [2] the plaintiff's cause[s] of action arise[ ] from that transaction." *Amorphous v. Morais*, No. 17 CIV. 631 (NRB), 2018 WL 2021748, at *1 (S.D.N.Y. Apr. 17, 2018)(citation omitted). A claim "arises from" a business activity when there is "some articulable nexus between the business transacted and the cause of action sued upon" or "when there is a substantial relationship between the transaction and the claim asserted." *Sole Resort, S.A. de C.V. v. Assure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). The 2nd Circuit rejects the position that the relevant contacts should be construed "narrowly." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127–28 (2d Cir.2002) (court should consider defendant's <u>maintenance of an apartment in New York</u> and work for New York clients as relevant contacts).[13]

Section 302(a)(1) is a "single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York." *Franklin v. X Gear 101, LLC*, No. 17CIV6452GBDGWG, 2018 WL 3528731, at *6 (S.D.N.Y. July 23, 2018), report and recommendation adopted, No. 17CIV6452GBDGWG, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018)(citations omitted). In fact, a "single act of shipping a [good] might well be sufficient, by itself to subject [a nondomiciliary] to the jurisdiction of a New York court under section 302(a)(1)." Id., citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)(single shipment and extensive business suffices); *Hypnotic Hats, Ltd. v. Wintermantel*

---

analysis. *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 CIV. 8459 (LGS), 2018 WL 3364388, at *8 (S.D.N.Y. July 9, 2018)(jurisdiction still appropriate over defendant that does business or contracts to do so in New York if there is "a nexus between the[] claims and the defendants' conduct that constitutes transacting business in New York.").

[13] Tesfaye and Weeknd XO lease an apartment in New York. [Ex. 7.]

*Enters*., LLC, 2016 WL 7451306, at *2 (S.D.N.Y. Dec. 27, 2016) (shipment of goods to New York consumers suffices for jurisdiction in New York under § 302(a)(1) ).

Tesfaye, Weeknd XO, Quenneville, and UMG entered into multiple agreements with one another and independent sales agents and distributors that resulted in the sale and shipment of at least 128,513 *Starboy* albums to New York and 33,430,546 streams (distributions via the internet) of *Starboy* to New York residents. [Ex. 3, resp. 6, 27; Exs. 4, 12.][14] And UMG, "from or in New York, [] arranged for the manufacture, marketing and distribution and licensing in some media, of *Starboy*." [Ex. 20, resp. 8] This more than suffices.

And Weeknd Defendants cannot argue that the agreements are not germane because they mention the entirety of the United States and do not specifically mention New York in some instances, as infringers are found to "contract[] to supply goods" in New York, even though [the] agreement did not specifically mention New York. *Firma Melodiya v. ZYX Music GmbH*, 94 Civ. 6798, 1995 U.S. Dist. LEXIS 795, at *5 (S.D.N.Y. Jan. 25, 1995). Here, even if the UMG agreement does not specifically mention New York, UMG knew that they would include the distribution of sound recordings in New York. [Ex. 3, resps. 27, 28].

And Weeknd Defendants cannot argue that the sales and streams of *Starboy* in and to New York are irrelevant because they took place through independent sales agents and distributors, as New York allows for exercise of jurisdiction over a party "who in person <u>or through an agent</u> ... transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" *Sygall v. Pitsicalis*, No. 18-CV-2730 (VSB), 2018 WL 5981994, at *2 (S.D.N.Y. Nov. 14, 2018). Jurisdiction is thus proper under C.P.L.R. § 302(a), because the

---

[14] Defendants, through agents, sold more $200,000.00 in infringing product in New York, a level previously found to support jurisdiction. *Amorphous*, 2018 WL 1665233, at *5.

Weeknd Defendants, through UMG and other agents, "sold and shipped" and streamed to New York the infringing *Starboy* copies and earned profits from same. *Sygall,* 2018 WL 5981994, at *3. Indeed, Tesfaye and Quenneville were to receive 28.34% and 5% respectively from the exploitation of the *Starboy* composition in New York and beyond. [Ex. 12, pg. 5.]

