# EXHIBIT 7

CONFIDENTIAL

CAL/98

```
STANDARD FORM OF CONDOMINIUM APARTMENT LEASE
THE REAL ESTATE BOARD OF NEW YORK, INC.
©Copyright 1998. All Rights Reserved. Reproduction in whole or in part prohibited
```

**PREAMBLE:** This Lease contains the agreements between You and Owner concerning the rights and obligations of each party. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease carefully. If You have any questions, or if You do not understand any words or statements, get clarification. Once You and Owner sign this Lease, You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease except for obligations arising under the Condominium Documents (as defined in Article 4). You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made as of _____ September _____ 2018 _____ between
                              month         day       year

Owner, the Lessor, GREENWICH PHD LLC
whose address is c/o Courtney Management LLC, 928 Broadway, Suite 1005, NY, NY 10010 , and
You, the Lessee, THE WEEKND XO US LLC
whose address is 16000 Ventura Blvd, Suite 600, Encino, CA 91436-2748 .

1. **APARTMENT AND USE**

   Owner agrees to lease to You Condominium Unit ▬▬▬ (the "Apartment") on the ▬▬▬ floor in the condominium apartment building at ▬▬▬, Borough of Manhattan, City and State of New York, which is known as the ▬▬▬ Condominium (the "Condominium"). You shall use the Apartment for living purposes only. The Apartment may be occupied only by You and the following Permitted Occupants: none .

   You acknowledge that: (i) this Lease may not commence until the Condominium has waived any first refusal rights that it may have with respect to this Lease; and (ii) no other person other than You and the Permitted Occupants may reside in the Apartment without the prior written consent of the Owner and the Condominium.

2. **LENGTH OF LEASE**

   The term (that means the length) of this Lease will begin on October 3 2018 _____ and will end on September 30, 2019 _____. If You do not do everything You agree to do in this Lease, Owner may have the right to end this Lease before the ending date. If Owner does not do everything that Owner agrees to do in this Lease, You may have the right to end the Lease before the ending date. You acknowledge that the term of this Lease may be reduced as authorized by Article 6.

3. **RENT**

   Your monthly rent for the Apartment is $ ▬▬▬ . You must pay Owner the rent, in advance, on the first day of each month either to Owner at the above address or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when You sign this Lease if the Lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when You sign this Lease: (i) the part of the rent from the beginning date of this Lease until the last day of the month, and (ii) the full rent for the next full calendar month.

4. **CONDOMINIUM DOCUMENTS**

   This Lease shall be subject and subordinate to: (i) the Declaration of Condominium; (ii) the Rules and Regulations of the Condominium (which are sometimes called House Rules); and (iii) the By-Laws of the Condominium. (The Declaration, the Rules and Regulations and the By-Laws of the Condominium and all amendments thereto, including any amendments subsequent to the date hereof, are collectively called the "Condominium Documents".) In the event of any inconsistency between the provisions of this Lease and the Condominium Documents, the provisions of the Condominium Documents shall govern and be binding.

   You and the Permitted Occupants of the Apartment shall faithfully observe and comply with the Condominium Documents, other than the provisions of the Condominium Documents required to be performed by Owner (which include the payment of common charges for the Apartment to the Condominium). You and the Permitted Occupants of the Apartment shall not undertake any action which, if performed by Owner, would constitute a violation of the Condominium Documents. You have reviewed the Condominium Documents or waived their examination.

5. **SECURITY DEPOSIT**

   You are required to give Owner the sum of $ ▬▬▬ when You sign this Lease as a security deposit, which is called in law a trust. Owner will deposit this security in JPMorgan Chase Bank _____ bank at 230 Broadway, New York, NY _____, New York. This security account shall not bear interest.

   If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty through no fault of your own, Owner will return to You the full amount of your security deposit within 60 days after this Lease ends.* However, if You do not carry out all your agreements in this Lease, Owner may keep all or part of your security deposit which has not yet been paid to You necessary to pay Owner for any losses incurred, including missed payments.

   *(subject to the provisions of Section 8 of the Rider)*

   If Owner sells the Apartment, Owner will turn over your security either to You or to the person buying the Apartment within 5 days after the sale. Owner will then notify You, by registered or certified mail, of the name and address of the person or company to whom the deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner will become responsible to You for the security deposit.

6. **IF YOU ARE UNABLE TO MOVE IN**

   A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, including the failure to obtain a waiver of any first refusal right that the Condominium may have with respect to this Lease prior to the beginning date, Owner will not be responsible for your damages or expenses and this Lease will remain in effect. However, in such case, the Lease will start on the date when You can move in; the ending date of this Lease as specified in Article 2 will remain the same. You will not have to pay rent until the move-in date Owner gives You by written notice, or the date You move in, whichever is earlier. If Owner does not give You notice that the move-in date is within 30 days after the beginning date of the term of this Lease as stated in Article 2, this Lease shall be cancelled and all prepaid rent and security deposit shall be promptly returned to You.

CONFIDENTIAL

7. **CAPTIONS**

In any dispute arising under this Lease, in the event of a conflict between the text and a caption, the text controls.

8. **WARRANTY OF HABITABILITY**

A. All of the sections of this Lease are subject to the provisions of the Warranty of Habitability Law in the form it may have from time to time during this Lease. Nothing in this Lease can be interpreted to mean that You have given up any of your rights under that law. Under that law, Owner agrees that the Apartment is fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety.

