UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
Yasmin Mohamed p/k/a Yasminah,  :
 :  Case No.  18-cv-8469 (JSR)
               Plaintiff,  :
 :
      - against -  :
 :
Abel Makkonen Tesfaye p/k/a  :
The Weeknd; Guillaume Emmanuel de Homem-  :
Christo and Thomas Bangalter p/k/a Daft Punk;  :
Martin McKinney p/k/a Doc; Henry Walter p/k/a  :
Cirkut; Jason Quenneville p/k/a DaHeala, XO  :
Records, LLC; Republic Records; Universal  :
Music Group; William Uschold p/k/a WILL U;  :
Tyrone Dangerfield p/k/a TABOO!!; Squad  :
Music Group; and DOES 1-10,  :
 :
               Defendants.  :
 :
------------------------------------------------------------- x

# CERTAIN DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS OR TRANSFER

Peter J. Anderson (admitted *pro hac vice*)
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Phone: (213) 633-6800
Fax:    (213) 633-6899

Marcia B. Paul
Amanda B. Levine
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340

*Attorneys for Defendants Abel Makkonen Tesfaye, Jason Quenneville, The Weeknd XO, LLC, and UMG Recordings, Inc.*

**TABLE OF CONTENTS**

                                                                    **Page**

I. THIS CASE SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(a) ......................... 2

    A. Plaintiff Admits She Could Have Brought this Case in California ................................. 2

    B. The Factors Confirm Transfer to California Is Appropriate ............................................ 2

        1. *The Convenience of the Witnesses Strongly Favors California* ................................. 2

        2. *It Is Far More Convenient for the Parties to Appear in California* ............................ 2

        3. *The Relevant Documents and Sources of Proof Are Located in California* ................. 3

        4. *California Is the Locus of Operative Facts* ..................................................................... 3

        5. *California Can Better Compel the Attendance of Unwilling Witnesses* ...................... 5

        6. *The Relative Means of the Parties Cuts Decidedly in Favor of Transfer Because Plaintiff and Her Lawyers Are in California* ................................................................. 5

        7. *The Forum's Familiarity with the Governing Law Is Neutral* .................................... 5

        8. *Plaintiff's Choice of Forum Is Entitled to No Weight* ................................................... 5

        9. *Trial Efficiency and the Interests of Justice Favor Transfer to California* .................. 6

II. PLAINTIFF FAILS TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE WEEKND DEFENDANTS ..................................................... 6

    A. This Court Lacks Personal Jurisdiction Over Mr. Quenneville ......................................... 7

    B. The Court Lacks Personal Jurisdiction Over Mr. Tesfaye and Weeknd XO ...................... 8

    C. Plaintiff Cannot Enforce Forum Selection Clauses in Contracts to Which She Is Not a Party ................................................................................................................................ 10

III. CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arma v. Buyseasons, Inc.*,
    591 F. Supp. 2d 637 (S.D.N.Y. 2008)...................................................................................10

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017)................................................................................................8, 9

*Byun v. Amuro*,
    2011 WL 10895122 (S.D.N.Y. Sept. 6, 2011)...........................................................................9

*Caldwell v. Slip-N-Slide Records, Inc.*,
    2011 WL 3251502 (S.D.N.Y. Jul. 26, 2011)........................................................................2, 4

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)....................................................................................2

*Cutco Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)..................................................................................................9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................................6, 7

*Elsevier, Inc. v. Grossman*,
    77 F. Supp. 3d 331 (S.D.N.Y. 2015)....................................................................................10

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
    844 F.3d 79 (2d Cir. 2016)...................................................................................................8

*Firma Melodiya v. ZYX Music GmbH*,
    1995 U.S. Dist. LEXIS 795 (S.D.N.Y. Jan. 25, 1995).............................................................8

*Frame v. Whole Foods Market, Inc.*,
    2007 WL 2815613 (S.D.N.Y. Sept. 24, 2007).......................................................................3

*Gray v. Hudson*,
    2015 WL 4488143 (E.D. Mo. Jul. 23, 2015)..........................................................................9

*Int'l Diamond Importers, Inc. v. Med Art, Inc.*,
    2017 WL 2839640 (S.D.N.Y. Jun. 29, 2017) ......................................................................10

*Khankhanian v. Khanian*,
    2017 WL 1314124 (S.D.N.Y. Apr. 6, 2017)............................................................................6

*Kiss My Face Corp. v. Bunting*,
    2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003)......................................................................4

