```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
YASMIN MOHAMED P/K/A YASMINAH,      :
                                    :
     Plaintiff,                     :
                                    :
     -v-                            :
                                    :
ABEL MAKKONEN TESFAYE P/K/A         :
THE WEEKND; GUILLAUME EMMANUEL      :
DE HOMEM-CHRISTO AND THOMAS         :
BANGALTER P/K/A DAFT PUNK; MARTIN   :
MCKINNEY P/K/A DOC; HENRY WALTER    :
P/K/A CIRKUT; JASON QUENNEVILLE     :
P/K/A DAHEALA, XO RECORDS, LLC;     :
REPUBLIC RECORDS; UNIVERSAL MUSIC   :
GROUP; WILLIAM USCHOLD P/K/A WILL   :
U;TYRONE DANGERFIELD P/K/A TABOO!!;:
SQUAD MUSIC GROUP; AND DOES 1-10,   :
                                    :
     Defendants.                    :
-----------------------------------x
```

18-cv-8469(JSR)

MEMORANDUM

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

JED S. RAKOFF, U.S.D.J.

On January 4, 2019, this Court issued a bottom-line order granting the motion of defendants Abel Makkonen Tesfaye, Jason Quenneville, and The Weeknd XO, LLC ("Weeknd XO") (collectively, the "Weeknd Defendants") to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). See Dkt. 73. The reasons for this decision are set forth below.

**Background**

   I.   **Factual Background**

1

The following pertinent facts are drawn from the complaint, affidavits supporting and opposing the instant motion, and the limited jurisdictional discovery authorized by the Court:

Plaintiff Yasmin Mohamed is a singer and songwriter who lives in San Jose, California. Complaint, Dkt. 1 ("Compl."), ¶ 4. Defendants Tesfaye and Quenneville are Canadian citizens who reside in Los Angeles, California, on United States visas. [1]

---

[1] Plaintiff Mohamed contends that, contrary to Tesfaye's representations, Tesfaye resides in New York, pointing to two pieces of evidence for support. First, plaintiff contends that Tesfaye "conceded at deposition that [Tesfaye] lives in New York with his girlfriend." Opposition to Defendants' Motion to Dismiss or Transfer, Dkt. 64 ("Opp."), at 16-17. Tesfaye acknowledges that he recently leased a condominium in New York "as a convenience and a place to stay when...visiting New York City." Tesfaye Dec. ¶ 7. In his deposition, he stated that he leased the condominium as a gift for his girlfriend, a New York resident who stays with him there. Tesfaye Deposition Transcript, Declaration of Scott Burroughs ("Burroughs Dec."), Dkt. 65, Ex. 1, 37:16-39:14. The Court does not view this testimony as inconsistent with Tesfaye's sworn statement that he "continue[s] to reside" in California as his "home," Tesfaye Dec. ¶ 3, or his testimony in the same deposition that he "stay[s] most of [his] time in Los Angeles," Tesfaye Dep. 38:13-38:20. "One may have more than one residence in different parts of this country or world, but a person may have only one domicile." Reich v. Lopez, 858 F.3d 55, 63 (2d Cir. 2017). Second, plaintiff contends that Tesfaye cannot be a resident of California as he represented in his contractual agreement with UMG that he is "not a resident of California." Opp. at 3, 17. However, this agreement was signed in 2012, before Tesfaye moved to California. See Distribution and Licensing Agreement, Burroughs Dec. Ex. 4 (dated 2012); Tesfaye Dec. ¶ 3 (reporting residing in California since 2016). Accordingly, the Court finds that the evidence does not support plaintiff's contention that Tesfaye has misrepresented his residence, let alone that his primary residence is New York.