This section is "typically invoked" against a defendant who "commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Chloe,* 616 F.3d at 171 (emphasis added)(citations omitted). Copyright infringement is "a commercial tort." *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03 Civ. 0520, 2004 WL 405961, at *1 (S.D.N.Y. Mar. 4, 2004). The Weeknd Defendants committed the commercial tort of copyright infringement when they contracted with one another, UMG, and third parties to distribute and otherwise exploit *Starboy* in New York. And when they directly or through an agent contracted for *Starboy* to be completed and mastered at a New York studio with Tom Coyne, a New York producer. Tesfaye's performance of *Starboy* in New York multiple times alone is enough. *Baron Philippe de Rothschild, S.A. v. Paramount Distillers*, Inc., 923 F.Supp. 433, 436 (S.D.N.Y.1996) (test "satisfied with proof that just one transaction occurred in New York as long as defendants' activities were purposeful and substantially related to plaintiffs' claim."). This suffices to establish jurisdiction.

And Mohamed's claim arises from the aforementioned conduct. When Weeknd Defendants completed and mastered the song in New York, it violated her exclusive right to reproduce and create derivative works from *Hooyo*, and when they distributed, sold, streamed, and performed *Starboy* in New York (or entered into contracts to do so), it violated her exclusive right to perform and distribute her song. See 17 USC §106 (author has exclusive right to reproduce, distribute, create derivates from, and perform her work).

Moreover, Weeknd XO is subject to jurisdiction because it entered into the UMG agreement allowing for the distribution of *Starboy* in New York [Ex. 4] and it "transact[ed] business" in New York "through an agent." N.Y. C.P.L.R. § 302(a)(1). It is subject to jurisdiction because its agent and principal, Tesfaye "engaged in purposeful activities in the state ... with the consent and knowledge of [XO], who both benefitted from those activities and exercised extensive control over [the party] in the transaction underlying th[e] suit." *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir.1988); see also *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). As Weeknd XO entered into the agreements with Quenneville regarding *Starboy* and UMG to promote and distribute *Starboy* in New York, it "developed and served a market for its products there[,]" which would support jurisdiction. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016).

Quenneville also entered into an agreement with Weeknd XO that allowed for the distribution, performance, and other exploitation of *Starboy*, through UMG, in the state of New York, and that agreement included a New York governing law provision. [Ex. 12.] And he received 5% of the monies from *Starboy*'s exploitation in New York. [See Ex. 11, 23:15-16.] And he entered into a publishing agreement for the exploitation of his song in New York. [See Ex. 5 (song was published by Songs / Kobalt)]. Jurisdiction is proper here.

2.    **302(a)(2) provides for jurisdiction.**

Specific jurisdiction is proper if the Weeknd Defendants committed acts of infringement in New York, either directly or through an agent. *Sygall,* 2018 WL 5981994, at *2 (jurisdiction proper if party or its agent "commits a tortious act within the state."). Indeed, the transmission of songs into a state pursuant to an arrangement entered into by the defendant with a third party will

warrant a finding that defendant contracted to supply goods within the state. *Greensky v. Irving Music, Inc*., Copyright L.Rep. (CCH) ¶ 25,276 (S.D.N.Y.1981).

Tesfaye committed such an act on the multiple occasions he performed *Starboy* in New York (or contracted to do so). And all Weeknd Defendants committed such acts every time that *Starboy* was performed, distributed, or streamed by them or their agents or licensees in New York. *Capitol Records*, 2004 WL 405961, at *1.

And Weeknd Defendants' argument that the infringement at issue took place in California fails because copyright infringement is a commercial tort that is "deemed to take place at the point of consumer purchase." *Lipton v. The Nature Co*., 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992), *aff'd sub nom. Lipton v. Nature Co*., 71 F.3d 464 (2d Cir. 1995), citing *Business Trends Analysts v. Freedonia Group, Inc*., 650 F.Supp. 1452, 1456 (S.D.N.Y.1987). And "[e]ven if a non-domiciliary defendant commits infringement through sales by independent brokers or retail merchants in New York, this constitutes tortious conduct within New York and subjects the defendant to jurisdiction under CPLR Section 302. Id. at 1036, citing *Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc*., 88 F.R.D. 172, 173 (E.D.N.Y.1980). Notably, the "actual seller of the allegedly infringing product <u>need not be a formal agent</u> of the defendant; the term agent is given a broad interpretation." Id., citing *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir.1981).[15]

---

[15] See also *Blakeman v. The Walt Disney Co*., 613 F.Supp.2d 288, 302 (E.D.N.Y.2009) (allegations that defendant supplied "the plaintiff's work with knowledge that the subsequent infringing movie would be distributed in New York" meet requirements of Section 302(a)(2); *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc*., 829 F.Supp. 62, 64–65 (S.D.N.Y.1993) ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state ... even if the products for sale are offered through independent brokers in New York."; *Lipton v. The Nature Co*., 781 F.Supp. 1032, 1035–36 (S.D.N.Y.1992) ("actual seller of the allegedly infringing product need not be a formal agent of the defendant; the term agent is given a broad interpretation.").