B. You will do nothing to interfere to make more difficult the Condominium's efforts to provide You and all other occupants of the Condominium with the required facilities and services. Any condition caused by your misconduct or the misconduct of anyone under your direction or control shall not be a breach by Owner.

9. **CARE OF YOUR APARTMENT; END OF LEASE-MOVING OUT**

A. You will take good care of the Apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending date of this Lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty through no fault of your own.

B. When the Lease ends, You must remove all of your movable property. You must also remove at your own expense, any wall covering, bookcases, cabinets, mirrors, painted murals or any other installation or attachment You may have installed in the Apartment, even if it was done with Owner's consent. If the Condominium imposes any "move-out" deposits or fees, You shall pay any such deposit or fee when requested by the Condominium. You must restore and repair to its original condition those portions of the Apartment affected by those installations and removals. You have not moved out until all persons, furniture and other property of yours is also out of the Apartment. If your property remains in the Apartment after the Lease ends, Owner may either treat You as still in occupancy and charge You for use, or may consider that You have given up the Apartment and any property remaining in the Apartment. In this event, Owner may either discard the property or store it at your expense. You agree to pay Owner for all costs and expenses incurred in removing such property. The provisions of this article will continue to be in effect after the end of this Lease.

10. **CHANGES AND ALTERATIONS TO APARTMENT**

You cannot build in, add to, change or alter, the Apartment in any way, including wallpapering, painting, repainting, or other decorating, without first obtaining the prior written consent of Owner and, if required under the Condominium Documents, the Condominium. Without Owner's and/or the Condominium's prior written consent, You cannot install or use in the Apartment any of the following: dishwasher machines, clothes washing or drying machines, electric stoves, garbage disposal units, heating, ventilating or air conditioning units or any other electrical equipment which, in Owner's and/or the Condominium's opinion, will overload the existing wiring installation in the Condominium or interfere with the use of such electrical wiring facilities by other occupants of the Condominium. Also, You cannot place in the Apartment water-filled furniture.

11. **YOUR DUTY TO OBEY AND COMPLY WITH LAWS, REGULATIONS AND RULES**

A. GOVERNMENT LAWS AND ORDERS. You will obey and comply: (i) with all present and future city, state and federal laws and regulations which affect the Condominium or the Apartment, and (ii) with all orders and regulations of insurance rating organizations which affect the Apartment and the Condominium. You will not allow any windows in the Apartment to be cleaned from the outside unless the prior written consent of the Condominium is obtained.

B. CONDOMINIUM'S RULES AFFECTING YOU. You will obey all of the Condominium Documents other than the provisions of the Condominium Documents required to be performed by Owner.

C. YOUR RESPONSIBILITY. You are responsible for the behavior of yourself, the Permitted Occupants of the Apartment, your servants and people who are visiting You. You will reimburse Owner as additional rent upon demand for the cost of all losses, damages, fines and reasonable legal expenses incurred by Owner because You, the Permitted Occupants of the Apartment, servants or people visiting the Apartment, have not obeyed government laws and orders, the Condominium Documents or this Lease.

12. **OBJECTIONABLE CONDUCT**

You, the Permitted Occupants of the Apartment, servants or people visiting the Apartment will not engage in objectionable conduct at the Condominium. Objectionable conduct means behavior which makes or will make the Apartment or the Condominium less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other occupants of the Condominium. Objectionable conduct by You gives Owner the right to end this Lease.

13. **SERVICES AND FACILITIES**

A. REQUIRED SERVICES. The Condominium will provide cold and hot water and heat, as required by law, repairs to the Apartment, as required by the Condominium Documents, elevator service if the Condominium has elevator equipment, and the utilities, if any, included in the rent, as set forth in subparagraph B. You are not entitled to any rent reduction because of a stoppage or reduction of any of the above services unless it is provided by law.

B. The following utilities are included in the rent   heat and hot water

C. ELECTRICITY AND OTHER UTILITIES. If the Condominium provides electricity or gas for a separate, submetered charge, your obligations to the Condominium and/or Owner are described in a rider attached to this Lease. If electricity or gas is not included in the rent and is not charged separately by the Condominium and/or Owner, You must arrange for this service directly with the utility company. You must also pay directly for telephone service and cable television service if the cost of any such service is not included in the rent.

D. APPLIANCES. Appliances supplied by Owner in the Apartment are for your use. They are in good working order on the date hereof and will be maintained and repaired or replaced by Owner, but if repairs or replacement are made necessary because of your negligence or misuse, You will pay Owner for the cost of such repair or replacement as additional rent.

E. FACILITIES. If the Condominium permits Owner to use any storeroom, storage bin, laundry or any other facility located in the Condominium but outside of the Apartment, and provided such use is transferable to You by Owner pursuant to the Condominium Documents, the use of any such facility will be furnished to You free of charge and at your own risk. You will operate at your expense any coin operated appliances located in any such facility.

14. **INABILITY TO PROVIDE SERVICES**

Because of a strike, labor, trouble, national emergency, repairs, or any other cause beyond Owner's and the Condominium's reasonable control, Owner and the Condominium may not be able to provide or may be delayed in providing any services or in making any repairs to the Apartment and/or the Condominium. In any of these events, any rights You may have against Owner are only those rights which are allowed by laws in effect when the reduction in service occurs.