*Lewis-Gursky v. Citigroup, Inc.*,
    2015 WL 8675449 (S.D.N.Y. Dec. 11, 2015) .........................................................................6

*Navaera Scis., LLC v. Acuity Forensic Inc.*,
    667 F. Supp. 2d 369 (S.D.N.Y. 2009)......................................................................................7

*Penguin Grp. (USA) Inc. v. American Buddha*,
    609 F.3d 30 (2d Cir. 2010).......................................................................................................9

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007)...................................................................................................10

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017).......................................................................................................8

*Stephan v. Babysport, LLC*,
    499 F. Supp. 2d 279 (E.D.N.Y. 2007) .....................................................................................7

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
    2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017).....................................................................4, 5

*Walden v. Fiore*,
    571 U.S. 277 (2014).................................................................................................................7

**State Cases**

*Penguin Group (USA) Inc. v. American Buddha*,
    946 N.E.2d 159 (N.Y. 2011)...............................................................................................9, 10

**Federal Statutes**

28 U.S.C. § 1404(A) .......................................................................................................................2

**Rules**

C.P.L.R. 302(a)(3) ..........................................................................................................................9

C.P.L.R. 302(a)(4) ....................................................................................................................9, 10

Plaintiff is a Californian represented by California lawyers, who claims she is not bound by a written settlement agreement—with a California forum clause—between her Californian co-authors and a Californian regarding a song recorded in California, and she sues here in undisguised forum shopping. Faced with the Weeknd Defendants' compelling showing that this case belongs in California, Plaintiff resorts to window-dressing, temporarily dismissing without prejudice her alleged multi-million-dollar claims against multiple non-New York defendants, including Daft Punk, who own 56.66% of the allegedly infringing composition. Pl. Ex. 12 at W000122. That gambit confirms that if this case is not transferred to California, there will be a multiplicity of actions. Further, Plaintiff blatantly misrepresents the evidence. By way of example, only:

- Plaintiff attaches as Exhibit 15 to her Opposition, what her lawyer swears under oath is a "true and correct copy of the settlement agreement executed between Tesfaye and the Squad Defendants," with a New York forum clause. But that Exhibit is an unexecuted draft, *see* Pl. Ex. 15, and the actual, executed settlement agreement contains a California forum clause. Anderson Reply Decl. ¶¶ 3–4 & Ex. 1.

- To try to impeach Mr. Tesfaye's testimony establishing that he is domiciled in California, Plaintiff cites to a distribution agreement that states Mr. Tesfaye is "not a resident of the state of California." Opp'n at 2, 3. But Plaintiff noticeably fails to mention the agreement's date: 2012, four years before Mr. Tesfaye moved from Canada to California. Pl. Ex. 4; Tesfaye Decl. ¶ 3; Anderson Reply Decl. Ex. 8 at 42:6–43:13.

- Plaintiff repeatedly states that Republic Records has offices "only in New York." Opp'n at 1, 19, 20. But, the evidence is undisputed that Republic Records not only has offices in California, but that office arranged for the recording of *Starboy* in California. *See* Anderson Reply Decl. Ex. 8 at 63:17–22; Goldstein Decl. ¶¶ 3, 7 & Ex. 1.

- Plaintiff states that Mr. Quenneville entered into a publishing agreement for *Starboy* with SONGS/Kobalt, headquartered in New York. Opp'n at 3. But Mr. Quenneville's publishing agreement is with Universal Music Corp., a Delaware corporation based in California. Anderson Reply Decl. ¶¶ 6–7 & Exs. 2–5.

Stripped of these and Plaintiff's other undeniably false statements, the case before the Court is simple: a California plaintiff brings a single claim for copyright infringement against California defendants based on events that occurred in California. This case does not belong in New York.

## I. THIS CASE SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1404(A)

Conceding that venue is improper here on her non-copyright claims, Plaintiff temporarily dismisses those allegedly five-million-dollar claims, *see* Compl. ¶¶ 84–86, without prejudice. As for the Weeknd Defendants' motion to transfer under 28 U.S.C. § 1404(a), Plaintiff misstates that the Court must "draw[] all reasonable inferences and resolve all factual conflicts in favor of plaintiff's choice of forum." Opp'n at 17. Her own case law makes clear that this standard applies to a Federal Rule of Civil Procedure 12(b)(3) motion, ***not*** a motion under § 1404(a). *See Concesionaria DHM, S.A. v. Int'l Fin. Corp.,* 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004). And Plaintiff fails to overcome the Weeknd Defendants' showing that this case belongs in California.