Declaration of Defendant Abel Makkonen Tesfaye in Support of
Motion to Dismiss or Transfer, Dkt. 61 ("Tesfaye Dec."), ¶ 3;
Declaration of Defendant Jason Quenneville in Support of Motion
to Dismiss or Transfer, Dkt. 62 ("Quenneville Dec."), ¶ 3.
Defendant Weeknd XO is a Delaware limited liability company,
owned by Tesfaye, with its principal place of business in
California. Tesfaye Dec. ¶ 8; Declaration of Peter J. Anderson
in Support of Motion to Dismiss or Transfer ("Anderson Dec."),
Dkt. 60, Exs. 5-8. Defendant UMG Recordings, Inc. ("UMG") is a
Delaware corporation with its principal place of business in
Santa Monica, California. Anderson Dec. ¶ 6, Exs. 2-4. Defendant
Republic Records ("Republic") is an unincorporated division of
UMG, with offices in New York and in UMG's Santa Monica,
California office and a recording studio in Los Angeles,
California.[2] Anderson Dec. ¶ 5; Declaration of Wendy Goldstein in
Support of Motion to Dismiss or Transfer ("Goldstein Dec."),
Dkt. 71, ¶ 3.

---

[2] Plaintiff repeatedly contends that Republic "has offices only in
New York." See Opp. at 1, 19, 20, 22. But the evidence that
plaintiff points to in support of this contention are Facebook,
LinkedIn, and Twitter posts in which Republic lists its location
as New York. Declaration of Kris S. LeFan, Dkt. 66, Ex. 18. The
Court does not find these promotional materials dispositive as
to location (or even suggestive of New York as the sole location
of Republic offices), especially considering the evidence to the
contrary contained in a declaration submitted by an executive
vice president at Republic's Santa Monica offices, see Goldstein
Dec. ¶¶ 2-3.

In 2009, Mohamed recorded an album with music producers William Uschold and Tyrone Tyrone Dangerfield,[3] which included a song entitled "Jewel of My Life" or "Hooyo" ("Hooyo"). Compl. ¶¶ 19-20. Hooyo was copyrighted in 2009, with Mohamed, Uschold, and Dangerfield listed as co-authors on the copyright registration. See id. Ex. A. Mohamed signed a record deal ("Squad Contract") with Uschold and Dangerfield's company, the Squad Music Group. Id. ¶ 21.

In September 2016, Tesfaye, a musical artist known as The Weeknd, released a song entitled "Starboy," in collaboration with the musical group Daft Punk, that Plaintiff alleges impermissibly copies Hooyo. Id. ¶ 24. Tesfaye and Quenneville wrote "Ebony" - the song that developed, in part, into Starboy - in Los Angeles. Tesfaye Depo. Tr., 46:23-49: 23, Ex. 8, Reply Declaration of Peter J. Anderson in Support of Motion to Dismiss or Transfer ("Anderson Reply Dec."), Dkt. 70. Daft Punk subsequently recorded its contribution to the song in collaboration with Tesfaye in Paris, France. Id.; Tesfaye Dec. ¶ 13; Goldstein Dec. ¶ 9. Quenneville, Martin McKinney, and Henry Walter also made contributions to the song in Hollywood,

---

[3] Uschold and Dangerfield both live in California, and Mohamed's contract with their company, Squad Music, included a California choice of law provision and provided that "any dispute shall be brought in the state or federal courts of San Francisco, California." Compl. ¶¶ 12-13, Ex. B at 5.

California. Tesfaye Dec. ¶ 17; Tesfaye Depo. Tr. 46:17-22.
Tesfaye created his contribution in Los Angeles, and all
contributions were combined into the final recording in Los
Angeles, with some of the intermediary mixing work done by a
mixing engineer in Virginia before production of a final mix in
Los Angeles. Tesfaye Dec. ¶ 17; Goldstein Dec. ¶ 9. The
recording was then "mastered" at a studio in New York for CD
replication and mastered for vinyl manufacture in Los Angeles,
California, a process that does not change the final mix, music,
or lyrics of the recording but "only involve[s] equalizing the
sound levels of the recording." Goldstein Dec. ¶¶ 10-11. Starboy
was then distributed according to Tesfaye's music distribution
agreement with UMG, dated August 27, 2012. Pl. Ex. 4. UMG "from
or in New York...arranged for the manufacture, marketing and
distribution and licensing in some media of Starboy." See UMG
Interrogatory Response 8, Burroughs Dec., Ex. 20.