The Weeknd Defendants knew that *Starboy* would be marketed, sold, and performed in New York at the time they entered into agreement with UMG and others for the mastering, promotion, distribution, streaming and sale of copies of *Starboy*. [Ex. 3, resp. 8.]. Given that the Weeknd Defendants' agreements allowing for the exploitation of *Starboy* were for the entirety of the United States, and given New York's large media market, it is clear that they knew *Starboy* would be distributed in New York. And Weeknd Defendants' agreement with UMG for *Starboy* included a New York forum and law clause and payment of royalties in connection with the New York exploitation. These royalties establish a solid basis for jurisdiction in New York. See, *Lipton,* 781 F. Supp. at 1035–36. (payment of 3% to 5% royalty establishes jurisdiction).[16]

Given the foregoing, Defendants' "argument that [they do] not reside in New York and that the principal events in this dispute took place in California are essentially irrelevant" for purposes of determining the propriety of venue under CPLR 302(a)(2). *Capitol Records, Inc.,* 2004 WL 405961, at *2. Jurisdiction is proper here.

### 3.    Section 302(a)(3) provides for jurisdiction.

C.P.L.R. § 302(a)(3) confers jurisdiction for torts committed outside New York causing injury in New York. "[C]ourts determining whether there is injury in New York sufficient to

---

[16] Jurisdiction over the Weeknd Defendants also exists because they entered into separate publishing agreements that contemplated royalties for exploitations in New York. [See Exs.6, 14, 19.] *Topps Co. v. Gerrit J. Verburg Co.,* 961 F.Supp. 88, 91 (S.D.N.Y.1997). In *Greensky,* 1981 Copyright L.Dec. (CCH) ¶ 25,276, "a non-domiciliary song composer" was subject to jurisdiction due to an agreement to license his music "to radio stations, television networks, and other users of music." Here Tesfaye entered into an agreement with UMG to license and otherwise exploit his work through those same outlets. And in *Meyer v. Sharron*, the assignment of the "public performance rights in a song to ASCAP represented a contract to supply goods or services in the state, regardless of where the non-domiciliary composer had entered into the agreement with ASCAP, and regardless of the fact that ASCAP was merely a licensing clearinghouse which licensed the music to users in New York and elsewhere." 1986 Copyright L.Dec. (CCH) ¶ 25,967, 1986 WL 8311 (S.D.N.Y.1986). Here, the Weeknd Defendants also licensed Starboy to their publisher for licensing in New York and beyond. [Exs. 4-6, 12, 14.]

warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Whitaker v. American Telecasting, Inc*. 261 F.3d 196, 208-09, (2d Cir.2001)(citations omitted). "[T]he situs of the injury is the location of the original event which caused the injury, <u>not the location where the resultant damages are felt by the plaintiff</u>." Id. (emphasis added and citations omitted). Copyright infringement is a commercial tort that is "deemed to take place at the point of consumer purchase." *Lipton*., 781 F. Supp. at 1035, citing *Business Trends Analysts*, 650 F.Supp. at 1456.[17] Thus, Defendants' completion and mastering of *Starboy* in New York at Sterling Sound, which violated Mohamed's right of reproduction under 17 USC §106, is sufficient to confer jurisdiction under this Section, as is the distribution and performance of *Starboy* in New York.

### 4.    302(a)(4) provides for jurisdiction

The Weeknd Defendants are also subject to jurisdiction because each "owns, uses or possesses [] real property situated within the state." CPLR 302(a)(4). Under this section, jurisdiction is proper if the Mohamed's claim arises "out of the fact of ownership, use or possession of New York realty." *Tebedo v. Nye*, 45 Misc.2d 222, 256 N.Y.S.2d 235, 236 (N.Y.Sup.Ct.1965); see also *Lancaster v. Colonial Motor Freight Line, Inc*., 177 A.D.2d 152, 581 N.Y.S.2d 283, 288 (1st Dep't 1992) ("[Section § 302(a)(4)] requires a relationship between the property and the cause of action sued upon."). Here, Defendants, directly or through agents, used and possessed the Sterling Sound property in New York City to complete and master *Starboy*, the very song at issue in this case. [Ex. 20, resp. 18.] This establishes jurisdiction.