W000088

CONFIDENTIAL

15. ENTRY TO APARTMENT

During reasonable hours and with reasonable notice, except in emergencies, Owner, Owner's representatives and agents or employees of the Condominium may enter the Apartment for the following reasons:

A. To erect, use and maintain pipes and conduits in and through the walls and ceilings of the Apartment; to inspect the Apartment; and to make any necessary repairs or changes Owner or the Condominium decide are necessary. Your rent will not be reduced because of any of this work, unless the common charges payable by Owner to the Condominium are reduced.

B. To show the Apartment to persons who may wish to become owners of the Apartment or may be interested in lending money to Owner.

C. For two months before the end of the Lease, to show the Apartment to persons who wish to lease it.

D. If, during the last month of the Lease, You have moved out and removed all or almost all of your property from the Apartment, Owner may enter to make changes, repairs or redecorations. Your rent will not be reduced for that month and this Lease will not be ended by Owner's entry.

E. If, at any time, You are not personally present to permit Owner, Owner's representatives or the agents and employees of the Condominium, to enter the Apartment and entry is necessary or allowed by law, under the Condominium Documents or this Lease, Owner, Owner's representatives or the agents and employees of the Condominium may nevertheless enter the Apartment. Owner, Owner's representatives or the agents and employees of the Condominium may enter by force in an emergency. Owner will not be responsible to You, unless during this entry, any authorized party is negligent or misuses your property.

16. ASSIGNING; SUBLETTING; ABANDONMENT

A. Assigning and Subletting. You cannot assign this Lease or sublet the Apartment. You acknowledge that Owner may refuse any request made by You to assign this Lease or to sublet the Apartment for any reason or no reason.

B. Abandonment. If You move out of the Apartment (abandonment) before the end of this Lease without the consent of Owner, this Lease will not be ended. You will remain responsible for each monthly payment of rent as it becomes due until the end of this Lease. In case of abandonment your responsibility for rent will end only if Owner chooses to end this Lease for default as provided in Article 17.

17. DEFAULT

A. You default under the Lease if You act in any of the following ways:

(i) You fail to carry out any agreement or provision of this Lease;
(ii) You, a Permitted Occupant of the Apartment, servants or people visiting the Apartment behave in an objectionable manner;
(iii) You, a Permitted Occupant of the Apartment, servants or people visiting the Apartment violate any of the Condominium Documents;
(iv) You do not take possession or move into the Apartment 15 days after the beginning of this Lease; or
(v) You and the Permitted Occupants of the Apartment move out permanently before this Lease ends.

If You do default in any one of these ways, other than a default in the agreement to pay rent, Owner may serve You with a written notice to stop or correct the specified default within 10 days. You must then either stop or correct the default within 10 days, or, if You need more than 10 days, You must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.

B. If You do not stop or begin to correct a default within 10 days, Owner may give You a second written notice that this Lease will end 6 days after the date the second written notice is sent to You. At the end of the 6-day period, this Lease will end, You then must move out of the Apartment. Even though this Lease ends, You will remain liable to Owner for unpaid rent up to the end of this Lease, the value of your occupancy, if any, after the Lease ends, and damages caused to Owner after that time as stated in Article 18.

C. If You do not pay your rent when this Lease requires after a personal demand for rent has been made, or within 3 days after a statutory written demand for rent has been made, or if the Lease ends Owner may do the following: (i) enter the Apartment and retake possession of it if You have moved out; (ii) go to court and ask that You and all other occupants in the Apartment be compelled to move out.

Once this Lease has been ended, whether because of default or otherwise, You give up any right You might otherwise have to reinstate this Lease.

18. REMEDIES OF OWNER AND YOUR LIABILITY

If this Lease is ended by Owner because of your default, the following are the rights and obligations of You and Owner.

A. You must pay your rent until this Lease has ended. Thereafter, You must pay an equal amount for what the law calls "use and occupancy" until You actually move out.

B. Once You are out, Owner may re-rent the Apartment or any portion of it for a period of time which may end before or after the ending date of this Lease. Owner may re-rent to a new subtenant at a lesser rent or may charge a higher rent than the rent in this Lease.

C. Whether the Apartment is re-rented or not, You must pay to Owner as damages:

(i) the difference between the rent in this Lease and the amount, if any, of the rents collected in any later lease of the Apartment for what would have been the remaining period of this Lease; and
(ii) Owner's expenses for the cost of putting the Apartment in good condition for re-rental; and
*** (iii) Owner's expenses for attorney's fees [Delete if inapplicable].

D. You shall pay all damages due in monthly installments on the rent day established in this Lease. Any legal action brought to collect one or more monthly installments of damages shall not prejudice in any way Owner's right to collect the damages for a later month by a similar action. If the rent collected by Owner from a subsequent subtenant of the Apartment is more than the unpaid rent and damages which You owe Owner, You cannot receive the difference. Owner's failure to re-rent to another subtenant will not release or change your liability for damages, unless the failure is due to Owner's deliberate inaction.

19. ADDITIONAL OWNER REMEDIES

If You do not do everything You have agreed to do, or if You do anything which shows that You intend not to do what You agreed to do, Owner has the right to ask a Court to make You carry out your agreement or to give the Owner such other relief as the Court can provide. This is in addition to the remedies in Article 17 and 18 of this Lease.