### A. Plaintiff Admits She Could Have Brought this Case in California

As for the first prong of the § 1404(a) inquiry, Mot. at 11, Plaintiff admits "this action could have been brought in California." Opp'n at 17 n.23.

### B. The Factors Confirm Transfer to California Is Appropriate

Consideration of the nine factors, Mot. at 11, confirms transfer is appropriate.

#### 1. *The Convenience of the Witnesses Strongly Favors California*

Plaintiff argues that Mr. Tesfaye's identification of California witnesses is insufficient. Opp'n at 18. But he is only required to include a "general statement of the topics of each witness," *Caldwell v. Slip-N-Slide Records, Inc.*, 2011 WL 3251502, at *3 (S.D.N.Y. Jul. 26, 2011), which he did here. *See* Tesfaye Decl. ¶ 21. Also, given that *Starboy* was started in France with Daft Punk—who agreed to litigate Plaintiff's claim in California—and completed in California by Californians, the convenience of witnesses plainly favors transfer. *See infra* Section I.B.4.

#### 2. *It Is Far More Convenient for the Parties to Appear in California*

Plaintiff does not dispute that "[t]ransfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to

2

the non-moving party's inconvenience." Mot. at 12 (quoting *Frame v. Whole Foods Market, Inc.*, 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007)).  Instead, she states "[t]he only party that may be inconvenienced by this litigation occurring in New York is Mohamed."  Opp'n at 20–21.  But Plaintiff omits any reference to defendants Quenneville, Walter, and McKinney, none of whom reside in New York.  *See* Quenneville Decl. at ¶¶ 3, 4, 6; Anderson Reply Decl. Ex. 7 at 10:15–22.  And despite the fact that Mr. Tesfaye "fell in love with New York" in October of 2018, Anderson Reply Decl. Ex. 8 at 40:8–41:11, that does not mean that he lives in New York, or change that, as he testified, "I stay most of my time in Los Angeles," *id.*[1]

Plaintiff argues that UMG's parent is based in New York.  Opp'n at 20.  But it is not a party.  UMG is a Delaware corporation based in California, Mot. at 5, and Republic Records—an unincorporated UMG division—assisted in *Starboy's* creation from California.  Goldstein Decl. ¶¶ 6–10.  Making UMG's California personnel available in New York would be an inconvenience.

        3.     *The Relevant Documents and Sources of Proof Are Located in California*

Plaintiff ignores that *Starboy* was started in France and completed in California; misrepresents that Republic Records has no offices in California and that Mr. Tesfaye does his business in New York; and ignores that the records as to the exploitation of *Starboy* authorized by UMG are largely, if not completely, electronic and located in UMG's home office in Santa Monica.

        4.     *California Is the Locus of Operative Facts*

In copyright cases, "the operative facts . . . usually relate to the design, development and

---

[1] Plaintiff repeatedly states that Mr. Tesfaye conducts "all" of his music-related business in New York.  *See* Opp'n at 3, 4, 19, 22.  That is untrue.  And Plaintiff refers only to the testimony of Weeknd XO—beyond the designated subjects for which the designated witness prepared—that "[a]ll of Mr. Tesfaye's deals, as I understand it, you know, are negotiated by attorneys at a law firm based out of New York."  Pl. Ex. 13 at 23:20–24:2.  Further, Plaintiff's Opposition relies heavily on the recent leasing of a New York condominium for Mr. Tesfaye's use, and that lease was negotiated by a Los Angeles lawyer.  Roach Decl. ¶¶ 1–2.

3

production of an infringing product." Mot. at 13–14 (quoting *Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *5 (S.D.N.Y. Sept. 27, 2017)).  To argue that New York is the locus of operative facts, Plaintiff turns a blind eye to every step of *Starboy*'s production and mischaracterizes mastering.  Considering the evidence presented in the Weeknd Defendants' depositions and declarations, it is clear that *Starboy's* "design, development and production" began in Paris and was completed in California:

- Mr. Tesfaye and Mr. Quenneville initially wrote a song, *Ebony*, in Los Angeles.  *See* Anderson Reply Decl. Ex. 8 at 46:23–47:11, 49:8–23.

- When Mr. Tesfaye visited Daft Punk in Paris, they added to *Ebony* to create a rough demo of what eventually became *Starboy*.  *Id*. at 49:8–23.