        In 2017, Uschold, Dangerfield, and Squad Music Group
retained counsel ("Squad's lawyer") to bring a copyright
infringement claim against The Weeknd. Compl. ¶ 33. Squad's
lawyer negotiated a settlement with The Weeknd for the release
of Squad's claims relevant to Hooyo and represented to Mohamed
that she would receive "an even split" of the settlement
proceeds, but no payment of any settlement funds was made to
Mohamed and Mohamed's name and signature line was removed from

                                5

the settlement agreement. Id. ¶¶ 35-38. After the settlement,
The Weeknd continued to exploit and receive monies for Starboy.
Id. ¶ 39.

## II.  Procedural History

On September 17, 2018, plaintiff filed the instant suit
against the Weeknd Defendants, UMG and Republic Records,
Guillaume Emmanuel Homem-Christo and Thomas Bangalter
(collectively, "Daft Punk"), and William Uschold, Tyrone
Dangerfield, and the Squad Music Group (collectively, the "Squad
Defendants"). See Compl. Dkt. 1. Plaintiff brought claims for:
(1) direct, contributory, and vicarious copyright infringement
(against the Weeknd Defendants, UMG, Daft Punk), (2) breach of
contract (against the Squad Defendants), (3) breach of fiduciary
duty (against the Squad Defendants), (4) aiding and abetting
breach of fiduciary duty (against the Weeknd Defendants, UMG,
Daft Punk), (5) for an accounting (against all defendants), and
(6) for declaratory relief (against all defendants).

At an initial conference on November 7, 2018, defendants
notified the court that they planned to file a motion to dismiss
for lack of personal jurisdiction or to transfer to the Central
District of California. The Court granted limited jurisdictional
discovery, permitting plaintiff to take two-hour depositions of
all moving defendants by telephone and issue limited document
requests.

6

On November 19, the Weeknd Defendants and UMG filed the instant motion to dismiss for improper venue, and, as to the Weeknd Defendants only, to transfer pursuant to 28 U.S.C. § 1404(a) or dismiss for lack of personal jurisdiction. See Certain Defendants' Memorandum of Law in Support of Motion to Dismiss or Transfer, Dkt. 59 ("Mot."). In addition, the Daft Punk Defendants filed a separate motion to dismiss for lack of personal jurisdiction or improper venue and to dismiss Count IV for failure to plead with sufficient particularity pursuant to Rule 9(b). See Memorandum of Law in Support of Motion by Defendants Guillaume Emmanuel Homem Christo and Thomas Bangalter to Dismiss or in the Alternative to Transfer Venue, Dkt. 53 ("Daft Punk motion").

On December 7, 2018, plaintiff filed a stipulation, which was so-ordered by the Court on December 10, 2018, voluntarily dismissing all claims against the Squad Defendants and the Daft Punk Defendants, and also dismissing Counts II-VI of the complaint. See Dkt. 67. Accordingly, only Count I (for copyright infringement) remains in the case, and The Weeknd Defendants and UMG and Republic Records are the only remaining defendants. This dismissal fully mooted the Daft Punk motion, and the Weeknd Defendants' and UMG's Rule 12(b)(3) motion to dismiss for improper venue, as it only concerned the state law claims (Counts IV-VI), which have all been voluntarily dismissed.

Consequently, the only remaining pending motion is that of the Weeknd Defendants to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) or dismiss for lack of personal jurisdiction. See Mot.; Certain Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss or Transfer, Dkt. 69 ("Reply"). Plaintiff opposes this motion. See Opp.

**Discussion**

"Although it is common to resolve challenges to personal jurisdiction before addressing motions to transfer venue...it is not required that courts do so." Enigma Software Grp. USA, LLC v. Malwarebytes Inc., 260 F. Supp. 3d 401, 408 (S.D.N.Y. 2017).[4] Courts have the "power to transfer venue even if [they] lack[] personal jurisdiction over the defendants." Fort Knox Music, Inc. v. Baptiste, 257 F.3d 108, 112 (2d Cir. 2001). Therefore, "[w]here personal jurisdiction would likely exist in the transferee district over a defendant who contests personal jurisdiction in the Southern District of New York, it is prudentially appropriate to address venue first, since a decision to transfer would render personal jurisdiction analysis with respect to the Southern District of New York irrelevant." Enigma, 260 F. Supp. 3d at 408-09.