---

[17] Defendants argue the opposite – that the injury occurs where the copyright is located – and rely on a non-pin-cited *Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159 (N.Y. 2011). But that case involved sales over the internet and a New York copyright holder and concluded "that a derivative economic injury felt in New York based solely on the domicile of the plaintiff is insufficient to establish an in-state injury."). *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302, 921 N.Y.S.2d 171, 946 N.E.2d 159 (2011) This provides them no support.

5.    **Forum Selection Clauses**

The Weeknd Defendants' contracts with one another and UMG, all of which cover

*Starboy*, include express forum selection and governing law clauses establishing that any dispute

relating to the agreement would be litigated in New York. [Exs. 4, 5, 12.] This alone is sufficient

to establish jurisdiction and venue. *U.S. Bank Nat'l Ass'n v. Ables & Hall Bldrs*., No. 08 Civ.

2540(DC), 2008 WL 4694536, at *8 (S.D.N.Y. October 27, 2008) (if forum selection clause is

enforceable, "it is not necessary to analyze jurisdiction under New York's long-arm statute or

federal constitutional requirements of due process.").

Mohamed is not a signatory to these agreements but this is "insufficient, standing alone,

to preclude enforcement of a forum selection clause." *Miller v. Mercuria Energy Trading, Inc.*,

291 F. Supp. 3d 509, 522–23 (S.D.N.Y. 2018)(JSR), citing *Aguas Lenders Recovery Grp. v.*

*Suez, S.A*., 585 F.3d 696, 701 (2d Cir. 2009). And "where the alleged conduct of the nonparties is

closely related to the contractual relationship, a range of participants, parties and nonparties,

should benefit from and be subject to forum selection clauses." Id., citing *Magi XXI, Inc. v. Stato*

*della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (internal quotation omitted); see also

*Laspata DeCaro Studio Corp. v. Rimowa GmbH*, No. 16 CIV. 934 (LGS), 2017 WL 1906863, at

*6 (S.D.N.Y. May 8, 2017)(it is "well established that a range of transaction participants, parties

and non-parties, should benefit from and be subject to forum selection clauses.").

"In order to bind a non-party to a forum selection clause, the [non-party] must be 'closely

related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Aguas Lenders*

*Recovery Grp.,* 585 F.3d at 701 (citation omitted). While Mohamed is not a party to the

agreements, those agreements covers the songs that Tesfaye and Quenneville delivered to UMG,

and included an express warranty that the songs did not infringe any copyrights, and an

- 14 -

indemnity against any copyright claims, would be enforced in connection with copyright claims related to *Starboy*.[18] Mohamed's claims are thus directly related to the "signatory party's interests or conduct." Id. at 523, citing *Weingrad v. Telepathy, Inc*., No. 05-CV-2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005)(citations and quotation marks omitted).

### 6. Due Process is satisfied.

Due process is met "where the defendant[s] purposefully availed [themselves] of the privilege of doing business in the forum and could foresee being haled into court there," if plaintiff's claims "arise out of or relate to the defendant[s'] contacts with the forum." *Amorphous*, 2018 WL 2021748, at *1 (citation omitted). Because New York's long-arm statute is more restrictive than the federal due process requirements, courts generally find that by virtue of satisfying the long-arm statute, the minimum contacts and reasonableness requirements of due process will also be satisfied. *Chatwal Hotels & Resorts LLC v. Dollywood Co*., 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015); see also *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 515 (S.D.N.Y. 2016)(citation omitted)(the analysis "overlaps significantly" with New York's § 302(a)(1) inquiry[.]"). To comport with due process, a defendant must have "minimum contacts with the forum state such that the maintenance of the action does not offend traditional notions of fair play and substantial justice." *Sygall*, 2018 WL 5981994, at *3 (citations omitted).

Here, as discussed above, Weeknd Defendants have extensive contacts with New York, including infringing "activity [] that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court of Calif., S.F. Cty*., 137 S. Ct. 1773, 1780 (2017).[19]  These include the Defendants' completing, mastering, performing,

---

[18] It is likely that UMG has enforced the indemnity provision here. [Ex. 15.]
[19] Notably, *Bristol-Myers* involved a state court's exercise of jurisdiction over a mass tort case and a decision that was predicated on federalism concerns that are largely inapplicable here. See

marketing, and promoting the song in New York, which conduct is subject to New York regulation and "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). This conduct is relevant whether committed while in-state or out of state, though an agent or through the mail or delivery of goods or streams. Id. Given this extensive interaction with New York, it does not offend fair play for jurisdiction to be found.