20. FEES AND EXPENSES

A. You must reimburse Owner for any of the following fees and expenses incurred by Owner:

(i) Making any repairs to the Apartment or the Condominium, including any appliances in the Apartment, which result from misuse or negligence by You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You;
(ii) Correcting any violations of city, state or federal laws or orders and regulations of insurance rating organization concerning the Apartment or the Condominium which You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You have caused;

CONFIDENTIAL

    (iii) Preparing the Apartment for the next tenant if You move out of the Apartment before the Lease ending date without Owner's prior written consent;

*** (iv) Any legal fees and disbursements for legal actions or proceedings brought by Owner against You because of a default by You for defending lawsuits brought against Owner because of the actions of You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You *(Delete if inapplicable)*;

    (v) Removing all of your property after this Lease is ended;

    (vi) Any miscellaneous charges payable to the Condominium for services You requested that are not required to be furnished You under this Lease for which You have failed to pay the Condominium and which Owner has paid;

    (vii) All other fees and expenses incurred by Owner because of the failure to obey any other provisions and agreements of this Lease or the Condominium Documents by You, the Permitted Occupants of the Apartment, persons who visit the Apartment or work for You.

    These fees and expenses shall be paid by You to Owner as additional rent within 30 days after You receive Owner's bill or statement. If this Lease has ended when these fees and expenses are incurred, You will still be liable to Owner for the same amount as damages.

    B. Owner agrees that unless subparagraph (iv) of subparagraph 20 A has been stricken out of this Lease, You have the right to collect reasonable legal fees and expenses incurred in a successful defense by You of a lawsuit brought by Owner against You or brought by You against Owner to the extent provided by Real Property Law Section 234.

    C. You shall pay the Condominium on demand for the cost of any miscellaneous charges payable to the Condominium for services You requested that are not required to be furnished You under this Lease.

21.    PROPERTY LOSS, DAMAGES OR INCONVENIENCE

    Unless caused by the negligence or misconduct of Owner, Owner's representatives or the agents and employees of the Condominium, none of these authorized parties are responsible to You for any of the following: (i) any loss of or damage to You or your property in the Apartment or the Condominium due to any accidental or intentional cause, even a theft or another crime committed in the Apartment or elsewhere in the Condominium; (ii) any loss of or damage to your property delivered to any agent or employee of the Condominium (i.e. doorman, superintendent, etc.); or (iii) any damage or inconvenience caused to You by actions, negligence or violations of lease or the Condominium Documents made by any other tenant or person in the Condominium except to the extent required by law.

    Owner will not be liable for any temporary interference with light, ventilation, or view caused by construction by or on behalf of the Condominium. Owner will not be liable for any such interference on a permanent basis caused by construction on any parcel of land not owned by Owner or the Condominium. Owner will not be liable to You for such interference caused by the permanent closing, darkening or blocking up of windows, if such action is required by law. None of the foregoing events will cause a suspension or reduction of the rent or allow You to cancel the Lease.

22.    FIRE OR CASUALTY

    A. If the Apartment becomes unusable, in part or totally, because of fire, accident or other casualty, this Lease will continue unless ended by Owner under subparagraph C below or by You under subparagraph D below. However, the rent will be reduced immediately. This reduction will be based upon the square footage of the part of the Apartment which is unusable.

    B. Owner and/or the Condominium will repair and restore the Apartment, unless Owner decides to take actions described in subparagraph C below.

    C. After a fire, accident or other casualty in the Building, the Condominium may decide to tear down the Condominium building or to substantially rebuild it. In such case, Owner need not restore the Apartment but may end this Lease. Owner may do this even if the Apartment has not been damaged, by giving You written notice of this decision within 30 days after the date when the damage occurred. If the Apartment is unusable when Owner gives You such notice, this Lease will end 60 days from the last day of the calendar month in which You were given the notice.

    D. If the Apartment is completely unusable because of fire, accident or other casualty and it is not repaired in ~~sundays~~ **10 business days**, You may give Owner written notice that You end the Lease. If You give that notice, this Lease is considered ended on the day that the fire, accident or casualty occurred. Owner will promptly refund your security deposit and the pro-rata portion of rents paid for the month in which the casualty happened.

    E. Unless prohibited by the applicable policies, to the extent that such insurance is collected, You and Owner release and waive all right of recovery against the other or anyone claiming through or under each by way of subrogation.

    F. You acknowledge that if fire, accident, or other casualty causes damage to any of your personal property in the Apartment, including, but not limited to your furniture and clothes, neither the Owner nor the Condominium will be responsible to You for the repair or replacement of any such damaged personal property unless such damage was as a result of the Owner's or the Condominium's negligence.

23.    PUBLIC TAKING

    The entire Condominium or a part of it can be acquired (condemned) by any government or government agency for a public or quasi-public use or purpose. If this happens, this Lease shall end on the date the government or agency take title. You shall have no claim against Owner for any damage resulting; You also agree that by signing this Lease, You assign to Owner any claim against the government or government agency for the value of the unexpired portion of this Lease.