- Mr. Tesfaye then returned to Los Angeles, where the rough demo was re-recorded with cleaner vocals and defendants Walter and McKinney, who live in California and Canada, respectively, made their authorship contributions.  *Id.* at 48:10–22; Quenneville Decl. ¶ 6.

- Throughout this process, Mr. Tesfaye worked with Ms. Goldstein, an A&R executive in Los Angeles.  Goldstein Decl. ¶¶ 6–10.

- After mixing *Starboy* in Los Angeles, Mr. Tesfaye held listening session with various individuals in Los Angeles.  Anderson Reply Decl. Ex. 8 at 59:12–60:9.

- The final mix, which included work by a mixer in Virginia, was provided to UMG's California office, which arranged for its mastering at a New York studio selected by UMG, simply to ensure the sound levels were consistent.  Goldstein Decl. ¶¶ 10–11.

UMG then provided the album's recordings to independent fabricators and distributors for the distribution internationally, except in Canada, with only a small fraction occurring in New York.  *See* Pl. Ex. 4, § 14.15; Pl. Ex. 3 at 4.[2]  Sales "all over the country or world . . . do not render

---

[2] Citing two trademark cases, Plaintiff argues that sales of the allegedly infringing product in New York are enough to make New York the "locus of operative facts" under § 1404. Opp'n at 21–22. While that may be true in trademark cases, *see Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003), in copyright cases, "where the nexus of the allegedly infringing activity is in the transferee District, it is insufficient to find a connection to New York based solely on sales of the product that took place here." *Caldwell*, 2011 WL 3251502, at *2.

4

a forum the locus of operative facts for a copyright claim." *Tianhai*, 2017 WL 4712632, at *5.

     5.    *California Can Better Compel the Attendance of Unwilling Witnesses*

Contrary to Plaintiff's bare assertion, Opp'n at 22, **none** of the likely witnesses are within the range of this Court's subpoena power. Plaintiff claims that the mastering engineer and top-level executives in Republic Records' New York offices are witnesses, *id.* at 18, but they have no relevant testimony to offer. On the other hand, Plaintiff does not contend that Mr. Quenneville is "within range of trial subpoenas," she misstates that Mr. Tesfaye and Weeknd XO are, *id.* at 22, and she ignores, among others, Ms. Goldstein, the California studio engineers, Messrs. McKinney and Walter, and the members of Daft Punk—one of whom has a house in California and both of whom have agreed to appear in California if the case is transferred, *see* Daft Punk Mot. at 19–20. Also, while Plaintiff recognizes the witnesses include her California co-authors—the Squad Music defendants that she temporarily dismissed—she ignores that they too are beyond subpoena power.

     6.    *The Relative Means of the Parties Cuts Decidedly in Favor of Transfer Because Plaintiff and Her Lawyers Are in California*

Plaintiff's assertion that this factor cuts against transfer is untenable. She states that she has limited resources, yet she and her lawyers are in California, as are the majority of the parties and witnesses, and she admits that litigation here would inconvenience her. Opp'n at 20–21, 23. She speculates that she might have to pay for Daft Punk to travel to the United States, *id.* at 23, but they are beyond this Court's subpoena power. And Plaintiff fails to quantify or support her claim that flights from Paris to New York are "far less expensive" than Paris to California. *Id*

     7.    *The Forum's Familiarity with the Governing Law Is Neutral*

Plaintiff has temporarily dismissed her California law claims, and this factor is neutral.

     8.    *Plaintiff's Choice of Forum Is Entitled to No Weight*

Plaintiff does not dispute that forum shopping is relevant but accuses defendants of it.

5

Opp'n at 23–24. But that is absurd. Plaintiff is a Californian represented by California lawyers who tendered a complaint in the Central District of California but then sued here admittedly to invoke *Davis v. Blige*. Plaintiff's undisguised forum shopping should not be rewarded. Further, Plaintiff accuses Mr. Tesfaye of settling with her co-authors after she balked at her share. *Id*. Settlements, even if partial as Plaintiff claims, are to be encouraged and are not forum shopping.