---

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

8

The Weeknd Defendants contest personal jurisdiction in this
District, but it is apparent that personal jurisdiction would
exist over all defendants in California and plaintiff
acknowledges that the action could have been brought there. See
Opp. at 17 n.23. Accordingly, the Court finds it prudent to
address the motion to transfer.

Before doing so, however, a threshold note is necessary
concerning forum selection clauses. In her opposition to
defendants' motion, plaintiff argues that defendants are bound
by forum selection clauses to litigate this dispute in New York.
Opp. at 14. Plaintiff bases this argument on: (1) the fact that
Tesfaye's contract with UMG that governed distribution of
Starboy contains a New York choice of law and forum selection
clause, see Burroughs Dec., Exs. 4, 5; and (2) the fact that
Tesfaye's contract with co-defendant Quenneville concerning
their agreement as co-writers on Starboy (among other songs)
contains a New York choice of law clause, see Burroughs Dec.,
Ex. 12. Plaintiff is not a signatory to either of these
contracts. While the fact a party is a non-signatory to an
agreement may sometimes be "insufficient, standing alone, to
preclude enforcement of a forum selection clause," Aguas Lenders
Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009),
the Second Circuit has clearly held forum selection clauses
inapplicable to copyright claims that do not arise out of rights

9

created by the contracts.[5] See Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008)("where a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect") (quoting Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679, 682 (2d Cir. 1993)); Phillips v. Audio Active, Ltd., 494 F.3d 378, 390-91 (2d Cir. 2007) (forum selection clauses do not apply to copyright dispute where plaintiff "does not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work"). Accordingly, the Court finds that no forum selection clause controls here.

## I. Motion to Transfer under §1404(a)

28 U.S.C. § 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district

---

[5] None of the cases that plaintiff cites suggests that she could claim the forum selection clause here. See Miller v. Mercuria Energy Trading, Inc., 291 F. Supp. 3d 509, 522-26 (S.D.N.Y. 2018) (rejecting efforts to apply a forum selection clause to non-parties); Aguas, 585 F.3d at 701 (non-signatory successor in interest to a signatory of a contract is subject to the "presumption of the enforceability of mandatory forum selection clauses" in the contract); Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 722-24 (2d Cir. 2013) (forum selection clause applicable to non-party where non-party was the known source of the contracting party's authority to enter the contract); Laspata DeCaro Studio Corp. v. Rimowa GmbH, No. 16-cv-934 (LGS), 2017 WL 1906863, at *6 (S.D.N.Y. May 8, 2017) (third-party beneficiaries can invoke forum-selection clause).

court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404 "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). "Motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).

Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a). Enigma, 260 F. Supp. 3d at 407. First, the Court determines "whether the action could have been brought in the transferee district." Id. If so, the Court next determines "whether transfer would be an appropriate exercise of the Court's discretion." Id. Plaintiff does not dispute that the action could have been filed in the Central District of California. Opp. at 17 n.23. Accordingly, the Court will proceed directly to the second stage of the analysis.

"To assess whether transfer is an appropriate exercise of the Court's discretion, the Court must balance various factors: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance

11

of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." Enigma, 260 F. Supp. 3d at 407. Applying this test, the Court finds that, on balance, the relevant factors favor transfer to California.

## A. Factors Favoring Transfer

### 1. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." Tianhai Lace USA Inc. v. Forever 21, Inc., No. 16-cv-5950, 2017 WL 4712632, at *4 (S.D.N.Y. Sept. 27, 2017). "This factor substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." Enigma, 260 F. Supp. 3d at 410. In considering this factor, the Court "focuses on the degree of relationship between the forum and the cause of action." Id. "In a copyright infringement case, the operative facts...usually relate to the design, development, and production of an infringing product." Tianhai, 2017 WL 4712632 at *4.