Each of the Weeknd Defendants "has transacted business in New York, out of which plaintiff's claims of infringement arise [so plaintiff] has made a *prima facie* showing that exercising jurisdiction is consistent with New York law and due process." *Amorphous,* 2018 WL 2021748, at *4 (citation omitted). And Defendants do not present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Amorphous*, 2018 WL 1665233, at *7, citing *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (internal quotation marks omitted).[20]

### 7.    Tesfaye's Declaration does not support his motion.

Tesfaye conceded that his declaration in support of this motion ("Tesfaye Declaration") contained falsehoods, including <u>where</u> the sound recording at issue was initially created, admitting that he created it in Paris, France with members of Daft Punk, and <u>who</u> was present when it was recorded, admitting that McKinney and Walter's contribution was limited to "additional processing." [Ex. 1, 61:5-9.] Tesfaye also conceded at deposition that he lives in New

---

Id., 137 S. Ct. 1773, 1780. And the Supreme Court specifically left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1784. Thus, this case "did not change the law, and certainly did not do so "dramatically." *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-CV-8852 (JMF), 2018 WL 922191, at *2 (S.D.N.Y. Feb. 15, 2018).

[20] That is because (1) litigating here imposes no due burden on Defendants; (2) the forum has an interest in adjudicating these copyright allegations against New York companies related to a song that was completed and exploited here; (3) plaintiff will obtain proper relief here; (4) it is efficient to litigate here in light of the above; and (5) social policies are furthered by litigating these claims here. Id.

York with his girlfriend, which rebuts the Tesfaye Declaration's assertion that he lives in California. Tesfaye's testimony is in accord with the UMG agreements, which expressly represent that he is "not a resident of California. [Ex. 4, section 12.1.3; Ex. 5, ¶ 9.] He then disavowed the entire declaration, testifying that he, at the time of his deposition, had not read it in its entirety. [Ex. 1, 53:9-10.] That declaration, which provides the bulk of Defendants' evidentiary support, should be stricken or otherwise disregarded.[21] The motion fails.

### III.    Venue should not be disturbed.

Defendants concede that venue over the copyright claim is proper here and argue only that this forum is inconvenient.[22] They move solely via 28 U.S.C. § 1404(a), under which, "the moving party bears the burden of establishing 1) that the action is one that 'might have been brought' in the district to which the movant seeks to have it transferred,[23] and 2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses, and the interests of justice." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 546 (S.D.N.Y. 2008). quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F.Supp.2d 391, 400–01 (citation omitted).

In applying 1404(a), "courts employ an individualized, case-by-case consideration of convenience and fairness[,] " drawing "all reasonable inferences and resolve all factual conflicts in favor of the plaintiff's choice of forum. Id., at 546-547, citing *Posven, C.A.*, 303 F.Supp.2d at 401; *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (citation omitted). The Defendants bear "the burden of making out a strong case for transfer, and

---

[21] "The Court can have no confidence in a declaration which the declarant himself disavows." *Masterson v. Killen*, No. 111CV01179DADSABPC, 2017 WL 892761, at *5 (E.D. Cal. Mar. 7, 2017), report and recommendation adopted, No. 111CV01179DADSAB, 2017 WL 3530969 (E.D. Cal. Aug. 17, 2017).
[22] They challenged the now-dismissed non-copyright claims (Nos. 1-6). See S.D.N.Y. Dkt. No. 63.
[23] The parties agree that this action could have been brought in California, though Mohamed notes that UMG has previously argued that California for it is an inconvenient venue.

courts evaluate such motions under a <u>clear and convincing evidence standard</u> in determining

whether to exercise discretion to grant a transfer motion." *Tianhai Lace USA Inc. v. Forever 21,*

*Inc.*, No. 16-CV-5950 (AJN), 2017 WL 4712632, at *2 (S.D.N.Y. Sept. 27, 2017) (emphasis

added), citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 113-114 (2d Cir. 1992); see also

*Lipton*, 781 F.Supp. at 1036 ("heavy burden" to transfer a copyright infringement action).

### A.  It will be more convenient for witnesses to litigate in New York.

The "single most important factor under a section 1404(a) transfer analysis may be the

convenience of parties and witnesses." *Kiss My Face Corp. v. Bunting*, No. 02CIV2645 (RCC),

2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003)(citation omitted). So owing, "the moving

party must provide the Court with a detailed list of probable witnesses who will be

inconvenienced if required to testify in the current forum.," and a "general statement" of the

testimony. Id .(citations omitted). Here, Defendants "failed to supply the Court with any list,

detailed or otherwise, to meet this burden." Id. (rejecting motion). The witnesses discussed in

paragraph 14-17 of the Tesfaye declaration (which he disavowed) are primarily business contacts

and individuals with little relevant knowledge (e.g., the director of a music video for *Starboy*).