24.    SUBORDINATION CERTIFICATE AND ACKNOWLEDGMENTS

    All mortgages of the Apartment now in effect or made after this Lease is signed, and any lien created by the Condominium Documents come ahead of this Lease. In other words, this Lease is "subject and subordinate to" any lien created by the Condominium Documents and existing or future mortgages on the Apartment, including any renewals, consolidations, modifications and replacements of any such mortgage. If certain provisions of any such mortgage or the Condominium Documents come into effect, the holder of any such mortgage or the Condominium can end this Lease and such parties may commence legal action to evict You from the Apartment. If this happens, You acknowledge that You have no claim against Owner, the Condominium or such mortgage holder. If Owner requests, You will sign promptly an acknowledgment of the "subordination" in the form that Owner may require.

    You also agree to sign (if accurate) a written acknowledgment to any third party designated by Owner that this Lease is in effect, that Owner is performing Owner's obligations under this Lease and that You have no present claim against Owner.

25.    YOUR RIGHT TO LIVE IN AND USE THE APARTMENT

    Provided the Condominium waives any right of first refusal it may have with respect to this Lease, if You pay the rent and any required additional rent on time and You do everything You have agreed to do in this Lease, your tenancy cannot be cut off before the ending date, except as provided for in Articles 22, 23 and 24.

W000090

CONFIDENTIAL

25. BILLS AND NOTICE

A. Notices to You. Any notice from Owner or Owner's agent or attorney will be considered properly given to You if it is: (i) in writing, (ii) signed by or in the name of Owner or Owner's agent, and (iii) addressed to You at the Apartment and delivered to You personally or sent by registered or certified mail to You at the Apartment. The date of service of any written notice by Owner to You under this agreement is the date of delivery or mailing of such notice.

B. Notices to Owner. If You wish to give a notice to Owner, You must write it and deliver it or send it by registered or certified mail to Owner at the address noted on page 1 of this Lease or to another address of which Owner or Agent has given You written notice.

27. GIVING UP RIGHT TO TRIAL BY JURY AND COUNTERCLAIM

A. Both You and Owner agree to give up the right to a trial by jury in a court action, proceeding or counterclaim on any matters concerning this Lease, the relationship of You and Owner as lessee and lessor or your use or occupancy of the Apartment. This agreement to give up the right to a jury trial does not include claims or personal injury or property damage.

B. If Owner begins any court action or proceeding against You which asks that You be compelled to move out, You cannot make a counterclaim unless You are claiming that Owner has not done what Owner is supposed to do about the condition of the Apartment or the Condominium.

28. NO WAIVER OF LEASE PROVISIONS

A. Even if Owner accepts your rent or fails once or more often to take action against You when You have not done what You have agreed to do in this Lease the failure of Owner to make action or Owner's acceptance of rent does not prevent Owner from taking action at a later date if You against do not do what You have agreed to do.

B. Only a written agreement between You and Owner can waive any violation of this Lease.

C. If You pay and Owner accepts an amount less than all the rent due, the amount received shall be considered to be in payment of all or part of the earliest rent due. It will not be considered an agreement by Owner to accept this lesser amount in full satisfaction of all of the rent due unless there is a written agreement between You and Owner.

D. Any agreement to end this Lease and also to end the rights and obligations of You and Owner must be in writing, signed by You and Owner or Owner's agent. Even if You give keys to the Apartment and they are accepted by either any employee or agent of the Condominium, Owner's representatives or Owner, this Lease is not ended.

E. This Lease, or any provision hereof, may not be modified, amended, extended, waived or abrogated without the prior written consent of the Condominium.

29. CONDITION OF THE APARTMENT

When You signed this Lease, You did not rely on anything said by Owner, Owner's representatives or the Condominium's employees, agents, or superintendent about the physical condition of the Apartment, the Condominium or the land on which is built. You did not rely on any promises as to what would be done, unless what was said or promised is written in this Lease and signed by both You and Owner. Before signing this Lease, You have inspected the Apartment and You accept it in its present condition "as is", except for any condition which You could not reasonably have seen during your inspection. You agree that Owner has not promised to do any work in the Apartment except as specified in a rider attached to this Lease.

30. DEFINITIONS

A. Owner: The term "Owner" means the person or organization receiving or entitled to receive rent from You for the Apartment at any particular time other than a rent collector or managing agent of Owner. "Owner" is the person or organization that owns legal title to the Apartment. It does not include a former Owner, even if the former Owner signed this Lease.

B. You. The term "You" means the person or persons signing this Lease as lessee and the successors and assigns of the signer. This Lease has established a lessor-lessee relationship between Owner and You.

31. SUCCESSOR INTERESTS

The agreements in this Lease shall be binding on Owner and You and on those who succeed to the interest of Owner or You by law, by approved assignment or by transfer.

32. INSURANCE

You may obtain liability insurance insuring You, the Permitted Occupants of the Apartment, your servants and people visiting the Apartment, and personal property insurance insuring your furniture and furnishings and other items of personal property located in the Apartment. You may not maintain any insurance with respect to any furniture or furnishings belonging to Owner that are located in the Apartment. You acknowledge that Owner may not be required to maintain any insurance with respect to the Apartment.

33. WAIVER OF CONDOMINIUM'S FIRST REFUSAL RIGHT [DELETE IF INAPPLICABLE]

You shall furnish to the Condominium or its managing agent, within 5 business days after the date of this Lease, such personal and financial references and additional information concerning You and the Permitted Occupants of the Apartment as may be requested in order to obtain the waiver of the Condominium's right of first refusal with respect to this Lease, including the submission of any application requested by the Condominium.