         9.    *Trial Efficiency and the Interests of Justice Favor Transfer to California*

Plaintiff does not address, and thus concedes, that because of the early stage of this case, transfer is consistent with trial efficiency. Mot. at 15–16. She also ignores that where, as here, "the 'natural focus' of the case is in the transferee forum, transfer to that district is consistent with the interest of justice." *Id.* at 15 (quoting *Khankhanian v. Khanian*, 2017 WL 1314124, at *7 (S.D.N.Y. Apr. 6, 2017)). In addition, she ignores that "the interests of justice require that [ ] court[s] not reward forum shopping." *Id.* at 16–17 (quoting *Lewis-Gursky v. Citigroup, Inc.*, 2015 WL 8675449, at *2 (S.D.N.Y. Dec. 11, 2015)). Further, failing to transfer would unquestionably result in a multiplicity of actions because Plaintiff dismissed her alleged multi-million-dollar claims without prejudice and could re-file them where jurisdiction and venue do lie.

Plaintiff concedes she could have filed in California and the factors compel the conclusion that transfer is appropriate. Accordingly, the transfer motion should be granted.

## II.    PLAINTIFF FAILS TO ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE WEEKND DEFENDANTS

Plaintiff's expansive view of personal jurisdiction and reliance on pre-2014 cases ignores current law. Under that current law, general jurisdiction exists only in an individual's place of domicile and in a corporation's state of incorporation and principal place of business, or, "in an 'exceptional case,'" some other place where the corporation is "essentially at home." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 139 n.19 (2014). And, in order for a court to exercise specific

6

jurisdiction, "the suit" must "aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* at 127. Further, that analysis focuses on "contacts that the defendant *himself* creates with the forum," and a "defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 284, 286 (2014).

In sharp contrast to these requirements, Plaintiff repeatedly conflates Mr. Quenneville, Mr. Tesfaye, and Weeknd XO with UMG, in a transparent attempt to hold them responsible for UMG's activities despite their lack of control over UMG. Viewing the evidence as to each of the Weeknd Defendants and disregarding Plaintiff's improper reliance on UMG, she fails to establish personal jurisdiction over Mr. Quenneville, Mr. Tesfaye, and Weeknd XO.

### A. This Court Lacks Personal Jurisdiction Over Mr. Quenneville

Plaintiff concedes the Court lacks general jurisdiction over Mr. Quenneville.

As to specific jurisdiction, Plaintiff lists not one affirmative action by Mr. Quenneville aimed at New York that could support jurisdiction over him. Instead, she argues that because Mr. Quenneville entered into a contract containing a New York forum selection clause providing for *Starboy's* international distribution, and because Mr. Quenneville profited from this distribution, he is subject to specific jurisdiction in New York. Opp'n at 10. But the fact that a contract has a New York forum selection provision, without any other connection to New York, is insufficient to sustain jurisdiction. *See Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009). And the international distribution of *Starboy* is not enough to support specific jurisdiction in New York, or a defendant could be sued anywhere. That is not the law, which Plaintiff conceded by dismissing Daft Punk. *See Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 287 (E.D.N.Y. 2007) ("While [the defendant] may have been aware that its products were later distributed by [a third party] throughout the United States, such knowledge constitutes neither knowledge of the products' ultimate destination nor purposeful availment of the protection of New

7

York law."). The Court lacks jurisdiction over Mr. Quenneville, and he should be dismissed or the action transferred to California.

### B.  The Court Lacks Personal Jurisdiction Over Mr. Tesfaye and Weeknd XO

Plaintiff argues that, by virtue of a lease supposedly signed by Weeknd XO for a Tribeca apartment for Mr. Tesfaye's use, both are subject to general jurisdiction in New York. Opp'n at 6. That is not so. Weeknd XO is not even a party to the lease, which was signed by a different company, The Weeknd XO US, LLC. *See* Pl. Ex. 7 at W000092; Anderson Reply Decl. Ex. 6. Further, the fact that Mr. Tesfaye now has a leased apartment rather than hotels to stay in when he travels to New York does not mean that he is domiciled there. "Owning property in a forum does not alone establish domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). That is so because "[o]ne may have more than one residence in different parts of this country or world, but a person may have only one domicile." *Id.* And Mr. Tesfaye testified that he lives in Los Angeles, spends most of his time there, and has "never lived in New York City." Anderson Reply Decl. Ex 8 at 31:16–32:10, 40:8–41:11. In any event, the lease is irrelevant because it was entered into after Plaintiff filed this action. *See* Roach Decl. ¶ 3 & Ex. 1.