Applying this analysis, it is clear that the Central District of California is the locus of operative fact in this action. Plaintiff created and recorded Hooyo in California. Opp. at 21. Tesfaye and Quenneville wrote "Ebony," the song that

12

developed into Starboy, in Los Angeles. Tesfaye Depo. Tr. 46:23-
47:11, 49:8-23. After Daft Punk recorded its portion of Starboy
in Paris, the demo was re-recorded in Los Angeles and defendants
Walter and McKinney added contributions in Los Angeles. Id. at
48:10-22; 49:8-23. These contributions were combined into one
recording in California, and Tesfaye held listening sessions
there for individuals to hear and comment on the recording. Id.
at 59:12-60:9; Tesfaye Dec. ¶ 17.

Plaintiff argues that New York is also a locus of operative
fact because (1) the recording was mastered in New York and (2)
worldwide sales were coordinated from New York by UMG, including
sales in New York. However, mastering a recording, while
important to ready it for final sale, is a technical process of
ensuring the consistency of sound levels and does not affect or
alter the music or lyrics relevant to the issue of copyright
infringement. See Goldstein Decl. ¶¶ 10-11. Accordingly,
mastering in New York is not sufficient to shift the center of
gravity of the claim from California to New York. Similarly,
sales in New York, and distribution from New York, do not shift
the balance towards New York. While "courts have at times
expanded this analysis to include examination of where
infringement occurred...if infringement occurred all over the
country or world...such sales alone do not render a forum the
locus of operative facts for a copyright claim." Tianhai, 2017

13

WL 4712632, at *5. See also Caldwell v. Slip-N-Slide Records,
Inc., 2011 WL 3251502, at *2 (S.D.N.Y. July 26, 2011) ("where
the nexus of the allegedly infringing activity is in the
transferee District, it is insufficient to find a connection to
New York based solely on sales of the product that took place
here").

        As the key facts giving rise to Mohamed's claims occurred
in California, this significant factor favors transfer.

### 2. Witness Convenience

        "When assessing the convenience of witnesses, a court does
not merely tally the number of witnesses who reside in the
current forum in comparison to the number located in the
proposed transferee forum," but "must qualitatively evaluate the
materiality of the testimony that the witness may provide." Id.
In considering the key witnesses in a copyright infringement
action, the court looks at the individuals involved in the
"design, production, and sale" of the allegedly infringing
products. AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326
F. Supp. 2d 525, 529 (S.D.N.Y. 2004).

        This factor favors transfer. In all likelihood, the most
central witnesses in this case will be the artists called to
testify regarding the composition and recording of Starboy.
Tesfaye, McKinney, and Quenneville all reside in California.
Homem-Christo, Bangalter, and Walter reside outside of the

14

United States; therefore, their convenience does not weigh

towards either New York or California as a forum.[6] In addition,

defendants identify a number of witnesses present in California,

including the representative of Republic Records that Tesfaye

dealt with in creating Starboy, as well as Tesfaye's business

managers, who managed financial records regarding Starboy, and

Tesfaye's personal managers and talent agents, who were present

for portions of the recording of the Starboy album.[7]  See Tesfaye

---

[6] Plaintiff argues that, as Homem-Christo and Bangalter reside in Paris, it is "far more convenient for them to travel to New York." Opp. at 19. However, both Bangalter and Homem-Christo previously represented in their motion to dismiss that they "would avoid considerable inconveniences if the case were transferred to California" as they "travel[] there with much more frequency than New York." Daft Punk Motion at 19-20. Accordingly, the Court considers the convenience of the out-of-country witnesses neutral in this analysis.

[7] Plaintiff argues that this list of witnesses fails to meet defendant's burden to "provide a detailed list of probable witnesses who will be inconvenienced if required to testify" and a "general statement" of their testimony. Opp. at 18 (quoting Kiss My Face Corp. v. Bunting, No. 02-cv-2645, 2003 WL 22244587, at *2 (S.D.N.Y. Sept. 30, 2003)). But, in the case plaintiff relies on, the moving party merely stated that "the bulk of defense witnesses" were elsewhere without providing any detail. Id. Similarly, the other two cases that plaintiff cites both concern failures to specify the identity of the key witnesses. See Capitol Records, Inc. v. Kuang Dyi Co. of RM, No. 03-cv-0520, 2004 WL 405961, at *3 (S.D.N.Y. Mar. 4, 2004); Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. May 19, 1998). Plaintiff also argues that defendants have provided an insufficient statement of the topic of the witness' testimony, but, while defendants could have elaborated on the testimony more, its relevance is sufficiently clear from the provided affidavit.