None of them have any knowledge relating to this case that cannot be obtained directly from

Tesfaye, [see Ex. 1, 61:5-11], and, if they do, Tesfaye's declaration makes only vague references

to the witnesses and does not identify the substance of that purported knowledge. And there is no

evidence of inconvenience. Also, Tesfaye admitted that the song was created in Paris, not Los

Angeles, and to the extent the declaration makes statements about individuals witnessing the

creation of *Starboy* in California, those are presumably false.[24]

Defendants' vague "assertions are not sufficient to justify a transfer of this action to the

---

[24] Defendants also failed to meet their burden of identifying "statement of topics" or "evidence"
within California. *Capitol Records, Inc.,* 2004 WL 405961, at *3 (motion "must specifically list
the evidence and witnesses" and "a general statement of the topics of each witness' testimony.").

Central District of California." Id., citing *Orb Factory*, 6 F.Supp.2d at 208–09 ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue.").

And "[t]ypically in a copyright infringement action, the key witnesses are those individuals who were involved in the design, production, and sale of the allegedly infringing product." *Freeplay Music, LLC v. Gibson Brands, Inc*., 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) (citation omitted). And for companies, "those officers and employees who were involved" in same. *ESPN, Inc.*.., 581 F. Supp. 2d at 548 (citations omitted). Republic, which has offices only in New York, and UMG, whose New York offices are the ones with which Tesfaye does "all" of his business [Ex. 1, 17:10-25, 18:1-6, 24:11-16], are both in New York. As is Sterling Sound, where the recording in its final form was crated. And the most important individual witnesses—Tesfaye, Coyne, Prager, Meiselas, Avery Lipman, and Monte Lipman—are all located in New York. Indeed, UMG, "from or in New York, [] arranged for the manufacture, marketing and distribution and licensing in some media, of *Starboy*." [Ex. 20, resp. 8] And Tesfaye does "all" of his business here. [Ex.1. 23:20-24:3.] Finally, "the convenience of non-party witnesses is accorded more weight than that of party witnesses*." It's a 10, Inc. v. PH Beauty Labs, Inc*., 718 F. Supp. 2d 332, 336 (S.D.N.Y. 2010) (citations omitted). Non-parties Coyne, Prager, and Meisalas are in New York. And Daft Punk is in Paris, making it far more convenient for them to travel to New York. This factor favors denying the motion to transfer.

**B.  It will be more convenient for the parties to litigate in New York.**

When "analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices." *Freeplay Music, LLC*., 195 F. Supp. 3d at 618 (S.D.N.Y. 2016) (citations omitted). Republic and UMG, as well as their parent

company, Vivendi, are all based in New York. Republic has offices only in New York and Vivendi has U.S. offices only in New York.  And Tesfaye/XO reside in, and conduct "all" of their business, New York. And, as noted above, the New York offices of Republic Records, UMG, and Vivendi, as well as the offices of Stuart Prager and Kenneth Meiselas, are also in New York, making access to evidence at these locations easier here.

Notably in connection with Tesfaye, his convenience must be "measured at the time [the factors] are balanced, rather than at the time of the original complaint, since the court's primary concern is determining the connection between the action and the forum." *It's a 10, Inc..,* 718 F. Supp. 2d at 335, citing *Employers Ins. of Wausau v. Fox Entm't Group, Inc*., 522 F.3d 271, 277 n. 5 (2d Cir.2008). While Tesfaye may not have lived in New York at the time of the filing of this action (his lease includes a September 2018 signature date), he certainly does now.

Moreover, in *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co*., the court found this factor to weigh against transfer because the movant party had previously brought suit in the current forum. 419 F. Supp. 2d 395, 402 n.3 (S.D.N.Y. 2005). Here, UMG has been a party to at least 260 cases in New York. [Ex. 16.] In at least eight of those cases, UMG is the lead plaintiff. [Id.]

Finally, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013)(emphasis added). Here, the Defendants entered into multiple agreements with one another and third parties that included a New York forum selection clause for any claims related to their agreement, which included representations regarding copyright. [Ex. 3, Rsp. 1; Exs. 4-5, 12.] It cannot now argue against venue here.

The only party that may be inconvenienced by this litigation occurring in New York is

Mohamed but that inconvenience is mitigated by her counsel having offices in New York. This factor favors maintaining New York venue.