You acknowledge that this Lease will not commence and that You and the Permitted Occupants shall have no right to occupy the Apartment until the waiver of the Condominium's right of first refusal with respect to this Lease is obtained. If such waiver has not been obtained by the date specified in Article 2 as the beginning date of this Lease, You shall have no obligation to pay rent until such waiver has been obtained. All rent prepaid for the period You are unable to occupy the Apartment because of the failure to obtain such waiver shall be applied by Owner to subsequent rent payable hereunder. If such waiver is not obtained within 30 days after the date specified in Article 2 as the beginning date of this Lease, this Lease shall be canceled and all prepaid rent and security deposit shall be promptly returned to You.

34. FURNITURE [DELETE IF INAPPLICABLE]

~~The Apartment is being leased as fully furnished, a rider attached to this Lease lists all furniture and furnishings contained in the~~ Apartment. You shall accept the furniture and furnishings contained in the Apartment "as is" on the commencement date of this Lease. Owner represents that all such furniture and furnishings are in good repair and in working order on the commencement date of this Lease except as may be noted in such rider.

You shall take good care of the furniture and furnishings in the Apartment during the pendency of this Lease and shall be liable for any damages caused by You to such furniture and furnishings. You shall not be responsible for any damages to such furniture and furnishings not caused by You or caused by ordinary wear and tear. You shall surrender such furniture and furnishings when this Lease terminates in the same condition as on the date this Lease commenced, subject to ordinary wear and tear. If any repairs are required to the furniture and furnishings in the Apartment when this Lease terminates, You shall pay Owner upon demand the cost of any required repairs.

You ~~may~~ not remove any furniture or furnishings from the Apartment or change the location of any such furniture or furnishings ~~during the pendency of this Lease without Owner's prior written consent.~~

W000091

35. BROKER [DELETE EITHER SUBPARAGRAPH A OR B]

    A. You represent to Owner that You have not dealt with any real estate broker(s) in connection with the leasing of the Apartment other than __Douglas Elliman Real Estate LLC__, [and that _____ is your real estate broker in connection with the leasing of the Apartment (Delete bracket if inapplicable)]. You will compensate such broker(s) in accordance with a separate agreement. You shall indemnify and hold Owner harmless from any and all loss incurred by Owner as a result of a breach of the foregoing representations.

    B. ~~You represent to Owner that you have not dealt with any real estate broker in connection with the leasing of the Apartment. You shall indemnify and hold Owner harmless from any and all loss incurred by Owner as a result of a breach of the foregoing representation.~~

36. YOUR OPTION TO RENEW [DELETE IF INAPPLICABLE]   See Section 10 of the Rider

    ~~A. You shall have the right to extend the term of this Lease for ___ half ___ year(s) commencing _____ and ending on _____~~, (the "Extension Term") provided: (i) You give Owner notice (the "Extension Notice"), in the manner required under this Lease, of your election to extend the term of this Lease; (ii) the Election Notice must be given Owner at least ___ days prior to the ending date of this Lease stated in Article 2; and (iii) You may not be in default of any provisions of the Lease when the Extension Notice is given and on the commencement date of the Extension Term. If You fail to send the Extension Notice to Owner by the date specified herein, this Article 36 shall be of no further force and effect.

    B. The monthly rent payable by You during the Extension Term shall be $_____.

    C. ~~All provisions~~ of this Lease, except as modified by this Article 36, shall remain in full force and effect during the Extension Term.

37. LEAD PAINT DISCLOSURE  [DELETE IF THE CONDOMINIUM WAS ERECTED AFTER 1978]

    Simultaneously with the execution of this Lease, You and Owner shall sign and complete the disclosure of information on lead-based paint and/or lead-based paint hazards annexed as a rider attached to this Lease. You acknowledge receipt of the pamphlet, "Protect Your Family From Lead in Your Home" prepared by the United States Environmental Protection Administration.

38. PETS [DELETE EITHER SUBPARAGRAPH A OR B]

    ~~A. You may not keep any pets in the Apartment.~~

    B. If authorized by the Condominium Documents, You may keep pets in the Apartment provided: (i) You obtain the prior written consent of Owner; and (ii) You comply with the Condominium Documents with respect to the keeping of pets in the Condominium.

39. KEYS

    Owner shall retain keys to all locks of the Apartment. If You make any changes to any such lock, You must deliver keys to Owner, and to the Condominium or its managing agent. At the end of this Lease, You must deliver to Owner all keys to the Apartment. If You fail to return any keys, You shall pay Owner the cost of replacing any such keys.

40. WINDOW GUARDS

    You shall complete and deliver to the Condominium, when requested, a notice with respect to the installation of window guards in the Apartment in the form required by the City of New York. You acknowledge that it is a violation of law to refuse, interfere with installation, or remove window guards where required.

41. OWNER'S DEFAULT TO CONDOMINIUM

    If: (i) Owner defaults in the payment to the Condominium of common charges or other assessments payable to the Condominium with respect to the Apartment; (ii) the Condominium notifies You of such default; and (iii) the Condominium instructs You to pay the rent under this Lease to the Condominium, then You shall pay all future installments of rent payable under this Lease to the Condominium until such time as the Condominium advises that the Owner's default has been cured. Owner acknowledges that if You pay any installment of rent payable under this Lease to the Condominium as herein provided, You have satisfied your obligation to pay any such installment of rent to Owner. Nothing contained in this Article shall suspend your obligation to pay rent under this Lease.