With respect to specific jurisdiction, Plaintiff's argument as to Mr. Tesfaye and Weeknd XO focuses on the worldwide distribution and exploitation of *Starboy* by UMG rather than actions taken by either Defendant targeted to New York. First, although Plaintiff alleges that the distribution contract and publishing contracts themselves constitute business transactions in New York, she relies on cases pre-dating the Supreme Court's recent personal jurisdiction jurisprudence. *See, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016); *Firma Melodiya v. ZYX Music GmbH*, 1995 U.S. Dist. LEXIS 795 (S.D.N.Y. Jan. 25, 1995). Under current law, a defendant's "decision to contract with a [forum] company to distribute [a product] nationally" is not enough to establish specific personal jurisdiction in the forum. *Bristol-*

8

*Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1783 (2017).[3]

Plaintiff attempts to hold Mr. Tesfaye and Weeknd XO responsible for each distribution of *Starboy* in New York by claiming that UMG and UMG's independent distributors are their agents. Opp'n at 8. But the distribution agreement ***expressly*** disclaims any agency relationships. *See* Pl. Ex. 4, § 17.9. Also, in order to establish an agency relationship, "a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Byun v. Amuro*, 2011 WL 10895122, at *4 (S.D.N.Y. Sept. 6, 2011) (quoting *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986)). Plaintiff does not—and cannot—show that Mr. Tesfaye or Weeknd XO exercised any control over UMG, let alone over UMG's independent distributors.

Plaintiff also relies on the fact that of the more than 110 concert performances by Mr. Tesfaye since the 2016 release of *Starboy*, four occurred in New York. Opp'n at 9–10; Tesfaye Decl. Ex. 1. However, his international tour concerts do not constitute purposeful targeting of New York. *See Gray v. Hudson*, 2015 WL 4488143, at *6 (E.D. Mo. Jul. 23, 2015) (concert performances in forum as part of a world tour were "random and fortuitous").

Finally, Plaintiff's half-hearted arguments under C.P.L.R. 302(a)(3) and (a)(4) also fail. With respect to C.P.L.R. 302(a)(3), Plaintiff misreads *Penguin Group (USA) Inc. v. American Buddha*, 946 N.E.2d 159 (N.Y. 2011), citing to a portion of the decision describing respondents' arguments rather than to the holding, *id.* at 162. *Penguin* holds that where allegedly infringing material is uploaded to the Internet and subsequently distributed worldwide, the situs of the alleged

---

[3] Plaintiff argues *Bristol-Myers* is inapplicable because it applied the Fourteenth Amendment, not the Fifth Amendment. Opp'n at 15 n.19. But because the Copyright Act does not have its own jurisdictional provision, the Fourteenth Amendment's due process analysis applies. *See Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 35–36 (2d Cir. 2010).

9

injury is the location of the copyright holder, here California. *Id.* at 161–62; *see also Int'l Diamond Importers, Inc. v. Med Art, Inc.*, 2017 WL 2839640, at *5 (S.D.N.Y. Jun. 29, 2017) (the location of injury in copyright cases is where the intellectual property is held). And C.P.L.R. 302(a)(4) only applies in cases where the cause of action "derive[s] from—and thus can[not] be maintained irrespective of" the ownership, possession, or use of property in New York, *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015), which is certainly not the case here.

Therefore, this Court also lacks personal jurisdiction over Mr. Tesfaye and Weeknd XO, and they should be dismissed or the case transferred to California.

### C. Plaintiff Cannot Enforce Forum Selection Clauses in Contracts to Which She Is Not a Party

Grasping at straws, Plaintiff argues that she should be able to enforce the forum selection clauses in contracts between UMG, the Weeknd Defendants, and third parties, to which she is admittedly not a signatory. Opp'n at 14–15. But when "the rights being asserted do not originate from the contract containing the forum selection clause, the clause does not apply." *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008). Here, Plaintiff sues on her alleged copyright in *Hooyo*, not on the contracts. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390 (2d Cir. 2007). On the other hand, under Plaintiff's view of the law, her contract with her alleged co-authors—the Squad Music Defendants—and these co-authors' settlement agreement, support imposing on her that settlement agreement's California forum clause.

### III. CONCLUSION

The Weeknd Defendants respectfully request that this Court transfer this case to either the Central or Northern District of California or, in the alternative, dismiss the claims against the Weeknd Defendants for lack of personal jurisdiction.

10

Dated: New York, New York
December 14, 2018

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Peter Anderson*

Peter J. Anderson
(admitted *pro hac vice*)
Marcia B. Paul
Amanda B. Levine
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone:   (212) 489-8230
Fax:       (212) 489-8340

*Attorneys for Defendants Abel Makkonen Tesfaye, Jason Quenneville, The Weeknd XO, LLC, and UMG Recordings, Inc.*