15

Dec. ¶ 21. Plaintiff argues that these witnesses have "little relevant knowledge" and no knowledge "that cannot be obtained directly from Tesfaye," see Opp. at 18, but the Tesfaye declaration clearly indicates the relevant scope of these witnesses' knowledge, and he is certainly not required to rely only on his own testimony without calling other witnesses. Moreover, the testimony of witnesses involved in, or present for, defendants' recording of Starboy appears clearly material to whether they actually copied Hooyo or were aware of the song or plaintiff's copyright.

Plaintiff also identifies a handful of New York witnesses, but none appears as critical to the copyright issue in question, aside from perhaps the two UMG representatives located in New York.[8] Opp. at 19.

Accordingly, after assessing both parties' arguments, the Court finds that the convenience of witnesses favors transfer to the Central District of California.

**3. Convenience of Parties**

---

[8] Plaintiff also lists Tesfaye's lawyers who drafted the settlement agreement with plaintiff's co-authors, but they appear more relevant as witnesses to plaintiff's dismissed claims for breach of fiduciary duty concerning the settlement agrement than to the issue of copyright infringement itself. Opp. at 19. In addition, plaintiff lists Tesfaye, who as discussed is a California resident; and also lists Coyne, who mastered the Starboy in New York, but, as discussed above, the mastering process has little comparative relevance to this issue of copyright infringement.

16

"Transfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the non-moving party's inconvenience." Frame v. Whole Foods Market, Inc., No. 06-cv-7058, 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007). Courts have found that the convenience of parties favors transfer where neither party is located in the original forum state. See Enigma, 260 F. Supp. 3d at 411 (transferring case from the Southern District of New York to the Northern District of California when "neither party [was] located in this District of New York"); ZPC 2000, Inc. v. SCA Grp., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) ("Since none of the parties reside in New York, it is only logical that a transfer to the residence of one of them would be more convenient.").

Here, none of the parties are located in New York. Plaintiff resides in California. Compl. ¶ 4. Defendants Tesfaye, Quenneville, and Walter reside in California. Defendant Weeknd XO is a Delaware corporation with its principal place of business in California. Anderson Dec. ¶ 6. Defendant UMG is a Delaware corporation based in California, and Republic Records is an unincorporated division of UMG that worked on Starboy from its California office. Goldstein Dec. ¶ 3; see Freeplay Music, LLC v. Gibson Brands, Inc., 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016) ("When analyzing the convenience to the parties, courts

17

often look to the parties' principal places of business and the
location of their offices.").

Accordingly, the Court finds that the convenience of
parties weighs in favor of transfer.

### 4. Trial Efficiency and the Interests of Justice

"The usual concern with judicial economy when considering a
transfer motion is whether transfer would require a new court to
familiarize itself with the facts of the case." Khankhanian v.
Khanian, No. 16-cv-8396, 2017 WL 1314124, at *7 (S.D.N.Y. Apr.
6, 2017). Courts have found that this factor does not weigh
against transfer where, as here, only a motion to dismiss or
transfer has been filed in the case. See id.; see also Rosen v.
Ritz-Carlton Hotel Co. LLC, No. 14-cv-64736, 2015 WL 64736, at
*5 (S.D.N.Y. Jan. 5, 2015).

Transferring this case to the Central District of
California would further the interest of justice as the "natural
focus" of the case is in that district and California clearly
has the most "meaningful connection" to the underlying facts.
See Khankhanian, 2017 WL 1314124, at *7 ("Where the natural
focus of the case is in the transferee forum, transfer to that
district is consistent with the interest of justice."). 
Moreover, "[t]he interests of justice require that this Court
not reward forum shopping." Lewis-Gursky v. Citigroup, Inc.,
2015 WL 8675449, at *3 (S.D.N.Y. Dec. 11, 2015). Plaintiff, in

18

her opposition to the instant motion, strongly suggests that she has filed the complaint in the Southern District of New York in an effort to have Second Circuit law applied. See Opp. at 22-23 ("Defendants' primary defense is based on its clandestine settlement agreement with Mohamed's collaborators. The governing law in the Second Circuit forbids this defense and this Court has far better familiarity with this precedent than California.").