### C.  The locus of the operative facts is in New York.

In a copyright case, the operative facts "usually relate to the design, development and production of an infringing product." *Tianhai Lace USA Inc.,*  2017 WL 4712632, at *4, citing *AEC One Stop Grp., Inc.,* 326 F. Supp. 2d at 530. Here, *Starboy* is the infringing product and it was completed in New York and then mastered by Coyne, a New York resident, at Sterling Sound in New York. [Ex. 20, resp. 18.] Republic then promoted *Starboy* from and in New York. And UMG, "from or in New York, [] arranged for the manufacture, marketing and distribution and licensing in some media, of *Starboy*." [Ex. 20, resp. 8]. UMG entered into an agreement with Tesfaye to distribute *Starboy* in New York and had a New York forum clause. [Ex. 4.] The UMG representatives responsible for *Starboy*, the Lipmans, are based in UMG's New York offices. The locus is in New York.

Indeed, "the allegedly infringing product was sold in the Southern District of New York," after being contracted for and completed in New York, which further establishes that New York is the locus.  *Capitol Records, Inc.,* 2004 WL 405961, at *4 (citation omitted). And the fact that Mohamed's song was created in California does not tilt this factor in favor of transfer. Indeed, even if "the events at issue took place exclusively in California (i.e., defendant's residence, plaintiff's corporate home, the issuance of the copyright, and the situs of importation), the facts demonstrate that New York also has a significant connection with this dispute[.]"*Capitol Records, Inc.,* 2004 WL 405961, at *4. Transfer is improper even if this connection is "slightly weaker than that of California[,]" which it isn't. Id. Ultimately, "if the allegedly infringing products are sold within the Southern District of New York, even if sold elsewhere, there exists a sufficient connection with this District." *It's a 10, Inc*., 718 F. Supp. 2d at 337, citing *ESPN*, 581

F.Supp.2d at 549, citing *Kiss My Face*, 2003 WL 22244587, at *3). As New York has a connection to the locus, the "center of gravity of the litigation" is not heavily tilted in favor of transfer. Id., citing *Kiss My Face Corp.*, 2003 WL 22244587, at *3 (courts here have held the locus of operative facts to be in the initially chosen forum if infringement occurs in that forum); *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, at *21 (S.D.N.Y. Sep. 13, 2000) (finding locus to be in New York where defendant sold infringing content in New York via the internet and through third-party businesses, despite the fact that defendant was an Arizona corporation based in Arizona). Venue is proper here.

**D.     The location of relevant documents is New York, which also has a relative ease of access to sources of proof.**

In copyright infringement actions, the majority of evidence typically comes from the accused infringer. *Capitol Records, LLC*, 611 F. Supp. 2d at 368. Republic Records has its only offices in New York. UMG has substantial offices in New York and "from or in New York, [] arranged for the manufacture, marketing and distribution and licensing in some media, of *Starboy*." [Ex. 20, resp. 8]. These offices include those of the Lipmans. Tesfaye's attorneys, Prager and Meiselas, only have offices in New York. And Tesfaye does "all" of his business in New York. The bulk of the evidence is at these locations in New York.

**E.     This Court has the availability of process to compel the attendance of unwilling witnesses, this Court has better familiarity with the governing law, and both Courts have similarly busy trial dockets.**

These three factors all favor venue in New York. First, Tesfaye and UMG/Republic representatives are the most important witnesses and they are located in this District within range of trial subpoenas. That would not be the case in California.  Second, Defendants' primary defense is based on its clandestine settlement agreement with Mohamed's collaborators. The governing law in the Second Circuit forbids this defense and this Court has far better familiarity

with this precedent than California. The Ninth Circuit has applied this precedent, noting that a "co-owner in copyright may not transfer away more rights than he holds or enter into a settlement that binds other owners." *Young Money Entm't, LLC v. Digerati Holdings*, LLC, No. 2:12-CV-07663-ODW, 2012 WL 5571209, at *7 (C.D. Cal. Nov. 15, 2012), citing *Blige*, 505 F.3d at 99, 102. But, there is far more jurisprudence regarding the *Blige* doctrine here and this factor favors maintaining this forum. The third factor is neutral given the busy dockets in both forums, but tilts in Mohamed's favor given this court's experience in applying the *Blige* doctrine.

> **F.  The relative financial means of the parties favors Mohamed.**

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." *Tianhai Lace USA Inc.,* 2017 WL 4712632, at *6 (citation omitted). Mohamed, an independent artist, has far less resources than Defendants, which are well-known recording artists and large corporate entities. Forcing her to compel New York witnesses like Tesfaye, Prager, Meiselas, Monte and Avery Lippman and so forth to appear in California will be costly and labor-intensive. And should she be forced to cover Daft Punk's travel to New York from Paris, it will be far less expensive for them to travel to New York to California. This favors keeping the matter in New York.