42. BINDING EFFECT

    It is expressly understood and agreed that this Lease shall not constitute an offer or create any rights in your favor, and shall in no way obligate or be binding upon Owner, and this Lease shall have no force or effect until this Lease is duly executed by You and Owner and a fully executed copy of this Lease is delivered to both You and Owner.

TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

WITNESS:

_____

_____   By: _____[signature]_____ PRESIDENT (L.S.)
                                    Owner's Signature
                                    GREENWICH 4H LLC

_____   _____[signature]_____ (L.S.)
                                    Tenant's Signature
                                    THE WEEKND XO US LLC

                                 _____ (L.S.)
                                    Tenant's Signature

## GUARANTY

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Lessee of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Lessee is not paying rent or not observing and complying with all of the provisions of the attached Lease. Guarantor agrees to be equally liable with Lessee so that Owner may sue Guarantor directly without first suing Lessee. The Guarantor further agrees that this guaranty shall remain in full effect even if the Lease is renewed changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any such action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or the Guaranty.

Dated, _____

_____
Witness

                                 _____ Guarantor

                                 _____ Address

W000092

CONFIDENTIAL

RIDER TO STANDARD FORM OF CONDOMINIUM APARTMENT LEASE

OWNER: GREENWICH PHD LLC

LESSEE: THE WEEKND XO US LLC

APARTMENT: ███████

1. RIDER

This Rider supplements the printed Standard Form of Condominium Apartment Lease to which it is attached (collectively, the "Lease"). If there is any conflict between the terms of this Rider and the terms of the Lease, the terms of this Rider shall control.

2. OCCUPANTS

Supplementing the provisions of Section 1 of the Lease, the only person who will be taking occupancy of the Apartment is Abel Tesfaye who is the sole member of Lessee (the "Permitted Occupant"). No other officer, director, member, employee or agent of Lessee is authorized to occupy the Apartment. In addition, the Permitted Occupant is permitted to have two dogs – Dobermans which weigh approximately 75 pounds each. There shall not be any other occupant of the Apartment. No children are under the age of 10 years will occupy the Apartment and Lessee will separately sign a statement confirming that fact and that Owner should not install window guards. There shall not be any smoking in the Apartment. It is specifically agreed that the Permitted Occupant will be permitted to have his girlfriend and occasional guests stay at the Apartment.

3. INSURANCE

Prior to taking occupancy of the Apartment, Lessee shall deliver to Owner a Certificate of Insurance evidencing renter's insurance in an amount of not less than ███████ insuring against any damage to persons or property of Lessee or Lessee's occupants, guests, servants, employees and/or invitees or any damage to the Apartment caused by any of the foregoing. Owner shall be named as an additional insured of such insurance.

4. LATE PAYMENT FEE

If any installment of rent or additional rent due under the Lease is not paid on or before the tenth (10th) day of the calendar month during which such installment is due, Lessee shall pay Owner

W000093

as additional rent, on or before the first (1st) day of the following month, a late fee equal to three percent (3%) of the monthly rent to defray Owner's administrative and other costs in connection with such late payment. Owner will separately provide Lessee with direct deposit information to its bank account.

5. PETS; HOUSE RULES

(A) Supplementing Article 4 of the Lease, Lessee acknowledges that the House Rules of the Condominium contain provisions, *inter alia*, governing the behavior of pets. The parties acknowledge that Owner has agreed to permit Lessee to have two dogs referenced in Section 2 in the Apartment. The right of the Lessee to keep dogs in the Apartment is further subject to the approval of the Condominium and the managing agent. No other pets are authorized or permitted.

(B) Owner shall promptly apply for the approval of the Condominium and/or the managing agent for the presence of the two dogs referenced in Section 2 in the Apartment.

(C) BECAUSE OF HEALTH HAZARDS AND THE POSSIBLE DISTURBANCE OF OTHER LESSEES WHICH MAY ARISE FROM THE PRESENCE OF ANIMALS, ESPECIALLY DOGS, IN THE BUILDING, THE STRICT ADHERENCE TO THE HOUSE RULES REGARDING PETS IN GENERAL AND DOGS IN PARTICULAR BY LESSEE IS A MATERIAL REQUIREMENT OF THIS LEASE, LESSEE'S FAILURE TO OBEY SUCH RULES SHALL BE CONSIDERED A SERIOUS VIOLATION OF AN IMPORTANT OBLIGATION OF LESSEE UNDER THE LEASE AND OWNER MAY ELECT TO TERMINATE THE LEASE BASED UPON ANY SUCH VIOLATION.

6. CONDITION OF THE APARTMENT

The parties acknowledge and agree that the Apartment is being rented in its "As-Is" condition and that Owner has no obligation whatsoever to make any repairs, improvements or replacements as a condition to Lessee's occupancy. Notwithstanding the foregoing, Owner represents and warrants that all components of the apartment are in good working order at the commencement of the Lease. The parties or their authorized representatives shall make an inspection of the Apartment prior to Tenant's occupancy to confirm the condition of the Apartment. Anything in Section 6 of the Lease to the contrary notwithstanding, if Owner is unable to deliver possession of the Apartment to Lessee in the condition required by this Section 6 of the Rider by October 8, 2018 TIME BEING OF THE ESSENCE, Lessee shall have the right to immediately terminate the Lease in which event the Security Deposit and any rent paid by Lessee shall be returned to Lessee without deduction or offset.