Accordingly, the Court finds that transfer would be in the interest of justice in this case.

### B. Factor Disfavoring Transfer

The sole factor that disfavors transfer is plaintiff's choice of this forum. But "[a] plaintiff's choice of forum, while normally accorded significant weight, is given less deference if the chosen forum is not the plaintiff's home state." AEC One Stop, 326 F. Supp. 2d at 531. Moreover, "where it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever and transfer of venue is appropriate." Pierce v. Coughlin, 806 F. Supp. 426, 429 (S.D.N.Y. 1992). Defendants note that plaintiff initially sent them a complaint draft marked to be filed in the Central District of California before later filing the instant action in New York. See Anderson Dec. ¶ 11,

19

Ex. 11. As discussed above, in her opposition to the instant motion, plaintiff strongly suggests that she filed in New York because she believes the case law is more favorable to her claims here. Opp. at 24. This is not a valid reason to avoid transfer.

Accordingly, the Court finds that this factor is entitled to very little weight.

## C. **Neutral Factors**

The remaining factors are neutral and do not substantially affect the transfer analysis.

The location of relevant documents and the relative ease of access to sources of proof does not materially favor or disfavor transfer. In copyright infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." Id. However, in "an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." Caldwell, 2011 WL 3251502, at *4.

The forum's familiarity with the governing law is also neutral. "Familiarity with the governing law is generally given little weight in federal courts." AEC One Stop, 326 F. Supp. 2d at 531. Moreover, plaintiff has voluntarily dismissed all state law claims and the only remaining claim is under federal copy

20

right law. "Where the issue of federal copyright law is a subject on which both courts are familiar, this factor is neutral." Id. Plaintiff argues that this Court has greater familiarity with the Second Circuit precedent that plaintiff hopes will control the case, Opp. at 22-23, but this is more of an acknowledgment of forum shopping than an argument concerning familiarity with governing law.

The availability of process to compel the attendance of unwilling witnesses appears essentially neutral. Although both plaintiff and defendants argue that more important witnesses are located in the venue that they favor and therefore would be more amenable to process there, see Mot. at 14, Opp. at 22, "neither party has persuasively identified particular witnesses likely to present attendance challenges." Enigma, 360 F. Supp. at 412.

Similarly, the Court considers the relative means of the parties as neutral. Plaintiff has fewer resources than defendants, Opp. at 23, but lives in California and is choosing to litigate in New York. Plaintiff asserts that this factor should be viewed to favor New York, as she speculates that she may bear costs of compelling New York witnesses to appear in California, but there is no comparison of the costs of bringing California witnesses to New York if the other venue was adopted.

21

**D. Conclusion**

Considering the transfer factors together, they clearly weigh in favor of transfer of this case to the Central District of California. The significant factors of the locus of operative events, convenience to witnesses, and convenience to parties, as well as the interests of justice, all favor transfer, outweighing the only countervailing factor, plaintiff's choice of forum. The Court therefore grants defendants' motion to transfer pursuant to 28 U.S.C. § 1404.

**II. Additional Pending Motions**

The Weeknd Defendants, joined by defendant UMG Recordings, Inc., also moved to dismiss certain claims for improper venue under Fed. R. Civ. P. 12(b)(3) and to transfer the case pursuant to 28 U.S.C. § 1406(a), see id., but this motion has been mooted by plaintiff's subsequent voluntary dismissal of the claims it addressed. See Dkt. 63.

The Weeknd Defendants also moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). As the Court has granted the motion to transfer, its personal jurisdiction over defendants is irrelevant and therefore the Court declines to reach this motion.

Dated:    New York, NY
          January *23*, 2019                      JED S. RAKOFF, U.S.D.J.

22