> **G.  In light of Defendants' attempt to forum-shop, justice favors this venue.**

A court has broad discretion when deciding a transfer motion and considers "notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp*., 980 F.2d 110, 117 (2d Cir. 1992). When Tesfaye first learned of Mohamed's claims, his New York attorney, from New York, sent a proposed settlement agreement that included a venue provision requiring all disputes to be addressed in New York. [Ex. 15.] Mohamed never agreed to or executed the proposal. [Id.] To deprive Mohamed of her rights in her copyright and ensure that this clear case of infringement never saw the light of day, Tesfaye and his counsel then removed Mohamed's

name from the settlement proposal and had her two collaborators sign the agreement. Id. Transferring this case to California rewards this misconduct.

The Second Circuit addressed a similarly nefarious scheme in *Blige* and unequivocally held that such an agreement would not deprive an artist of her rights. *Davis*, 505 F.3d at 104. As Judge Rakoff once noted in a parenthetical, *Blige* holds that a "'retroactive' assignment or license that extinguishes the accrued infringement claims of a non-consenting co-owner by traveling back in time to 'undo' an unlawful infringement destroys the co-owner's valuable and vested right to enforce her claim." *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 576 (S.D.N.Y. 2016). Here, Tesfaye attempted to do just that – travel back in time to "undo an unlawful infringement that destroys" Mohamed's "valuable and vested rights."

While the Ninth Circuit has followed this reasoning, the case is simply persuasive as opposed to binding in that Circuit. Evasion of the *Blige* doctrine is the primary, if not sole, reason for Defendants' motion.  Indeed, as noted above, in prior litigation handled by Plaintiff's co-counsel, Doniger / Burroughs, UMG vehemently insisted that New York was the only appropriate venue for claims against it and its affiliates. It does not appear that UMG has *ever* before moved to transfer a copyright case from New York to California, despite its historically active litigation docket. Transfer would be unjust.

### H.  Mohamed's choice of forum should stand.

"[C]ourts in this circuit are loath to disturb a plaintiff's choice of forum absent a showing that 'the balance of convenience and justice weighs heavily in favor of transfer.' " *It's a 10, Inc.*. 718 F. Supp. 2d at 335–36 (citations omitted). Thus, a plaintiff's choice of forum is presumptively entitled to substantial deference. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F. 3d 88, 101 (2d Cir. 2000) ("a plaintiff's choice of forum is entitled to substantial deference and should only be disturbed if the factors favoring the alternative forum are compelling").

- 24 -

Moreover, "[w]here there is ongoing business activity in the chosen forum ... plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly de minimis." *Kiss My Face Corp.,* 2003 WL 22244587, at *4. Here, Defendants all continue to distribute, stream, perform, exploit, and collect royalties from *Starboy* in New York. This favors denial of the transfer motion. And Mohamed's selection of New York should be respected even if she lives out-of-state. *It's a 10, Inc.,* 718 F. Supp. 2d at 336 (rejecting argument that no weight should be given this factor when plaintiff lives out of state, finding that "even if a plaintiff is not a resident of its chosen forum, the choice will be respected as long as the balance of factors does not warrant a transfer."), citing, e.g., *Habrout v. City of New York*, 143 F.Supp.2d 399, 401 (S.D.N.Y.2001)(forum "should not be disturbed unless the balance of factors clearly weighs in favor of a transfer."). This is true even if the "acts that gave rise to this action occurred in California, not New York." Id. This choice-of-forum should be respected.

## IV. The motion fails.

A musician living in New York (Tesfaye) entered into a contract with a New York record company (UMG/Republic Records) with a New York venue provision to create the song at issue. That song was completed and "mastered" in New York by a New York producer and company and then promoted by Republic Records. And it is undisputed that *Starboy* was performed, broadcast, streamed, and otherwise exploited literally tens of millions of times in New York. The motion should be denied and the case should proceed in New York.

Date: December 7, 2018          By:       Respectfully submitted,
                                          */s/ Scott Alan Burroughs*
                                          Scott Alan Burroughs, Esq.
                                          DONIGER / BURROUGHS
                                          231 Norman Avenue, Suite 413
                                          Brooklyn, New York 11222
                                          scott@donigerlawfirm.com
                                          Attorneys for Plaintiff