7. UTILITIES

The parties acknowledge that gas, heat and hot water are furnished with the Apartment, but electricity and cable for television, telephone and internet are not included in the monthly rent. Lessee will be responsible for establishing its own accounts with such utility providers and shall be solely responsible for payment of all invoices and deposits related thereto. Lessee shall indemnify Owner from any claims by such utility providers for any failure or alleged failure to pay any amounts due.

8. SECURITY DEPOSIT

A. Supplementing the provisions of Section 5 of the Lease, Owner will place the Security Deposit in an interest-bearing account. Owner does not guarantee any particular interest rate on such account. Interest shall be added to the Security Account and shall be for the benefit of Lessee, subject to the provisions of Section 5 of the Lease and this Section 8 of the Rider.

B. Supplementing the provisions of Section 18 of the Lease, in the event that Lessee defaults and fails to cure such default within the time period provided in Section 17, Owner shall have the right to disburse funds from the security deposit to satisfy any of Lessee's monetary obligations without such disbursements being deemed to cure your default. Upon such disbursement and notice thereof to Lessee, Lessee will promptly restore the security deposit to the full amount set forth in Section 5 of the Lease.

C. Further modifying and amending the provisions of Section 5 of the Lease, Owner shall return the Security Deposit to Tenant within fifteen (15) days of the expiration of the Lease provided that (i) there is no outstanding event of default under the Lease and (ii) Owner and Lessee or their authorized representatives have conducted a joint inspection of the Apartment to confirm that there has not been any damage to the Apartment and that all appliances are in working condition.

9. ACCESS TO UNIT.

Owner and its brokers shall have access to the Apartment on twenty-four (24) hours prior notice from time to time during the period commencing seventy-five (75) days prior to the expiration of the term of this Lease for purposes of showing the Apartment to prospective tenants. At all other times the Owner's access (except in the event of an emergency) for purposes of showing the Apartment to lenders (and their agents) and potential purchasers shall be limited to entry on weekdays that are not holidays at mutually agreeable times

10. RENEWAL

(A) Provided that Lessee is not in default of any provision of the Lease, the parties agree that if Lessee timely extends the term of the Lease for one year commencing on October 1, 2019 and expiring on September 30, 2020 (the "Extension Term"), rent during the Extension Term shall be paid in the amounts of ▮▮▮▮ per month.

(B) Owner shall have the right to start marketing and showing the Apartment seventy-five (75) days prior to the expiration of the then-current Term of the Lease. In the event that Lessee desires to extend the term of the Lease, he shall give Owner notice thereof no later than seventy-five (75) days prior to the expiration of the the-then current Term of the Lease.

11. EXECUTION IN COUNTERPARTS

The Lease and this Rider may be executed in two or more counterparts and all counterparts so executed shall for all purposes constitute one agreement, binding on all the parties hereto, notwithstanding that all parties shall not have executed the same counterpart. In addition, executed counterparts of the Lease and this Rider may be exchanged via facsimile or electronically and such counterparts shall be treated as originals.

12. PARKING; STORAGE SPACE

In addition to the Apartment, Owner is permitting Lessee to have exclusive use of storage unit ▮▮ and parking space ▮ which shall be used in accordance with the terms and conditions of the Storage Unit License between Owner and the Condominium, the Parking Unit License between Owner and the Condominium and House Rules of the Condominium.

13. WARRANTY OF AUTHORITY.

The person executing this Lease on behalf of Lessee hereby covenants and warrants that: Lessee is a limited liability company duly formed in California and qualified to do business in the state of New York; Lessee will remain qualified to do business in said state throughout the term of the Lease and any renewals thereof; the Lessee is wholly owned by Abel Tesfaye; and such person is duly authorized by such limited liability company to execute and deliver this Lease on behalf of Lessee.

14. CONFIDENTIALITY.

Owner acknowledges that the privacy of the Lessee and its owner are of legitimate concern and accordingly agrees that neither Owner or any person under direct control of Owner will:

CONFIDENTIAL

(a) photograph, tape, film, or otherwise record, any manner whatsoever (whether now known or developed hereafter) any likenesses of Lessee or its owner or

(b) give any interview(s) ("on the record" or "off the record"), sell or otherwise disseminate any information for use in the preparation of any book(s), article(s), television or motion picture product(s) or social media (including but not limited to Facebook, twitter, Snapchat or other similar media) regarding the Lessee or its owner;

(c) disclose the identity of the owner of the Lessee to third parties, other than (i) the Condominium Board and its members, (ii) the managing agent and its employees and agents, (iii) Owner's attorneys, accountants, members and brokers, (iv) any mortgage lender of Owner and (v) as may otherwise be required by law.

BALANCE OF PAGE LEFT BLANK INTENTIONALLY

W000097

CONFIDENTIAL

OWNER:

**GREENWICH PHD LLC**

By: _____
Name: Richard C. Hamlin
Title: President


LESSEE:

**THE WEEKND XO US LLC**, a California limited liability company

By: _____
    ABEL TESFAYE
Its:

W000098